UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED
MAY 26 2006
Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| TIMOTHY JAMES POOLE | § | |
| | § | |
| VS. | § | C.A. NO. G05651 |
| | § | |
| KIRBY INLAND MARINE, LP and | § | Pursuant to Rule 9(h) of |
| KIRBY CORPORATION | § | the Federal Rules of |
| | § | Civil Procedure – AD |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants Kirby Corporation and Kirby Inland Marine, LP (hereinafter "Kirby" unless otherwise specified) and pursuant to Fed. R. Civ. P. 56, file this motion for summary judgment and brief in support of their motion for summary judgment on the grounds that there is no genuine issue of material fact and that these defendants are entitled to judgment as a matter of law. More specifically defendants request dismissal of plaintiff's claims pursuant to the Jones Act, 46 U.S.C. Appendix § 688, as well as dismissal for his claims for unseaworthiness and maintenance and cure pursuant to general maritime law. In support of their motion, these defendants rely upon all of the pleadings and discovery on file with this Court, this defendants' brief in support of their motion for summary judgment, the affidavit of Kallum K. Kittley, the affidavit of James C. Guidry, partial portions of the deposition of Timothy Poole and such other discovery, pleadings, or affidavits as may hereafter be filed in accordance with the law.

## I.
## NATURE AND PROCEDURAL STAGE OF THE ACTION

The plaintiff, Mr. Poole, filed suit on or about November 30, 2005 naming the defendants, from which he seeks damages for various claims including allegations that he was a

seaman under the Jones Act and therefore is entitled to maintenance and cure relating to his fall on July 27, 2005.  (Plaintiff's complaint attached as Exhibit "A").  The alleged fall occurred while Mr. Poole was employed by Kirby Logistics Management as a shore tankerman.  It is alleged that he lost his footing on a catwalk on a docked barge thereby injuring his wrist.  (Poole Depo. attached as Exhibit "D" at pgs. 45-49; lns. 6-11).   The defendants filed their answers, and within the answers denied plaintiff's status as a Jones Act seaman.  (Defendants' Answers attached as Exhibits "B" and "C").   Defendants bring this instant motion for summary judgment on the basis that there is no genuine issue of material fact regarding Mr. Poole's status.  Mr. Poole's Jones Act claims as well as his claims for unseaworthiness and maintenance and cure should be dismissed as he is not a Jones Act seaman, but rather a longshoreman.

Timothy Poole commenced work with Kirby in October of 2004.  (Poole Depo. at pg. 10; lns.22-24).  When he applied for the job, he told Kirby that he did not want to go out on boats, but stay close to his family.  (Poole at pg. 11; lns 15-22).  He was told when he applied at Kirby that he could be placed in the shoreside division, and was in fact placed in the shoreside division of Kirby Logistics Management.  (Poole at pg. 12; lns 5-11).  Boat tankerman are within the Kirby Inland Marine division.  (See Guidry Affidavit attached as Exhibit "E").  Mr. Poole was hired by Kirby Logistics which is the shoreside tankerman division which Mr. Poole described as the division which hires tankerman who go from dock to dock working on barges.  (Poole at pg. 13; lns. 3-9).  Once completing training, Mr. Poole was designated as a tankerman trainee.  (Poole at pg. 13; lns. 21-23).  After taking a tankerman class for Coast Guard certification, Mr. Poole became a tankerman.  (Poole at pg. 14; lns.1-9).

As a shoreside tankerman, Mr. Poole was never assigned to a boat.  (Poole at pg. 11; lns. 23-25).  Mr. Poole only worked on Kirby barges which were not always pushed by boats owned

by Kirby. (Poole at pg. 57; lns. 11-21). Mr. Poole never worked on a barge while it was underway (Poole at pg. 60, lns. 22-24). He was never a crew member of a boat. (Poole at pg. 12; lns. 3-4). If Mr. Poole ever went on a tug boat while working, he was required to sign in on the visitor book and to show identification upon boarding. (Poole at pgs. 25-26; lns. 2-5). When he went out on a job, he was not introduced to the members of the boat's crew. (Poole at pg. 61; lns. 8-10). He was not given a tour of the boat or assigned a bunk. (Poole at pg. 61; lns. 11-14). When arriving at a job, nobody explained to Mr. Poole the general operation of the boat, nor did anyone explain to him what his work schedule would be, what to do in a man overboard drill, a collision drill or an abandon ship drill. (Poole at pgs. 61-62; lns. 15-3).

Mr. Poole worked shift work, meaning that he was on call for seven days and then off for two days. (Poole at pg. 27; lns.2-8). He was paid hourly and earned overtime pay for working over forty hours in a week. (Poole at pgs. 16-12). If called or paged during his seven days on call, Mr. Poole could pass on a job during this time. (Poole at pg. 28; lns. 13-14). When going to a dock, Mr. Poole would drive his own truck and would get reimbursed for his mileage to the dock. (Poole at pg. 31; lns. 16-23). When he went to a job, Mr. Poole would bring his own equipment along with his own lunch and water or whatever he chose to drink. (Poole at pgs. 31-32; lns. 24-15).

While performing the transfer of liquid materials to or from the barge, Mr. Poole as the tankerman would be in control of the transfer, not the Captain of the tug boat. (Poole at pg. 34; lns.17-24). The Captain of the tug boat could not order Mr. Poole as the tankerman to clean the boat, cook food for the crew or do any other such tasks on board the tug. (Poole at pg. 34; lns. 1-16). Mr. Poole did not sleep on board the tug boats. (Poole at pg. 12; lns. 1-2). Mr. Poole never

received an assignment from a boat or anybody on a boat while working for Kirby. (Poole at pg. 57; lns. 1-3).

While at Kirby, Mr. Poole reported to four different individuals, none of whom were members of a crew or of a boat. (Poole at pgs. 55-56; lns. 15-1). All of Mr. Poole's reporting as to how the job was progressing and any problems were reported to the dispatch unit located downtown. (Poole at pg. 57; lns. 4-7).

During his entire time with Kirby, Mr. Poole never worked on a barge while it was underway. (Poole at pg. 60; lns. 22-24). He likewise never worked on a boat while it was underway. (Poole at pgs. 60-61; lns. 25-2).

Mr. Poole was a shore tankerman; he was not a boat tankerman. Had Mr. Poole been a boat tankerman, his job duties and work would differ from those that he had as a shore tankerman. Unlike Mr. Poole, a boat tankerman works hitches whereby he is on a boat for 14-21 days at a time. (See Guidry Affidavit). The boat tankerman stands watch and is assigned a work schedule with shifts. (See Guidry Affidavit). Boat tankermen are paid on a daily basis, not hourly. (See Guidry Affidavit). Boat tankermen are part of the crew of the tug boat on which they travel. (See Guidry Affidavit). Boat tankermen are assigned to a boat, and most often sleep and eat on the boat. (See Guidry Affidavit). Boat tankermen do not use or bring their own tools. (See Guidry Affidavit). Boat tankermen do not need to sign the guest book when boarding because they are a part of the crew. (See Guidry Affidavit). Boat tankermen are supervised by the boat's captain, and are instructed to do their job by the captain. (See Guidry Affidavit). The duties which a boat tankerman can be instructed to do onboard a boat include deckhand duties such as performing engine room maintenance, preparing the steel for paint or chipping, scaling or buffing the boats. (See Guidry Affidavit). A boat tankerman's duties while on board a boat

4

may also include preparing meals for the crew. (See Guidry Affidavit). Mr. Poole never performed engine room maintenance, never prepared steel for paint, and never painted while working for Kirby. (Poole at pg. 60; lns. 11-21).

A boat tankerman could also perform a host of other activities that such as putting out rest wires, jockey wires, face wires, wing wires, backing wires, towing wires and building a strung-out coupling, a breasted-up coupling or a high-low coupling. (See Guidry Affidavit). Job duties of a boat tankerman could also include breaking coupling or building steering coupling. (See Guidry Affidavit). Mr. Poole never performed any of these activities. (Poole Depo. at pgs. 58-60; lns. 23-7).

If Mr. Poole had been a boat tankerman and had traveled on the tug as do boat tankerman, he would have been assigned a bunk and have explained to him the general operation of the boat. (See Guidry Affidavit). He would have also been educated on what to do in a man overboard drill, a collision drill and an abandon ship drill. (See Guidry Affidavit).

In sum, a boat tankerman is part of a crew of an assigned boat while a shore tankerman is not assigned to any boat and is not part of any crew. (See Kittley Affidavit attached as Exhibit "F"; (See Guidry Affidavit). A shore tankerman is paid an hourly wage and is paid overtime. (See Kittley Affidavit). Shore tankermen do not work specific shifts, but are typically on call for seven days at a time and then off call for two. (See Kittley Affidavit). Once called to a job, a shore tankerman does not travel on the tug boats as do boat tankerman, but drives himself from one dock to another and is reimbursed for his mileage. (See Kittley Affidavit). Shore tankerman are not directed in their work by the captain of the boat, but are told where to go by dispatch which is located on-shore. (See Kittley Affidavit). If any trouble or incident should arise while at the worksite, the shore tankerman would report back to a land-based supervisor, and not the

5

boat's captain. (See Kittley Affidavit). Shore tankermen do not work on barges that are underway, but only those that are docked. (See Kittley Affidavit). In sum, a shore tankerman will not spend any time on a vessel at sea.

## II.
## STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW

STATEMENT OF THE ISSUE: Whether Mr. Poole can be classified as a seaman and fall within the Jones Act where all of his work as a shore tankerman was performed on shore or on non-moving, docked barges; where he was never assigned to a boat; where he did not sleep on a boat; where he was never part of a crew; where he was under the orders of a unit that was located on shore; where he did not perform the duties of a deck hand and where none of the work that he performed was ever done on a vessel that was at sea.

STANDARD OF REVIEW: A party is entitled to summary judgment if it can demonstrate that there is no genuine issue of material facts and that it is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Co. v. Catrett*, 477 U.S. 317 (1986). If the moving party does not bear the burden of proof at trial, the movant may meet its burden by showing the absence of any evidence to support the non-movant's case. *Celotex*, 477 U.S. at 325. The defendant, as movant, is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). Once the moving party has made the required showing, the burden shifts to the non-moving party to come forward with evidence to show that summary judgment should not be granted. *George v. Bourgeois*, 825 F.Supp. 1341, 1346 (E.D. Tex. 1994). The non-moving party must show, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every element of its case. *Id.* (citing *Dunn v.*

6

*State Farm Fire & Cas. Co.*, 927 F.2d 869, 872 (5th Cir. 1991)).  The court must view the evidence in a light most favorable to the non-movant.  *Id.* (citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Co.*, 475 U.S. 574 586 (1986)).

While the seaman inquiry is a mixed question of both law and fact, summary judgment is *mandated* where the facts and law will reasonably support only one conclusion.  *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997) (citing *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 356 (1991), *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368-369 (1995)).  Seaman status is an element of the plaintiff's case for which he bears the burden for establishment of the seaman status.  *Nicole v. Southstar Industrial Contractors*, 2004 U.S. Dist LEXIS 7544 at pg. 2 (E.D. of La. 2004).

### III.
### ARGUMENT AND CITATION OF AUTHORITY

One of the most recent United States Supreme Court cases to define the test for whether a maritime worker qualifies as a seaman under the Jones Act, 46 U.S.C. App. 688(a) versus being classified as a longshoreman is *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995).  The *Chandris* Court commenced its analysis by pointing out that it is well-settled law that the Jones Act is fundamentally status based and the question of seaman status cannot be resolved by simply looking that the situs of the alleged injury: "land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore."  *Id.* at 361.  The Court also pointed out the difficulties courts have had in determining the status of seamen versus longshoremen.  The *Chandris* Court looked closely at the cases in the Fifth Circuit and concluded that the employment-related connection to a vessel in navigation that is necessary for a maritime worker to qualify as a "seaman" under the Jones Act requires two basic

elements, namely that (a) the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and (b) that the worker must have a connection to the vessel in navigation or an identifiable group of vessels that is substantial in terms of both its duration and its nature. *Id.* at 368.  Regarding the first element, the Jones Act only extends to those employees who do the ship's work while *at sea. Id.* at 368 (citing *Wilander, supra* at 354).  The Jones Act remedy is specifically reserved for those sea-based maritime employees whose work "regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Id.* at 370 (citing *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 104 (1946))(see also *Harbor Tug and Barge Co. v. Papai, ,*520 U.S. 548, 560 (1997) indicating that the Jones Act is confined to seamen whose work regularly exposes them to the "perils of the sea")).

The *Chandris* court acknowledged that it is difficult to discern major substantive differences in the language of the two phrases, but that one is to look at the totality of the circumstances in the employment.  *Id.* at 370.  The duration of the worker's connection to a vessel and the nature of the activities, taken together determine whether a maritime worker is a seaman "because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370.

For maritime workers, the question then is whether the plaintiff can maintain Jones Act and related maritime claims which are dependent upon his seaman status, or whether he is relegated to claims under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 902 ("LHWCA"). *Schultz v. Louisiana Dock Co.*, 94 F. Supp.2d 746, 748 (E.D. of La 2000). Under the LHWCA, the exclusivity provision states in part that the liability of the employer

"shall be exclusive and in place of all other liability of such employer to the employee. . ." *Id.* citing 33 U.S.C. § 902(3). The term "employee" as defined by the LHWCA, does not include "a master or member of a crew of any vessel." *Id.* citing 33 U.S.C. § 902(3). The phrase "master or member of a crew of any vessel is a 'refinement' of the term 'seaman' in the Jones Act. *Id.* citing *McDermott International v. Wilander*, 498 U.S. 337, 349 (1991). Although the Fifth Circuit has not truly defined a "seaman", the Fifth Circuit did discuss such in a case examining whether individuals were classified as seaman for purposes of FLSA. *Owens v. Seariver Maritime Inc.*, 272 F.3d 698 (5th Cir. 2001). That Court held that the plaintiff's job as a tankerman whose main job it was to load and unload barges (exactly what Mr. Poole did) was not seaman's work, at least under the definition of the FLSA. *Owens, supra* at 704. The Court further explained that the loading and unloading of petroleum products from a vessel does not aid in the navigation or operation of the vessel, but only prepares a vessel for navigation, and that therefore he did not fall within the definition therefore as a "seaman." *Id.*

The fundamental purpose of this second requirement is to separate the sea-based maritime employees who are entitled to Jones Act protection from land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and whose employment does not regularly expose them to the perils of the sea. *Id.* at 368. The *Chandris* Court discussed the Fifth Circuit's general rule that a worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act and stated that this should serve as "no more than a guideline. . .and departure from it will certainly be justified in appropriate cases." *Id.* at 371. The United States Supreme Court in *Harbor Tug and Barge Co. v. Papai* further clarified the rule as set forth in *Chandris* by stating in part:

9

"For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry in both the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees." *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 555 (1997).

In fact, since the *Chandris* case, courts have granted summary judgment against workers who claim Jones Act seaman status irregardless of the fact that the worker may have spent more than 30 percent of his work time aboard vessels. *Saienni v. Capital Marine Supply, Inc.*, 2005 U.S. Dist. LEXIS 6928 at 29 (E. Dist. Of LA 2005) (citing *Bouvier v. Krenz*, 702 F.2d 89, 92 (5th Cir. 1988); *Schultz v. Louisiana Dock Co.*, 94 F. Supp.2d 746, 750 (E.D. La. 2000); *Richard v. Mike Hooks, Inc.*, 799 S.2d 462, 467 (La. 2001).

In *Bouvier*, the Fifth Circuit upheld the District Court's granting of summary judgment where the riggers were shore-based workers who worked a shift and then went home; never ate or slept aboard a vessel and never went to see. *Bouvier* at 90-91. The Court held that even though they spent more than 50 percent of their time working on ships that summary judgment was still proper given the totality of circumstances. *Id.*

In *Schultz*, the Court granted summary judgment even though the plaintiff averred that he spent time more than 40 percent of his time working on floating, moored barges and 40 percent of his time being transported on tugboats to reach barges. *Schultz*, at 750. The Court held that regardless of the amount of time he spent working on barges (one percent or 100 percent) that the totality of circumstances demonstrated that he was not a seaman as a matter of law. *Id.* The plaintiff in *Schultz* was a worker who was employed to repair barges, but much like Mr. Poole, the Court looked at the fact that the worker slept at home, drove to the facility each day, did not eat or sleep on any of the barges, never traveled or participated in any voyages with any of the barges being repaired and never acted as a deckhand on any vessel. *Id.* at 747.

In *Mike Hooks*, the Supreme Court of Louisiana applied *Chandris* to hold that a worker who spent more than 30 percent of his time on the defendant's vessels was not a seaman. *Mike Hooks*, supra at 466. The *Mike Hooks* court looked again at the totality of the employment and found that that the following factors indicated he was a land based seaman:  where all of the vessels that he worked upon were dockside; he was never more than a gang-plank's distance from the shore when working on the vessels; he never slept on the vessels; did not eat on the vessels; did not keep watch on the vessels overnight; was not a member of the dredge crew that performed welding; took orders from a land-based foreman; was only aboard small moving vessels once every month for short duration; and that his duties did not take him to sea. *Id.* at 466-467.  The Court concluded that while none of these facts alone prohibited the plaintiff from attaining seaman status, the totality of them indicated that he was a land-based employee and not a seaman. *Id.*

Several other Fifth Circuit cases have followed *Chandris* and have applied its two prong holding.  In 1999 the Fifth Circuit ruled in the *Hufnagel v. Omega Service Industries, Inc.* case. In that case the Court held that Richard Hufnagel who was injured while working on a drilling platform permanently affixed to the outer Continental Shelf off the coast of Louisiana was not a seaman and had no Jones Act case. *Hufnagel*, 182 F.3d 340 (Ct. App. 5th 1999).  That Court even went as far as holding that the fact that he ate, slept and spent time on the vessel did not make him a crew member, nor did the fact that he may have performed minor duties aboard. *Id.* at 347.

We turn now to apply the two prong test to the facts of this case.  The first prong to examine is whether the worker's duties contribute to the function of the vessel or to the accomplishment of its mission.  Courts have held as stated above that this prong requires that the

11

work be done *at sea.   Chandris, supra* at 368 (citing *Wilander, supra* at 354).   The Jones Act remedy is specifically reserved for those sea-based maritime employees whose work "regularly exposes them to "the special hazards and disadvantages to which they who go down to sea in ships are subjected.'"   *Chandris* at 370.

This first prong has also been limited by other courts.   For example, The Fifth Circuit in *Hufnagel*, found that the plaintiff did not perform the ship's work where his duties were not related to the navigation, maintenance or voyage of the vessel. *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 347 (5th Cir. 1999).   The Court in *Carr* similarly found the plaintiff not to be a seaman where his work on the barge did not "do the ship's work" where his work was not related to the "navigation, maintenance, or voyage of the barge." *Carr v. Fab-Com, Inc.*, 1999 U.S. Dist. LEXIS 12688 at pg. 9 (E.D. of La 1999).   Here, the work performed by Mr. Poole was not at sea, and like in *Hufnagel* and *Carr* did not relate to the navigation, maintenance or voyage of any given barge.   Furthermore, as discussed above, the Court in *Owens* in determining whether an employee was a "seaman" under the FLSA held that the loading and unloading of barges did not relate to the navigation, maintenance or voyage of the barge, but only helped to prepare the vessel for its voyage. *Owens*, 272 F.3d at 704.

Furthermore, the work performed by Mr. Poole was never done at sea, and his work, unlike the work of boat tankerman, did not expose him to the "perils of the sea."   Mr. Poole never traveled on a barge or a tug during his employment.   If he ever boarded a tug boat, it was only as a visitor and he was required to not only sign the guest book, but to also show identification.   Mr. Poole's work loading and unloading barges only prepared them for their voyage, but did not relate to the actual navigation, maintenance or voyage itself.

12

The second prong from *Chandris* requires that the worker must have a connection to the vessel in navigation or an identifiable group of vessels that is substantial in terms of both its duration and its nature. *Id.* at 368. The *Chandris* court indicated that a proper analysis of this element requires the Court to look at the totality of the circumstances and to make a determination as to whether the employee was a member of a crew or in actuality a land based employee who happened to do work on a vessel. *Id.* at 370. The case of *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 555 (1997) looked at this element further and indicated that the inquiry needed to be whether the employees duties take him to sea. Although Mr. Poole technically worked on vessels that were on the water, he was never on a vessel at sea which would expose him to the perils. The undisputed facts in this case demonstrate the following:

-Mr. Poole was never assigned to a boat

-Mr. Poole never worked on a barge while it was underway

-Mr. Poole never worked on a boat while it was underway

-Mr. Poole was never a crew member of a boat

-If Mr. Poole ever boarded a tug boat while working, he had to sign the visitor book and show identification upon boarding

-When he went on a barge, he was not introduced to members of the boat's crew

-Mr. Poole was never given a tour of the boat that he may have temporarily boarded

-Mr. Poole was never assigned a bunk on a boat

-Mr. Poole never slept aboard Kirby vessels

-Nobody ever explained to Mr. Poole the general operation of the boat

-Nobody ever explained to him what his work schedule would be on a boat

-Mr. Poole was never informed upon boarding a boat what to do in a man overboard drill

13

-Mr. Poole was never informed upon boarding a boat what to do in a collision drill

-Mr. Poole was never informed upon boarding a boat what to do for an abandon ship drill

-Mr. Poole did not work hitches, but performed shift work

-Mr. Poole was paid hourly and earned overtime pay

-If called during his seven days on call, Mr. Poole could pass on a job

-When going to a dock to perform work, Mr. Poole drove his own truck

-Mr. Poole was reimbursed for mileage to travel to the docks

-When performing a job, Mr. Poole would bring his own equipment

-When performing his job, Mr. Poole would bring his own lunch and beverages

-When performing transfer of liquid materials to or from the barge, Mr. Poole would be in control of the transfer, not the Captain of the tug boat

-The captain of the tug boat could not order Mr. Poole to clean the boat or cook food for the crew

-Mr. Poole never received any assignments from a boat or anybody on a boat while working for Kirby

-The individuals to whom Mr. Poole reported were not members of a crew or boat

-All Mr. Poole's reporting as to how the job was progressing and problems were reported to dispatch which was located downtown on-shore

-Mr. Poole never performed engine room maintenance

-Mr. Poole never prepared steel for paint or chipping, scaling or buffing the boats

-Mr. Poole never put out breast wires

-Mr. Poole never put out jockey wires

-Mr. Poole never put out face wires

14

-Mr. Poole never put out backing wires

-Mr. Poole never put out towing wires

-Mr. Poole never built a strung-out coupling, a breasted-up coupling or a high-low coupling

-Mr. Poole never broke a coupling or built a steering coupling

The above facts taken in conjunction with the affidavits of Mr. Kittley and Mr. Guidry clearly demonstrate that Mr. Poole was in fact a longshoreman and not a seaman who was exposed to the perils of the sea.  There is no genuine issue of material fact regarding Mr. Poole's status: he was not a seaman under the Jones Act at the time the incident occurred, or at any time while employed by Kirby.

## IV.
## CONCLUSION

The only conclusion to draw from these facts is that Mr. Poole was not a seaman under the Jones Act, but that he is a longshoreman. Accordingly, Defendants respectfully request that this Court grant summary judgment in their favor and dismiss the plaintiff's claims pursuant to the Jones Act as well as dismiss his claims for unseaworthiness and maintenance and cure pursuant to general maritime law.

15

Respectfully Submitted,

STEPP & SULLIVAN, P.C.

Dennis J. Sullivan
State Bar No. 19473750
Federal Bar No. 15100
Jad J. Stepp
State Bar No. 19169100
Federal Bar No. 5856
1010 Lamar Street, Suite 810
Houston, Texas 77002
Telephone: (713) 336-7200
Facsimile: (713) 336-7250

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am a member of Stepp & Sullivan, P.C., and that a true and correct copy of *Defendants' Motion for Summary Judgment* was served on counsel of record as noted below on this, the 26th day of May 2006.

*Via CM/RRR #7004 0750 0003 0340 5024*
Mr. Bristol Baxley
ROME, ARATA & BAXLEY, L.L.C.
1506 E. Broadway, Suite 103
Pearland, Texas 77581

*Via CM/RRR #7004 0750 0003 0340 5017*
Mr. Francis I. Spagnoletti
Mr. Michael Hogue
SPAGNOLETTI & CO.
1600 Smith, 45th Floor
Houston, Texas 77002

Dennis J. Sullivan

16

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| TIMOTHY JAMES POOLE | § | |
| | § | |
| VS. | § | C.A. NO. G05651 |
| | § | |
| KIRBY INLAND MARINE, LP and | § | Pursuant to Rule 9(h) of |
| KIRBY CORPORATION | § | the Federal Rules of |
| | § | Civil Procedure – AD |

### TABLE OF CONTENTS - EXHIBITS

### I.  SUMMARY JUDMENT EXHIBITS

Exhibit A.  Plaintiff's Original Complaint

Exhibit B.  Kirby Corporation's Original Answer

Exhibit C.  Kirby Inland Marine, LP's Original Answer

Exhibit D.  Transcript of the Oral Deposition of Timothy Poole taken May 9, 2006

Exhibit E.  Affidavit of James C. Guidry

Exhibit F.  Affidavit of Kallum K. Kittley

### II. COURTESY COPIES OF SUPREME COURT CASES AND CASES FROM FOREIGN JURISDICTIONS

1.  *Carr v. Fab-Com, Inc.*, 1999 U.S. Dist. LEXIS 12688 at pg. 9 (E.D. of La 1999)

2.  *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995)

3.  *Harbor Tug and Barge Co. v. Papai*, ,520 U.S. 548, 560 (1997)

4.  *Richard v. Mike Hooks, Inc.*, 799 S.2d 462, 467 (La. 2001)

5.  *Saienni v. Capital Marine Supply, Inc.*, 2005 U.S. Dist. LEXIS 6928 at 29 (E. Dist. Of LA 2005)

6.  *Schultz v. Louisiana Dock Co.*, 94 F. Supp.2d 746, 748 (E.D. of La 2000)

7.  *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104 (1946)