# United States District Court
# Southern District of Texas

## Case Number: OS - 651

## ATTACHMENT

**Description:**

☐ State Court Record          ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part _____ of _____

☒ Exhibit to: m/s/Qdmt
   number(s) /letter(s) Ex. A - D

Other: _____

_____

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TIMOTHY JAMES POOLE | § | CIVIL ACTION NO. _____ |
| | § | |
| VS. | § | |
| | § | Pursuant to Rule 9(h) of |
| KIRBY INLAND MARINE, LP and | § | the Federal Rules of |
| KIRBY CORPORATION | § | Civil Procedure - ADMIRALTY |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW TIMOTHY JAMES POOLE, Plaintiff, complaining of KIRBY INLAND

MARINE, LP and KIRBY CORPORATION, Defendants, and, for cause of action, would

respectfully show unto this Honorable Court the following:

I.

1. Plaintiff TIMOTHY JAMES POOLE is a citizen and resident of the Southern

District of Texas.

2. Defendant KIRBY INLAND MARINE, LP, is a foreign limited partnership with

its principal place of business in the Southern District of Texas, doing business in this

District and in the state of Texas for the purpose of accumulating monetary profit, and may

be served with process through its registered agent: CT Corporation System, 350 North

St. Paul Street, Dallas, Texas 75201.

3. Defendant KIRBY CORPORATION, is a Nevada corporation with its principal

place of business in the Southern District of Texas, doing business in this District and in

the state of Texas for the purpose of accumulating monetary profit, and may be served with

*Ex: A*

process through its registered agent: CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

## II.

This is a case of admiralty and maritime jurisdiction, brought pursuant to 28 U.S.C. § 1333, the general maritime law and the Jones Act 46 U.S.C. § 688, as hereinafter more fully appears. This is an admiralty or maritime claim within the meaning of Rule 9(h), and is brought pursuant to Rule 9(h).

## III.

Venue is proper in this matter pursuant to the admiralty and maritime laws of the United States, Rule 82 FRCP.

## IV.

Plaintiff is an American seaman and brings this action pursuant to 46 U.S.C. § 688 and pursuant to the 28 U.S.C. § 1333 and the general maritime law of the United States. As such, pursuant to 28 U.S.C. § 1916, Plaintiff brings this action without the necessity of pre-payment of costs, fees or the necessity of furnishing security therefor.

## V.

At all material times hereto, Defendants were the owners and/or operators of the KIRBY 11003, the vessel on which Plaintiff was injured, a vessel operating on the navigable waters of the United States of America.

## VI.

At all material times hereto, Plaintiff was an employee of Defendants, acting within the course and scope of his employment as a seaman and in the service of the vessel.

2

## VII.

On or about July 27, 2005, as Plaintiff was performing his regular duties while in the service of Defendants' vessel, he sustained severe and disabling injuries to his hand, among other injuries, when he tripped and fell over an obstruction on Defendants' catwalk. Said injuries were caused in whole or in part by the negligence of the Defendants, their agents, servants and/or employees and/or was legally caused by the unseaworthiness of the vessel.

## VIII.

On or about July 27, 2005, Plaintiff was working as a tankerman and member of the crew of the vessel owned and operated by Defendants.  While Plaintiff was performing duties in the vessel's service, he sustained injuries as described above.  Said Defendants failed in their duty to provide Plaintiff with a safe and seaworthy vessel on which to work.

## IX.

By reason of the occurrence made the basis of this action, including the conduct on the part of the Defendants, Plaintiff sustained severe bodily injuries as described above. As a result of said injuries, Plaintiff has suffered physical pain and mental anguish and, in reasonable medical probability, will continue to do so for the balance of his natural life.  As a result of the foregoing injuries, the Plaintiff has suffered a loss of wages in the past, and a loss of capacity to work and earn money in the future and, in reasonable probability, his earning capacity has been impaired permanently.  Additionally, Plaintiff has incurred reasonable and necessary medical expenses in the past and, in reasonable probability, will incur reasonable medical expenses in the future.  Additionally, as a result of the injuries

## XII.
## WRONGFUL TERMINATION

Plaintiff would further show that he was wrongfully terminated by Defendants and/or discharged by Defendants in retaliation for his claim and injuries made the basis of this suit.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, TIMOTHY JAMES POOLE, prays for judgment against Defendants, for all costs of Court, and for all such other and further relief, at law and in equity, to which he may be justly entitled.

Respectfully submitted,

/s/ Francis I. Spagnoletti

Francis I. Spagnoletti
State Bar No. 18869600
1600 Smith, 45th Floor
Houston, Texas 77002
Telephone:   713-653-5600
Facsimile:   713-653-5656

**OF COUNSEL:**

SPAGNOLETTI & CO.
1600 Smith, 45th Floor
Houston, Texas 77002
Telephone:   713-653-5600
Facsimile:   713-653-5656

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

**JAN 11 2006**

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| TIMOTHY JAMES POOLE | § | |
| | § | |
| VS. | § | C.A. NO. G05651 |
| | § | |
| KIRBY INLAND MARINE, LP and | § | **Pursuant to Rule 9(h) of** |
| KIRBY CORPORATION | § | **the Federal Rules of** |
| | § | **Civil Procedure - ADMIRALTY** |

## DEFENDANT KIRBY CORPORATION'S ORIGINAL ANSWER

COMES NOW Defendant, KIRBY CORPORATION and files its Original Answer, and would show unto this Honorable Court the following:

### FIRST DEFENSE

1. Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, Defendant avers that venue is improper herein.

### SECOND DEFENSE

2. Plaintiff has failed to state a claim upon which relief may be granted, and therefore Plaintiff's Original Complaints should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### THIRD DEFENSE

3. Subject to and without waiving the foregoing defenses, Defendant would show that the injuries alleged by Plaintiff were not incurred in the service or furtherance of this vessel, and therefore that he is unable to recover under the Jones Act as well as unable to recover maintenance and cure.

1

Ex: B

## FOURTH DEFENSE

4. Subject to and without waiving the foregoing defenses, Defendant specifically deny the allegations of Plaintiff's Original Complaint as follows:

    a.  Defendant cannot admit nor deny the allegations of Plaintiff's residence. Defendant admits that its principle place of business is located in Harris County, Texas, which is located within the Southern District of Texas.

    b.  Defendant denies that this action may be maintained under the Jones Act as asserted in Paragraph II of Plaintiff's Original Complaint, as Plaintiff is not a Jones Act seaman as that term is defined. Plaintiff admits that this Court has admiralty and maritime jurisdiction as a result of the Longshore and Harborworkers Compensation Act, 33 U.S.C. 901.

    c.  Defendant denies to venue being proper in the Southern District of Texas, Galveston Division, but admits as to venue being proper in the Southern District of Texas, Houston Division, for this matter.

    d.  Defendant denies Plaintiff's allegations contained in paragraph IV, and alleges that Plaintiff is not an American seaman, and is not entitled to bring this action as an American seaman, and therefore is not entitled to the relief requested.

    e.  Defendant denies Plaintiff's allegations contained in paragraph V.

    f.  Defendant denies that Plaintiff was an employee of Defendant on July 27, 2005, and denies that Plaintiff was acting within the course and scope of his employment as a seaman and in the service of the vessel at the time of this alleged incident.

g. Defendant denies that Plaintiff was performing his regular duties in service of the vessel, as alleged in paragraph VII, and further denies the entirety of allegations contained in paragraph VII.

h. Defendant admits that Plaintiff was working as a tankerman, but denies that Plaintiff was a member of the crew of the vessel as is alleged in paragraph VIII, and that Plaintiff was injured while performing duties in the vessel's service. Defendant denies the remainder of this paragraph in its entirety.

i. Defendant denies the entirety of paragraph IX, as alleged by Plaintiff.

j. Defendant alleges that some pre-existing conditions existed with regards Plaintiff, and denies the remainder of paragraph X as alleged by Plaintiff.

k. Defendant denies a duty to provide maintenance and cure to Plaintiff, as Plaintiff is not a seaman as that term is defined. Defendant denies Plaintiff's allegations in paragraph XI in their entirety.

l. Defendant denies Plaintiff's allegations made in paragraph XII in their entirety.

## FIFTH DEFENSE

5. For further answer, if such is necessary, Defendant would show that if Plaintiff was injured, such injury was a proximate result, in whole or in part, of Plaintiff's own contributory negligence and any damages to which Plaintiff is entitled should be reduced in an amount in proportion to the extent that the Plaintiff's negligence contributed to the same.

## SIXTH DEFENSE

6. For further answer, if such is necessary, Defendant would show that if Plaintiff was injured, then said injury or injuries were proximately caused by or contributed to by the actions of the Plaintiff.

## SEVENTH DEFENSE

7. For further answer, if such is necessary, Defendant would show that the physical condition, if any, of which Plaintiff complains was and is due to the acts and/or omissions of third persons and/or instrumentalities not under the control of the Defendant and for which Defendant is not legally responsible.

## EIGHTH DEFENSE

8. For further answer, if such is necessary, Defendant would show that Plaintiff's alleged injuries and damages, if any, are solely and/or partially the result of pre-existing bodily conditions and/or prior injuries, for which Defendant is not responsible.

## NINTH DEFENSE

9. For further answer, if such is necessary, Defendant would show that Plaintiff's alleged injuries and damages, if any were not caused or contributorily caused by Defendant, or anyone for whom Defendant is responsible.

## TENTH DEFENSE

10. For further answer, if such is necessary, Defendant would show that Plaintiff's alleged injuries and damages, if any, are solely and/or partially the result of subsequent bodily conditions and/or subsequent injuries, for which this Defendant is not responsible.

4

## ELEVENTH DEFENSE

11. For further answer, if such is necessary, Defendant would show that Plaintiff's claims against Defendant are governed exclusively by the Longshore and Harbor Worker's Compensation Act (the LHWCA) 33 U.S.C. § 901, et. Seq., as construed by the U.S. Supreme Court in Scindia Steam Navigation Co. Ltd. vs. De Los Santos, 451 U.S. 156 (1981), and its progeny.

## PRAYER AND CONCLUSION

THEREFORE, for the above stated reasons, Defendant KIRBY CORPORATION respectfully requests that the Plaintiff take nothing, that Defendant be discharged of all liability herein, that costs be assessed against Plaintiff and that Defendant is awarded such other and further relief to which they  may be justly entitled in either law or equity.

Respectfully Submitted,

STEPP & SULLIVAN, P.C.

Dennis J. Sullivan
State Bar No.  19473750
Federal Bar No. 15100
1010 Lamar Street, Suite 810
Houston, Texas 77002
Telephone:  (713) 336-7200
Facsimile:  (713) 336-7250
**ATTORNEYS FOR DEFENDANT**
**KIRBY CORPORATION**

**OF COUNSEL:**
Jad J. Stepp
Stepp & Sullivan, P.C.
State Bar No. 19169100
Federal Bar No. 5856
1010 Lamar Street, Suite 810
Houston, Texas 77002
Telephone:  (713) 336-7200
Facsimile:  (713) 336-7250

5

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am a member of Stepp & Sullivan, P.C., and that a true and correct copy of Defendant Kirby Corporation's Original Answer was served on counsel of record as noted below on this, the 10 day of January 2006.

**_Via Facsimile: (713) 653-5656_**
**_and Certified Mail – RRR_**
Mr. Francis I. Spagnoletti
Spagnoletti & Co.
1600 Smith, 45th Floor
Houston, Texas 77002

Dennis J. Sullivan

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

United States Courts
Southern District of Texas
FILED

JAN 11 2006

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| TIMOTHY JAMES POOLE | § | |
| | § | |
| VS. | § | C.A. NO. G05651 |
| | § | |
| KIRBY INLAND MARINE, LP and | § | Pursuant to Rule 9(h) of |
| KIRBY CORPORATION | § | the Federal Rules of |
| | § | Civil Procedure - ADMIRALTY |

## DEFENDANT KIRBY INLAND MARINE, LP's ORIGINAL ANSWER

COMES NOW Defendant, KIRBY INLAND MARINE, LP and files its Original Answer, and would show unto this Honorable Court the following:

### FIRST DEFENSE

1. Pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, Defendant avers that venue is improper herein.

### SECOND DEFENSE

2. Plaintiff has failed to state a claim upon which relief may be granted, and therefore Plaintiff's Original Complaints should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### THIRD DEFENSE

3. Subject to and without waiving the foregoing defenses, Defendant would show that the injuries alleged by Plaintiff were not incurred in the service or furtherance of this vessel, and therefore that he is unable to recover under the Jones Act as well as unable to recover maintenance and cure.

Ex: C

## FOURTH DEFENSE

4. Subject to and without waiving the foregoing defenses, Defendant specifically deny the allegations of Plaintiff's Original Complaint as follows:

    a.  Defendant cannot admit nor deny the allegations of Plaintiff's residence. Defendant admits that its principle place of business is located in Harris County, Texas, which is located within the Southern District of Texas.

    b.  Defendant denies that this action may be maintained under the Jones Act as asserted in Paragraph II of Plaintiff's Original Complaint, as Plaintiff is not a Jones Act seaman as that term is defined.  Plaintiff admits that this Court has admiralty and maritime jurisdiction as a result of the Longshore and Harborworkers Compensation Act, 33 U.S.C. 901.

    c.  Defendant denies to venue being proper in the Southern District of Texas, Galveston Division, but admits as to venue being proper in the Southern District of Texas, Houston Division, for this matter.

    d.  Defendant denies Plaintiff's allegations contained in paragraph IV, and alleges that Plaintiff is not an American seaman, and is not entitled to bring this action as an American seaman, and therefore is not entitled to the relief requested.

    e.  Defendant admits that it owned and operated the KIRBY 11003 on July 27, 2005, but denies that Plaintiff was injured on a vessel operating on the navigable waters of the United States.

    f.  Defendant admits that Plaintiff was an employee of Defendant on July 27, 2005, but denies that Plaintiff was acting within the course and scope of his

employment as a seaman and in the service of the vessel at the time of this alleged incident.

g. Defendant denies that Plaintiff was performing his regular duties in service of the vessel, as alleged in paragraph VII, and further denies the entirety of allegations contained in paragraph VII.

h. Defendant admits that Plaintiff was working as a tankerman, but denies that Plaintiff was a member of the crew of the vessel as is alleged in paragraph VIII, and that Plaintiff was injured while performing duties in the vessel's service. Defendant denies the remainder of this paragraph in its entirety.

i. Defendant denies the entirety of paragraph IX, as alleged by Plaintiff.

j. Defendant alleges that some pre-existing conditions existed with regards Plaintiff, and denies the remainder of paragraph X as alleged by Plaintiff.

k. Defendant denies a duty to provide maintenance and cure to Plaintiff, as Plaintiff is not a seaman as that term is defined. Defendant denies Plaintiff's allegations in paragraph XI in their entirety.

l. Defendant denies Plaintiff's allegations made in paragraph XII in their entirety.

## FIFTH DEFENSE

5. For further answer, if such is necessary, Defendant would show that if Plaintiff was injured, such injury was a proximate result, in whole or in part, of Plaintiff's own contributory negligence and any damages to which Plaintiff is entitled should be reduced in an amount in proportion to the extent that the Plaintiff's negligence contributed to the same.

### SIXTH DEFENSE

6.  For further answer, if such is necessary, Defendant would show that if Plaintiff was injured, then said injury or injuries were proximately caused by or contributed to by the actions of the Plaintiff.

### SEVENTH DEFENSE

7.  For further answer, if such is necessary, Defendant would show that the physical condition, if any, of which Plaintiff complains was and is due to the acts and/or omissions of third persons and/or instrumentalities not under the control of the Defendant and for which Defendant is not legally responsible.

### EIGHTH DEFENSE

8.  For further answer, if such is necessary, Defendant would show that Plaintiff's alleged injuries and damages, if any, are solely and/or partially the result of pre-existing bodily conditions and/or prior injuries, for which Defendant is not responsible.

### NINTH DEFENSE

9.  For further answer, if such is necessary, Defendant would show that Plaintiff's alleged injuries and damages, if any were not caused or contributorily caused by Defendant, or anyone for whom Defendant is responsible.

### TENTH DEFENSE

10. For further answer, if such is necessary, Defendant would show that Plaintiff's alleged injuries and damages, if any, are solely and/or partially the result of subsequent bodily conditions and/or subsequent injuries, for which this Defendant is not responsible.

4

## **ELEVENTH DEFENSE**

11. For further answer, if such is necessary, Defendant would show that Plaintiff's claims against Defendant are governed exclusively by the Longshore and Harbor Worker's Compensation Act (the LHWCA) 33 U.S.C. § 901, et. Seq., as construed by the U.S. Supreme Court in <u>Scindia Steam Navigation Co. Ltd. vs. De Los Santos</u>, 451 U.S. 156 (1981), and its progeny.

## **PRAYER AND CONCLUSION**

THEREFORE, for the above stated reasons, Defendant KIRBY INLAND MARINE, LP respectfully requests that the Plaintiff take nothing, that Defendant be discharged of all liability herein, that costs be assessed against Plaintiff and that Defendant is awarded such other and further relief to which they may be justly entitled in either law or equity.

Respectfully Submitted,

STEPP & SULLIVAN, P.C.

Dennis J. Sullivan
State Bar No. 19473750
Federal Bar No. 15100
1010 Lamar Street, Suite 810
Houston, Texas 77002
Telephone: (713) 336-7200
Facsimile: (713) 336-7250
**ATTORNEYS FOR DEFENDANT
KIRBY INLAND MARINE, LP**

**OF COUNSEL:**
Jad J. Stepp
Stepp & Sullivan, P.C.
State Bar No. 19169100
Federal Bar No. 5856
1010 Lamar Street, Suite 810
Houston, Texas 77002
Telephone: (713) 336-7200
Facsimile: (713) 336-7250

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am a member of Stepp & Sullivan, P.C., and that a true and correct copy of Defendant Kirby Inland Marine, LP's Original Answer was served on counsel of record as noted below on this, the 10 day of January 2006.

**_Via Facsimile: (713) 653-5656_**
**_and Certified Mail – RRR_**
Mr. Francis I. Spagnoletti
Spagnoletti & Co.
1600 Smith, 45th Floor
Houston, Texas 77002

_____
Dennis J. Sullivan

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **TIMOTHY JAMES POOLE** | § | |
| | § | |
| **VS.** | § | **C.A. NO. G05651** |
| | § | |
| **KIRBY INLAND MARINE, LP and** | § | **Pursuant to Rule 9(h) of** |
| **KIRBY CORPORATION** | § | **the Federal Rules of** |
| | § | **Civil Procedure – AD** |

### AFFIDAVIT OF DENNIS J. SULLIVAN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the aforesaid state and county, personally came and appeared Dennis J. Sullivan, who upon being duly sworn did state as follows:

1.    My name is Dennis J. Sullivan. I am over 21 years of age, of sound mind and body, and fully competent to make this affidavit. The statements herein are based on my personal knowledge as Stepp & Sullivan P.C., counsel for Defendants Kirby Inland Marine, LP and Kirby Corporation.

2.    I am an attorney licensed to practice in the State of Texas.

3.    I have prepared this Affidavit in support of Defendants Kirby Inland Marine, LP and Kirby Corporation's Motion for Summary Judgment. All exhibits are true and correct copies of the deposition transcripts and pleadings filed with the court.

4.    I further state everything in the attached Motion for Summary Judgment is true and correct.

Ex: D

FURTHER AFFIANT SAYETH NOT.

_____
DENNIS J. SULLIVAN

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, this 26th day of

May, 2006.

_____
Notary Public for State of Texas

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TIMOTHY JAMES POOLE | ) | C.A. NO. G05651 |
| | ) | |
| VS. | ) | |
| | ) | Pursuant to Rule 9(h) of |
| KIRBY INLAND MARINE, LP | ) | The Federal Rules of |
| and KIRBY CORPORATION | ) | Civil Procedure - ADMIRALTY |

*******************************

ORAL DEPOSITION OF
TIMOTHY JAMES POOLE
May 9, 2006

*******************************

Reported by:  LORRAINE BRAZIL, CSR, RPR, CRR, RMR
Job No. 57339



**CERTIFIED COPY**

Sunbelt Reporting & Litigation Services

CORPORATE OFFICE
6575 West Loop South, Suite 580
Houston / Bellaire, Texas 77401
713•667•0763

DALLAS
15150 Preston, Suite 300
Dallas, Texas 75248
214•747•0763

CORPUS CHRISTI
711 N. Carancahua, Suite 700
Corpus Christi, Texas 78475
361•882•0763

1•800•666•0763 • www.sunbeltreporting.com

Ex: D

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1                          INDEX
                                                    PAGE
2   Appearances................................................  3

3

    TIMOTHY JAMES POOLE
4
        EXAMINATION BY MR. SULLIVAN.........................  4
5

6   Changes and Signature..................................  84
    Reporter's Certificate.................................  85
7   Reporter's Supplemental Certificate....................  86

8                         EXHIBITS

9   NO.   DESCRIPTION                                   PAGE

10  1     River Oaks Imaging patient history form, two pages... 63
    2     Kirby Inland Marine health history questionnaire,
11        page 1................................................ 66
    3     Kirby Inland Marine health history questionnaire,
12        page 2................................................ 66
    4     Kirby Inland Marine health history questionnaire,
13        page 3................................................ 67
    5     Kirby Inland Marine health history questionnaire,
14        page 4................................................ 67
    6     Kirby Inland Marine health history questionnaire,
15        page 5................................................ 69
    7     Kirby Inland Marine health history questionnaire,
16        page 6................................................ 71
    8     Kirby Inland Marine health history questionnaire,
17        page 7................................................ 72
    9     Kirby Inland Marine health history questionnaire,
18        page 8................................................ 72
    10    Kirby Inland Marine health history questionnaire,
19        page 9................................................ 74
    11    Kirby Inland Marine health history questionnaire,
20        page 10............................................... 74
    12    Kirby Inland Marine health history questionnaire,
21        page 11............................................... 75
    13    Kirby Inland Marine health history questionnaire,
22        page 12............................................... 76
    14    Kirby Inland Marine health history questionnaire,
23        page 13............................................... 77
    15    Kirby Logistics management equipment list, 10-6-04... 78
24

25

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1       ORAL DEPOSITION OF TIMOTHY JAMES POOLE, produced as

2    a witness at the instance of the DEFENDANT, and duly

3    sworn, was taken in the above-styled and numbered cause

4    on May 9, 2006, from 10:10 a.m. to 12:25 p.m., before

5    LORRAINE BRAZIL, CSR, RPR, CRR, RMR, in and for the

6    State of Texas, reported at the offices of Rome, Arata &

7    Baxley, L.L.C., 1506 E. Broadway, Suite 103, Pearland,

8    Texas, Houston, Texas, pursuant to the Federal Rules of

9    Civil Procedure and the provisions stated in the record

10   or attached hereto.

11

12                  A P P E A R A N C E S

13

FOR THE PLAINTIFF:

14

         Mr. Bristol A. Baxley

15       Rome, Arata & Baxley, L.L.C.
         1506 East Broadway

16       Suite 103
         Pearland, Texas 77581

17       281-993-0035

18   FOR THE DEFENDANT:

19       Mr. Dennis J. Sullivan
         Stepp & Sullivan, P.C.

20       1010 Lamar
         Suite 810

21       Houston, Texas 77002
         713-336-7250

22

23                  * * * * *

24

25

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1                     TIMOTHY JAMES POOLE,

2     having been first duly sworn, testified as follows:

3                          EXAMINATION

4     QUESTIONS BY MR. SULLIVAN:

5          Q     Can you please state your name for me?

6          A     Timothy James Poole.

7          Q     And what's your current address?

8          A     3313 Park Haven.

9          Q     How long have you lived there?

10         A     Four years.

11         Q     How old are you?

12         A     40 years old.

13         Q     And what's your date of birth?

14         A     3-25-1966.

15         Q     Do you have any children?

16         A     Yes, sir.

17         Q     How many do you have?

18         A     I got two stepkids and two sons.

19         Q     What are their names and how old are they?

20         A     Ryan is 19, Heather is 14.  Alexander is 10 --

21    going to be 10 and James is 6.

22         Q     And do they all live with you?

23         A     Just three of them.

24         Q     Okay.  Which ones live with you?

25         A     Ryan, Heather, and James.

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

```
 1      Q    And the fourth child is?

 2      A    Alexander, he lives with his mom.

 3      Q    Okay.  What's your Social Security number?

 4      A    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.

 5      Q    And do you have a Texas driver's license?

 6      A    Yes, sir.

 7      Q    Do you know that number?

 8      A    11429768.

 9      Q    What -- how many times have you been married?

10      A    Twice.

11      Q    When were you married the first time?

12      A    We got married in '92.

13      Q    And --

14      A    Divorced in '97.

15      Q    And how about the second time?

16      A    Got married in '98.

17      Q    And you're still married?

18      A    Yes, sir.

19      Q    Have you ever been in the military?

20      A    No.

21      Q    Have you ever tried to get into the military

22 but been denied?

23      A    No.

24      Q    Did you graduate from high school?

25      A    Yes, sir.
```

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1    Q    Where did you graduate from high school at?

2    A    Robert E. Lee in Baytown.

3    Q    Did you do any college work after that?

4    A    Yes, sir.

5    Q    Where did you go to school?

6    A    I went to Lee College for a couple years but

7 then I quit to get married.

8    Q    What were you studying over at Lee College?

9    A    Basics, I was going to take political science.

10    Q    Were you going to school at night or going to

11 school full-time?

12    A    Going to school full-time.

13    Q    How many hours did you get over at Lee College?

14    A    I think anywhere from 15 to 20 semester hours'

15 credit.

16    Q    What other kind of formal training or schooling

17 have you had besides high school and Lee College?

18    A    I went to San Jac to get a certificate in

19 chemical processing technology.

20    Q    When did you do that?

21    A    I want to say it was '94.

22    Q    Okay.  Has there been anything else?

23    A    No.

24    Q    All right.  Have you had any formal training as

25 part of a job?

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1     A    Meaning?

2     Q    Did you go through a formal training class or

3 formal training procedure at Kirby?

4     A    Yes, sir.

5     Q    Did you do that with any other employer,

6 something similar?

7     A    I'm trying to think.  Not that I'm aware of,

8 no.

9     Q    Once you -- well, what was your first, quote,

10 real job?  I mean not working at McDonald's part-time

11 during high school or anything like that but --

12     A    Construction work, building scaffolds and forms

13 back in the -- late Eighties, early Nineties.

14     Q    Who was that for?

15     A    H. B. Zachry.

16     Q    All right.  When did you leave them?  Do you

17 remember?

18     A    Early Nineties.

19     Q    What's the next job you had?

20     A    Went to work for Motion Industries.

21     Q    And doing what?

22     A    Delivery driver at first, delivering bearings

23 to chemical plants and stuff like that, then I went to

24 inside sales.

25     Q    How long were you there?

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

```
 1      A      I want to say I was there for two and a half
 2  years maybe.
 3      Q      Why did you leave that job?
 4      A      Me and my ex-wife got separated, so I quit.
 5  For some reason, I got depressed, didn't show up.  They
 6  got rid of me.
 7      Q      What's the next job you had?
 8      A      After that, I went to -- I was working at Car
 9  Quest.
10      Q      Doing what?
11      A      Parts salesman.
12      Q      How long were you there?
13      A      I want to say about seven months.
14      Q      And where did you go after that?
15      A      After that, I got remarried and we moved up to
16  Normangee.
17      Q      Where is Normangee?
18      A      It's north of Huntsville.
19      Q      How long did you live in Normangee?
20      A      Three years.
21      Q      Were you working up there?
22      A      Yes.
23      Q      What you were doing?
24      A      I went to work for ALMCO.
25      Q      Doing what?
```

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

```
 1      A     Fixing windows, making windows.

 2      Q     How long did you have that job?

 3      A     About a year.

 4      Q     And then what did you do?

 5      A     I went to work for Grant Pride Co.

 6      Q     Doing what?

 7      A     Moving oil field pipes around and forklifts.

 8      Q     And how long did you stay there?

 9      A     About six months.

10      Q     And after that, where did you go?

11      A     I was a ranch foreman.

12      Q     For who?

13      A     For Michael Brown.

14      Q     Is it a private ranch?

15      A     Yes.

16      Q     How long -- where is that ranch at?

17      A     It's right there in Normangee.

18      Q     How long were you there?

19      A     Probably about two and a half years.

20      Q     Where did you go after that job?

21      A     We moved back down near to Deer Park.

22      Q     Why did you do that?

23      A     Terry wanted to be closer to her mom and dad.

24      Q     Once you came -- when did you move back down to

25    Deer Park?
```

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1     A     In -- let's see, October 2003.

2     Q     Did you get a job down here?

3     A     Yeah.

4     Q     Where did you start work?

5     A     I started working security guard at Exxon for

6   Dave Zimmerman.

7     Q     How long were you doing that?

8     A     About a year.

9     Q     Where did you go after that?

10    A     Went to the City of La Porte.

11    Q     What were you doing at City of La Porte?

12    A     I worked in the sewer and water department.

13    Q     Doing what?

14    A     Repairing lines, fixing the taps for the sewer

15  line.

16    Q     And how long did you have that job?

17    A     Year and a half.

18    Q     And then where did you go after that?

19    A     I went to Kirby.

20    Q     When -- do you know when your start date at

21  Kirby was?

22    A     I want to say it was in October of '99.

23    Q     Okay.

24    A     Not '99.  I mean, 2004.

25    Q     2004?

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1     A   (Witness nods head.)

2     Q   How did you -- how did you find Kirby?

3     A   A family friend of one of Terry's parents'

4 friend, Karen, works for them downtown, the insurance.

5 She told me about them.

6     Q   Okay.  Who's the family friend?

7     A   Karen.  I can't remember her last name.

8     Q   Okay.  When -- okay.  How did you -- I guess

9 how did you decide to come and apply with Kirby?  You

10 just heard they were hiring?  You just decided you

11 wanted to do this type of work?

12    A   I wanted to make money.  I wasn't make enough

13 money at the City of La Porte to make ends meet.  She

14 told me they pay pretty good.

15    Q   Did you have any idea of what you wanted to do

16 at Kirby when you went to apply?

17    A   Yeah.  I told them I didn't want to go on the

18 boats.

19    Q   Okay.  And why didn't you want to go on the

20 boat?

21    A   Because I wanted to spend time with my wife and

22 my kids.

23    Q   While at Kirby, were you ever assigned to a

24 boat?

25    A   No.

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1      Q      Did you ever sleep onboard a boat?

2      A      No.

3      Q      Were you ever a crew member of a boat?

4      A      No.

5      Q      When you went in to apply and you told them you

6   didn't want to be on a boat, what did they tell you they

7   could do for you?

8      A      They said they could put me with their

9   shoreside division.

10     Q      And that is what they did?

11     A      Yes.

12     Q      Where did you go to fill out your application?

13     A      At their office right there on Market Street.

14     Q      Okay.  And once you filled out your

15   application, what did you do or what did they do with

16   you?

17     A      They called me back for an interview with

18   Augie.

19     Q      And what happened after that interview?

20     A      They sent me down to get a physical and drug

21   tested.

22     Q      And then after you got your physical and drug

23   test, what happened then?

24     A      They sent me up there to talk to Chris Mooney

25   and Cal.

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1      Q      And are they with Kirby Logistics?

2      A      Yes, sir.

3      Q      What's your understanding of what Kirby

4  Logistics is?

5      A      Shoreside tankerman division.

6      Q      When you say a "shoreside tankerman," what do

7  you mean by "shoreside tankerman"?

8      A      Means you go from dock to dock every day

9  working on barges.

10     Q      Is there any -- well, skip that.

11            Once you talked to Cal Kittly and the

12  folks over at Kirby Logistics, what happened then?

13     A      Watched a film for about four days, safety

14  films, stuff like that, in the office.

15     Q      Did you go through deckhand training, anything

16  like that?

17     A      Yeah, she sent me to a week of that, the

18  training center.

19     Q      And did you pass that?

20     A      Yeah.

21     Q      And then what was your -- when you came out of

22  your training, what was your designation?

23     A      Tankerman trainee.

24     Q      And how long were you a tankerman trainee?

25     A      About a month.

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1     Q     After you were a tankerman trainee, did you get
2  a promotion or did your designation change?
3     A     Well, as I did the month training, I went
4  through the training center for the tankerman class with
5  the Coast Guard.  After I got out of that, I got
6  promoted.
7     Q     What was your designation after that tankerman
8  class?
9     A     Tankerman.
10    Q     Okay.  Were you -- are there different levels
11 of tankerman, for shoreside tankerman?
12    A     No.
13    Q     Okay.  Do you know if there's different levels
14 of tankerman on the boats?
15    A     Not that I know of, no.
16    Q     Okay.  So you weren't designated tankerman
17 level one, tankerman level two, tankerman level three,
18 anything like?
19    A     I was designated tankerman.
20    Q     When -- okay.
21          You don't have any, I'll say,
22 life-threatening-type illnesses or diseases such as
23 cancer, HIV, blood diseases, hepatitis, anything like
24 that, do you?
25    A     Not that I know of, no.

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1      Q      You're not under the care of a psychiatrist or
2  psychologist, are you?
3      A      No.
4      Q      Have you ever been under the care of a
5  psychologist or psychiatrist?
6      A      No.
7      Q      In the past, have you had injuries to your
8  back?
9      A      No.
10     Q      Okay.  Have you received medical treatment for
11  pain in your back?
12     A      Not that I'm aware of, no.
13     Q      Okay.  How many surgeries to your knees have
14  you had?
15     A      Two.
16     Q      What knees have you had surgeries on?
17     A      Left.
18     Q      What were those surgeries?
19     A      ACL replacements.
20     Q      Both of them were ACL replacements?
21     A      Yes, sir.
22     Q      When were they -- when did you have your
23  surgeries to your left knees?
24     A      I want to say '92 or '93 and then '95 or '96.
25     Q      Okay.  The '92 surgery, what was the -- how did

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1    it come about that you needed surgery?

2        A    I was playing volleyball at a company picnic

3    and a guy landed on my knee and snapped the ligament.

4        Q    Sounds painful just by hearing it.

5        A    It was.

6        Q    How long did it take you to get your treatment

7    and recuperate?

8        A    About six months.

9        Q    Who was your surgeon back then?  Do you

10   remember?

11       A    Not offhand, no.

12       Q    Was it here in Houston?

13       A    I want to say it's Pasadena.  I think it was at

14   Bayshore.

15       Q    Were you happy with the results of the surgery?

16       A    No.

17       Q    Why not?

18       A    Because the knee kept popping, and I kept

19   having pain after the therapy and everything.

20       Q    And why did you have a second surgery in '95?

21       A    Because I went to a specialist and they did

22   another MRI and found out when he replaced the ligament,

23   he put it in at an angle instead of straight up and

24   down, so he had to go in there endoscopically and repair

25   it.

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1       Q       And how long were you off work for that second
2    surgery?
3       A       I wasn't off work.  I was still on light
4    duty -- not light duty, but I was inside sales.  I
5    didn't have to go out and really do much work.
6       Q       Were you taking off work at all?
7       A       Just for the surgery.
8       Q       How long before your knee healed from that
9    surgery?
10      A       I want to say after the second surgery, about
11   two or three months because he just went in endoscopic.
12   He didn't have to cut the whole thing out and take the
13   knee apart like he did the first time.
14      Q       Now, were you happy with the results of the
15   second surgery?
16      A       Yeah.
17      Q       Okay.  Do you have any problems with your left
18   knee today?
19      A       Sometimes when it gets cold it acts up but, no.
20      Q       Did the left knee -- did your left knee play
21   any part in the fall that you had on the barge when you
22   were working for Kirby --
23      A       No.
24      Q       -- that we're here in this lawsuit about?
25      A       No.

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1      Q     Have you had carpal tunnel surgery?

2      A     Yes, sir.

3      Q     And have you had that surgery in both your

4 right and left hands?

5      A     Yes, sir.

6      Q     When did you have that done?

7      A     I want to say like 2000, 2001.  I'm not really

8 sure of exact dates.

9      Q     Why did you have that done?

10      A     Because my hands kept getting numb and falling

11 asleep on me.

12      Q     Did your doctors tell you why that was

13 happening or what was causing it?

14      A     He said nerves inside somewhere in here was

15 getting pinched.  It was carpal tunnel.

16      Q     Did they do both hands at the same time?

17      A     Yes, sir.

18      Q     How long did it take for you to heal after

19 those surgeries?

20      A     I would say about a month, month and a half.

21      Q     Do you have any of those problems with your

22 hands anymore?

23      A     No.

24      Q     Were -- was that done under workers' comp or

25 anything?

ORAL DEPOSITION OF TIMOTHY JAMES POOLE

1      A      No.

2      Q      The ACL repairs, was that done under workers'
3  comp?

4      A      No.

5      Q      Did you just have personal health insurance to
6  help you out to pay for that?

7      A      Yes, sir.

8      Q      Any other surgeries to your hands?

9      A      I had a cyst removed from the wrist and I had
10 trigger finger on my -- right here.

11     Q      Of your right wrist?

12     A      Yes, sir.

13     Q      Right hand surgery or right -- okay.  When did
14 you have a cyst removed?

15     A      I want to say it was 2002, 2003 maybe.

16     Q      Okay.  Did you ever have a bone graft?

17     A      Yeah, that's what I am talking about.

18     Q      And what did they actually do to your hand
19 during that surgery?

20     A      As far as what I was told, see, got a little
21 slash here and drilled out part of the bone in there and
22 packed with some kind of bone marrow something.

23     Q      Okay.  When did that happen?

24     A      I want to say 2002, 2003.

25     Q      How long did it take that to heal?