# United States District Court Southern District of Texas

## Case Number: OS-651

## ATTACHMENT

**Description:**

☐ State Court Record     ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part _____ of _____

☒ Exhibit to: MSJ  Ex 1  + 2 + 3
      number(s) / letter(s) _____

Other: _____

_____

LEXSEE 1999 U.S. DIST. LEXIS 12688

**LYNN CARR VERSUS FAB-CON, INC., ET AL**

**CIVIL ACTION NO. 99-1964 C/W 99-1981 SECTION "G"**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*1999 U.S. Dist. LEXIS 12688*

**August 16, 1999, Decided**
**August 16, 1999, Filed; August 16, 1999, Entered**

**DISPOSITION:** [*1] Plaintiff's claims related to November 15, 1996 and March 9, 1997 accidents REMANDED to 25th J.D.C., Plaquemines Parish, Louisiana.

**COUNSEL:** For LYNN BAXTER CARR, plaintiff: Lawrence Blake Jones, David Christopher Whitmore, Julie Marie Sumrall, Scheuermann & Jones, New Orleans, LA.

For FAB-CON INC, defendant: Jacqueline L. Egan, David Keith Johnson, Egan, Johnson & Stiltner, Baton Rouge, LA.

For OCEAN ENERGY INC, defendant: Roger E. Ishee, Onebane, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, LA.

For CLIFFS DRILLING COMPANY, defendant: Charles A. Mouton, Preis, Kraft & Roy, Lafayette, LA.

**JUDGES:** MOREY L. SEAR, U.S. DISTRICT JUDGE.

**OPINIONBY:** MOREY L. SEAR

**OPINION:**

MEMORANDUM AND ORDER

Background

Before the court is plaintiff's motion to remand this action to state court on grounds that the court lacks removal jurisdiction under *28 U.S.C. § 1441.* The defendants' asserted basis for removal is that plaintiffs' claims arise under the Constitution, treaties, or laws of the United States, more specifically, the Outer Continental Shelf Lands Act, *43 U.S.C. § 1349,* and plaintiff has improperly pled claims under the Jones Act [*2] simply to defeat removal.

Plaintiff filed suit in the Twenty-Fifth Judicial District Court, Plaquemines Parish, Louisiana, against Fab-Con, Inc. (his employer), and Flores & Rucks, Inc., Ocean Energy, Inc., and Cliffs Drilling Company, entities with whom Fab-Con had contracted to perform fabrication work on their fixed petroleum platforms.

Plaintiff's suit encompasses three alleged accidents as follows: (1) On November 15, 1996, while lifting sections of pipe, plaintiff allegedly injured his back, neck, upper and lower extremities while fabricating pipe to be installed on a fixed oil platform in Timbalier Bay; (2) on March 9, 1997, while working on the same Timbalier Bay project, a knife plaintiff was using allegedly slipped suddenly and without warning, and plaintiff suffered a severe laceration to his left forearm; and (3) on April 13, 1997, while fabricating material for a platform in Vermilion Bay, plaintiff exacerbated the original injury while lifting pipe.

According to plaintiff's affidavit, attached to his motion to remand, the first two accidents occurred aboard a barge owned and/or operated by his employer, Fab-Con, Inc. in Timbalier Bay, while the third accident occurred [*3] while working on a fixed platform in Vermilion Bay on another project. n1 Defendants Ocean Energy, Flores & Rucks and Cliffs Drilling have no connection to the first two accidents; they owned and operated the fixed petroleum platform in Vermilion Bay.

n1 Affidavit of Lynn Carr, Exhibit A to Motion to Remand.

Plaintiff avers that in connection with the first two accidents (the first lifting accident and the knife accident), he was employed by Fab-Con as a welder to fabri-

Ex 1

1999 U.S. Dist. LEXIS 12688, *

cate and install pipe on a platform in Timbalier Bay. n2 A Fab-Con barge was situated offshore and served as the workplace for the welders and other workers who were fabricating materials for the fixed petroleum platform nearby. n3 The workers also ate, slept, showered and attended meetings on the Fab-Con barge, and their immediate supervisor was the captain of the barge, Arthur Giles. n4 According to plaintiff, eighty (80) percent of his time was spent on the barge, and the other twenty (20) percent was spent on the fixed platform, taking measurements [*4] and installing pipe. n5 The injuries occurred while performing preparatory fabrication and repair work on the barge, which served as a work surface. n6

> n2 See id. at PPs III and IV.
>
> n3 Id.
>
> n4 Id.
>
> n5 Id.
>
> n6 Id.

Plaintiff avers that in connection with the third accident, he was employed by Fab-Con as a welder to fabricate pipe for a platform owned by Flores & Rucks (now known as Ocean Energy) in Vermilion Bay. n7 A movable jack-up rig was located next to the fixed platform, but this time, the fixed platform served as the designated work place, and plaintiff spent sixty (60) percent of his time there. n8 He only ate, slept, showered, attended safety meetings and kept his work materials on the movable jack-up rig. The lifting injury occurred while working on the fixed platform. n9

> n7 See id. at P V.
>
> n8 See id.
>
> n9 Id.

[*5]

In connection with all three accidents, the causes of action alleged in plaintiff's petition include negligence under the Jones Act, *46 U.S.C. § 688* and a claim for unseaworthiness under the general maritime law; alternatively, vessel negligence under the Longshore and Harbor Workers Compensation Act, *33 U.S.C. § 905*(b) (LHWCA); and negligence under the laws and statutes of the state of Louisiana. n10

> n10 Original Petition for Damages at P 2, Exhibit B to Memorandum of Cliffs Drilling in Opposition to Motion to Remand.

Plaintiff maintains that his Jones Act allegations prevent removal, as Jones Act claims are non-removable pursuant to *28 U.S.C. § 1445* (a) and *46 U.S.C. § 688*.

Defendants Cliffs Drilling and Ocean Energy n11 maintain, however, that they are entitled to remove the action because plaintiff's Jones Act allegations with respect to the April 13, 1997 accident are insupportable, and that federal question jurisdiction [*6] exists pursuant to OCSLA. Even assuming the Jones Act allegations concerning the first two incidents are supportable, defendants argue, the April 13, 1997 incident is separate and independent from the causes of action arising out of the other two accidents, occurring at different times and places and involving different defendants, and removal of the entire case is discretionary with the court pursuant to *28 U.S.C. § 1441* (c).

> n11 All defendants, including Fab-Con, consented to removal, but the arguments against remand have been made only by Cliffs Drilling and Ocean Energy, companies implicated in the third accident alone.

Discussion

Although as a general rule Jones Act cases are not removable, n12 "'defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal,'" and such fraudulently pleaded claims do not bar removal. n13 The Fifth Circuit permits use of a "summary judgment-like procedure" to dispose of cases of fraudulently [*7] pleaded Jones Act claims. n14 Using this procedure, a court may deny remand where, resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor, the court determines that the plaintiff has no reasonable possibility of establishing a Jones Act claim on the merits. n15

> n12 See *46 U.S.C. § 688* (incorporating general provisions of Federal Employers' Liability Act, including *28 U.S.C. § 1445* (a), which bars removal).
>
> n13 *Burchett v. Cargill, Inc., 48 F.3d 173, 175* (5th Cir, 1995) (quoting *Lackey v. Atlantic Richfield Co., 990 F.2d 202, 207 (5th Cir. 1993)).

n14 *48 F.3d at 176).*

n15 Id.

To maintain a cause of action under the Jones Act, the plaintiff must be a seaman. The Supreme Court has established a two-part test to determine seaman status. First, the plaintiff's duties must contribute to the function of a vessel or to the accomplishment of its mission. n16 Second, plaintiff [*8] must have a connection to a vessel (or an identifiable group of vessels) that is substantial in both its duration and nature. n17

n16 *Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S. Ct. 2172, 2179, 132 L. Ed. 2d 314 (1995).*

n17 Id.

Plaintiff does not argue that his work on the fixed platforms bestowed seaman status upon him. It is beyond dispute that fixed oil platforms are not "vessels" within the meaning of the Jones Act. n18 Instead, plaintiff argues that he was a seaman for the FabCon barge (first two accidents) and the movable jack-up rig (third accident), which were located near the respective fixed platforms and were used in varying degrees in connection with the relevant offshore projects.

n18 See *Rodrigue v. Aetna Casualty and Surety Co., 395 U.S. 352, 89 S. Ct. 1835, 23 L. Ed. 2d 360 (1969).*

[*9]

The undisputed facts, as set forth in plaintiff's own affidavit, show that a Jones Act claim with respect to at least the third accident is entirely unsupported. His duties did not contribute to the function of the jack-up rig. The rig was present only to serve as lodging quarters. He has provided no evidence that he was "doing the ship's work," e.g. work related to the navigation, maintenance, or voyage of the barge and/or movable jack-up rig. The Fifth Circuit has specifically recognized that eating, sleeping, and spending time on a vessel do not equate with seaman status. n19 Neither does the fact that plaintiff performed minor duties aboard the jack-up rig transform his status as a platform worker into that of a seaman. n20

n19 See *Hufnagel v. Omega Services Industries, Inc., 182 F.3d 340, 1999 U.S. App. LEXIS 17043, 1999 WL 543987, *4 (citing Golden v.*

*Rowan Companies, Inc., 778 F.2d 1022, 1025 (5th Cir. 1985)*

n20 Id. (citing *Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1075 (5th Cir. 1986)* and *Longmire v. Sea Drilling Corp., 610 F.2d 1342, 1346 (5th Cir. 1980))*

[*10]

Further, plaintiff has offered nothing suggesting that he had a substantial connection with the jack-up drilling rig before or during the course of the Vermilion Bay project. He does not even state the name of that rig in his Petition or affidavit. Plaintiff's affidavit indicates that after working on the Timbalier Bay project, at some point he was reassigned for an indefinite period of time to work on the fixed platform in Vermilion Bay. He had began working on the Vermilion Bay project only three days before his alleged injury. n21 There is nothing to indicate that plaintiff's connection to the jack-up rig was anything but transitory and fortuitous, certainly not substantial enough to merit protection under the Jones Act.

n21 Affidavit of Lynn Carr at P V.

The defendants who have filed memoranda opposing remand, Ocean Energy and Cliffs Drilling, have not argued the strength or weakness of plaintiff's Jones Act allegations concerning the first two accidents, as they had no connection to the Timbalier Bay project. [*11] Though I seriously question the supportability of plaintiff's Jones Act allegations in connection with those two accidents, there are some factual distinctions between the first two and the third accidents; for example, in connection with the Timbalier Bay project, the Fab-Con barge apparently served as the primary work surface for plaintiff's welding and fabrication activities. I do not address the Jones Act issue in connection with those accidents because I am able to resolve the motion without doing so.

I now turn to the question of whether removal of the entire action, or any part of it, was proper, based on plaintiff's inability to succeed under the Jones Act with regard to the April 13, 1997 accident. If one (or more) defendant's removal petition is premised on a removable claim joined with, but separate and independent from, claims brought against another defendant, the entire case may be removed and the court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction. n22

n22 *28 U.S.C. § 1441*(c).

[*12]

Defendants Ocean Energy and Cliffs Drilling argue that plaintiff's claim against them as a result of the third accident is separate and independent from the other claims. I agree. Plaintiff has not alleged "a single wrong, arising from an interlocked series of transactions." n23 At a minimum, the third accident was separate and independent from the first two alleged accidents. n24 It occurred at a different work site, involved different supervisory personnel, and was temporally disconnected from the first two accidents. The fact that plaintiff alleges that the third accident resulted in a "reinjury" or "exacerbation" of the injury he sustained on another work site five months earlier is insufficient, of itself, to connect it with the first two accidents.

n23 See *American Fire & Casualty Co. v. Finn, 341 U.S. 6, 13, 71 S. Ct. 534, 95 L. Ed. 702 (1951).*

n24 I make no finding here concerning the separateness and independence of the first two accidents from each other.

The next issue is whether [*13] the separate and independent (third accident) claim is a removable claim, since, of course, the absence of a valid Jones Act claim does not automatically vest jurisdiction in the district court. n25 The removing party bears the burden of demonstrating the propriety of removal under, *28 U.S.C. 1441,* which provides in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in State court of which the district courts of the United states have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place and where such action is pending . . .

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States, shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as de-

fendants is a citizen of the State in which such action is brought.

In order for a claim [*14] to be properly removed to federal court, the requirements of both 1441(a) and 1441(b) must be considered.

n25 See *Hufnagel, 182 F.3d 340, 1999 WL 543987* at *5.

Section 1441(a) simply requires that the district court have "original jurisdiction" over the action sought to be removed. In this case, defendants argue, and it appears undisputed, n26 that original jurisdiction exists because of application of the Outer Continental Shelf Lands Act, *43 U.S.C. 1349* et seq. (OCSLA). The jurisdictional grant contained in OCSLA provides, in pertinent part, that,

the district courts of the United States shall have jurisdiction of cases and controversies arising out of or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . . .

*43 U.S.C. 1349*(b)(1). To [*15] determine if plaintiff's claims "arise out of, or in connection with" such operations on the outer Continental Shelf ("OCS"), courts liberally apply a "but for" test in order to give the statute's jurisdictional grant a broad reading. n27

n26 The only real argument plaintiff makes against OCSLA jurisdiction is that the three claims are inseparable and the Jones Act allegations are supportable at least with respect to the first two, if not all three.

n27 See *Hufnagel, 1999 WL 543987* at *6 (citations omitted).

In this case, plaintiff's allegation that he was injured while working aboard an oil rig on the OCS is sufficient to place the action within the jurisdictional grant of OCSLA. Plaintiff would not have been present on the oil rig, and subsequently injured, "but for" the defendants' operations extracting minerals from the OCS. Because

OCSLA vests the federal courts with original jurisdiction over this action, the first prong of removal -- § 1441(a) -- is satisfied. n28

n28 See id.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*16]

Section 1441(b) contains two distinct parts. The first sentence of § 1441(b) provides that if the action is based on a claim arising under federal law, then removal is proper regardless of the citizenship of the parties. The second sentence of § 1441(b) provides that any other action (e.g. original jurisdiction based on diversity of citizenship or the applicability of maritime law) is removable only if none of the defendants is a citizen of the forum state.

The defendants are non-diverse, and plaintiff has sought recovery under the general maritime law, aside from the Jones Act claim. However, if, as a matter of law, plaintiff's claims are not maritime in nature, then § 1441(b) will not prevent removal here. n29

n29 See id. at *8.

To give rise to a tort claim in admiralty, an incident must have both a maritime situs and a connection to traditional maritime activity. n30 To satisfy the situs test, the plaintiff must show that the tort either occurred on navigable waters or, if the accident occurred on [*17] land, that it was caused by a vessel on navigable waters. n31 "Fixed drilling platforms do not exist for any purpose related to traditional maritime navigation or commerce" and, as such, have been compared to "piers, jetties, bridges and ramps running into the sea, which have not supported the application of maritime law." n32

n30 See id. at *8 (citing *Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S. Ct. 1043, 130 L. Ed. 2d 1024,* (1995), etc.).

n31 See id. at *8.

n32 See id.

Further, to satisfy the "connection" element of the maritime tort inquiry, the activity in which plaintiff was engaging when injured must bear a significant relationship to traditional maritime commerce. n33 Construction work on fixed offshore platforms does not bear a significant relation to traditional maritime activity. n34

n33 See id. at *9.

n34 See id. (citations omitted).

[*18]

Plaintiff's injury on April 13, 1997 occurred on a fixed platform on which he was performing fabrication and repair work, and occurred when he was lifting a segment of pipe. n35 The jack-up rig located alongside the fixed platform, aside from being the place where plaintiff ate, slept and kept his tools, contributed in no apparent way to the accident. n36 The tort did not occur on a maritime situs, and neither did it bear a significant relationship to traditional maritime activity. Clearly, plaintiff's claim relative to the third accident is a non-maritime claim arising under and governed by OCSLA. Therefore, the case is removable without regard to the citizenship of the parties.

n35 Affidavit of Lynn Baxter Carr, at P V.

n36 Id.

Because I have found that the claim arising from the April 13, 1997 incident is removable under OCSLA and constitutes a separate and independent claim, it is in my discretion under *28 U.S.C. § 1441* (c) to determine all issues raised in plaintiff's lawsuit [*19] or remand the matters not otherwise demonstrated to be within the court's original jurisdiction. In my discretion, I will remand to state court the claims arising out of the first two alleged incidents, which have not been demonstrated to be within the court's original jurisdiction. I retain jurisdiction solely over the allegations concerning the third (April 13, 1997) accident.

Accordingly,

IT IS ORDERED that plaintiff's claims related to the November 15, 1996 and March 9, 1997 accidents ARE REMANDED to the 25th J.D.C., Plaquemines Parish, Louisiana.

IT IS ORDERED that the claim related to the April 13, 1997 accident, which is separate and independent for purposes of *28 U.S.C. § 1441* (c) and for which defendants have demonstrated jurisdiction pursuant to OCSLA IS NOT REMANDED, and will remain in this court.

MOREY L. SEAR

U.S. DISTRICT JUDGE

LEXSEE 515 U.S. 347

## CHANDRIS, INC., ET AL., PETITIONERS v. ANTONIOS LATSIS

### No. 94-325

### SUPREME COURT OF THE UNITED STATES

*515 U.S. 347; 115 S. Ct. 2172; 132 L. Ed. 2d 314; 1995 U.S. LEXIS 4047; 63 U.S.L.W. 4564; 17 OSHC (BNA) 1257; 1995 AMC 1840; 95 Cal. Daily Op. Service 4499; 95 Daily Journal DAR 7769*

**February 21, 1995, Argued**
**June 14, 1995, Decided**

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT.

**DISPOSITION:** *20 F.3d 45,* affirmed.

**DECISION:**

Status as "seaman" under Jones Act *(46 USCS Appx 688)* held to require worker's employment-related connection to vessel in navigation that is substantial in terms of both duration and nature.

**SUMMARY:**

An individual was one of two supervising engineers employed by a corporation which operated a fleet of passenger cruise ships. The engineer, while based at the corporation's Miami, Florida office, had employment duties which ran to the entire fleet of vessels and included (1) overseeing the vessels' engineering departments, which required the engineer to take a number of voyages; and (2) planning and directing ship maintenance from the shore. On the day of the engineer's departure from Baltimore, Maryland, aboard one of the corporation's vessels, the engineer developed a problem with his right eye. The ship's doctor diagnosed a suspected detached retina, but the engineer received no further medical care until the vessel arrived in Bermuda 2 days later--notwithstanding that standard medical procedure would have been to direct the engineer to see an ophthalmologist on an emergency basis. Although an operation in Bermuda was a partial success, the engineer lost 75 percent of his vision in his right eye. Following his recuperation, the engineer sailed with the same vessel to Bremerhaven, Germany, where the vessel was placed in drydock for a 6-month refurbishment. The engineer stayed with the vessel while it was in drydock and sailed back to the United States. Some time after his return, the engineer was discharged by the corporation. Thereafter, the engineer filed an action in the United States District Court for the Southern District of New York against the corporation. The engineer sought compensatory damages under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--for the alleged negligence of the ship's doctor. At trial, the District Court instructed the jury that (1) the engineer had to either have been permanently assigned to the vessel or have performed a substantial part of his work on the vessel; and (2) in determining whether the engineer had performed a substantial part of his work on the vessel, the jury could not consider the period of time the vessel was in drydock in Germany, because the vessel was out of navigation during such time period. The engineer objected to the part of the instructions relating to the drydock period. The jury returned a verdict in favor of the corporation solely on the issue of the engineer's status as a seaman under the Jones Act. On appeal, the United States Court of Appeals for the Second Circuit, vacating the District Court's judgment and remanding the case for a new trial, expressed the view that (1) the test for seaman status under the Jones Act--an employment-related connection to a vessel in navigation--was met where (a) a maritime worker contributed to the function of, or helped accomplish the mission of, a vessel, (b) the worker's contribution was limited to a particular vessel or identifiable group of vessels, (c) the worker's contribution was substantial in terms of its duration or nature, and (d) the course of the worker's employment regularly exposed the worker to the hazards of the sea; and (2) the District Court had erred in instructing the jury that it could not consider the time the engineer

Ex-2

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

had spent with the vessel while it was in drydock *(20 F3d 45)*.

On certiorari, the United States Supreme Court affirmed. In an opinion by O'Connor, J., joined by Rehnquist, Ch. J., and Scalia, Kennedy, Souter, and Ginsburg, JJ., it was held that (1) the employment-related connection to a vessel in navigation that is necessary for a maritime worker to qualify as a "seaman" under the Jones Act comprises two basic elements, namely that (a) the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and (b) the worker must have a connection to a vessel in navigation or an identifiable group of vessels that is substantial in terms of both its duration and its nature; (2) with respect to the case at hand, the part of the District Court's jury instructions relating to the vessel's drydock period was erroneous; (3) in light of such error, affirmance was warranted, because (a) the question whether the vessel remained "in navigation" while in drydock should have been submitted to the jury, and (b) the decision on such question might affect the outcome of the ultimate inquiry whether the engineer was a seaman under the Jones Act; and (4) on remand, the District Court was to charge the jury in a manner consistent with holding 1 above.

Stevens, J., joined by Thomas and Breyer, JJ., concurring in the judgment, (1) agreed with the Supreme Court's returning the case at hand for a new trial, but disagreed with the standard which the court directed to be applied on remand; and (2) expressed the view that every member of the crew of a vessel was entitled to the protection of the Jones Act during a voyage at sea, even if a member (a) was not part of the crew before the ship left port, or (b) abandoned the ship the moment it arrived at its destination.

**LAWYERS' EDITION HEADNOTES:**

[***LEdHN1]
FEDERAL EMPLOYERS' LIABILITY AND WORKERS' COMPENSATION ACTS § 58
"seaman" status under Jones Act -- elements --
Headnote:[1A][1B][1C][1D]

The employment-related connection to a vessel in navigation that is necessary for a maritime worker to qualify as a "seaman" under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any seaman injured in the course of employment--comprises two basic elements, namely that (1) the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission; and (2) the worker must have a connection to a vessel in navigation or an identifiable group of vessels that is substantial in terms of both its duration and its

nature, since (a) the fundamental purpose of such a requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation and therefore whose employment does not regularly expose them to the perils of the sea, and (b) such requirement therefore determines which maritime employees, who are in the broad category of persons eligible for seaman status as they are doing the ship's work, are entitled to the benefits conferred upon seamen by the Jones Act. (Stevens, Thomas, and Breyer, JJ., dissented in part from this holding.)

[***LEdHN2]
TRIAL § 272
jury instruction -- Jones Act -- excluding or limiting issues --
Headnote:[2A][2B][2C][2D][2E]

A Federal District Court's jury instruction is improper in an action brought against a corporation which operated a fleet of vessels under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--by an engineer whose employment duties ran to the entire fleet, where the instruction precludes the jury, in determining whether the engineer had performed a substantial part of his work on a vessel on which the engineer had sailed from the United States to Germany (via Bermuda) and back, from considering a 6-month period during which the vessel was in drydock for refurbishment in Germany on the ground that the vessel was out of navigation during such time period, where (1) the colloquy between the District Court and counsel does not indicate that the District Court has made any findings that the facts and the law reasonably could support only one conclusion on the issue whether the vessel was in navigation while in Germany; (2) there are no stipulations or findings by the District Court to justify its conclusion that the modifications to the vessel were sufficiently extensive to remove the vessel from navigation as a matter of law; and (3) even if the District Court would be justified in directing a verdict on the question whether the vessel remained in navigation while in Germany, the instruction sweeps too broadly, since (a) the District Court appears to prohibit the jury from considering the engineer's stay in Germany for any purpose, and (b) the engineer's activities while the vessel was in drydock are at least marginally relevant to the underlying inquiry of whether the engineer was a seaman under the Jones Act and not a land-based maritime employee.

[***LEdHN3]

APPEAL § 1673
 affirmance of judgment remanding for new trial -- erroneous jury instruction --
Headnote:[3A][3B][3C]

The United States Supreme Court will affirm a Federal Court of Appeals' judgment remanding to a Federal District Court for a new trial a case brought under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--by an engineer whose employment duties ran to an entire fleet of vessels, where (1) after the District Court had erroneously instructed the jury that it could not consider, in determining whether the engineer had performed a substantial part of his work on one of the vessels, a 6-month period during which the vessel was in drydock for refurbishment, the jury returned a verdict in favor of the fleet operator solely on the issue of the engineer's status as a seaman under the Jones Act, (2) the question whether the vessel remained "in navigation" while in drydock should have been submitted to the jury, and (3) the decision on such question might affect the outcome of the ultimate inquiry whether the engineer was a seaman under the Jones Act, given that reasonable factfinders could disagree as to whether the engineer was a Jones Act seaman on the facts of the case; on remand, the District Court is to charge the jury in a manner consistent with the Supreme Court's holding in the case at hand that the employment-related connection to a vessel in navigation that is necessary to qualify as a seaman under the Jones Act comprises two basic elements, namely that (1) the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and (2) the worker must have a connection to a vessel in navigation, or an identifiable group of vessels, that is substantial in terms of both its duration and its nature. (Stevens, Thomas, and Breyer, JJ., dissented in part from this holding.)

 [***LEdHN4]
APPEAL § 1087.7
 certiorari -- brief -- question not raised in petition -- failure to object --
Headnote:[4A][4B]

The United States Supreme Court--having granted certiorari to review a Federal Court of Appeals' judgment on the question as to what employment-related connection to a vessel in navigation is necessary for a maritime worker to qualify as a "seaman" under the Jones Act *(46 USCS Appx 688)*--will not consider an argument raised for the first time in the certiorari petitioners' opening brief on the merits that the Supreme Court should limit the scope of its review to the narrower issue of whether

the Federal District Court's seaman status jury instructions constituted plain error on the grounds that the respondent failed to raise a timely objection under *Rule 51 of the Federal Rules of Civil Procedure* to such jury instructions in their entirety, because (1) under Rule 14.1(a) of the United States Supreme Court Rules, only the questions set forth in the petition for certiorari, or fairly included therein, will be considered by the Supreme Court; and (2) under Rule 24.1(a) of the United States Supreme Court Rules, a merits brief should not raise additional questions or change the substance of the questions already presented in the petition.

 [***LEdHN5]
FEDERAL        EMPLOYERS'        LIABILITY        AND
WORKERS' COMPENSATION ACTS § 58
SHIPPING § 149
WORKERS' COMPENSATION § 9
 coverage --
Headnote:[5]

The Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--and the Longshore and Harbor Workers' Compensation Act (LHWCA) *(33 USCS 901-950)*--which in *33 USCS 902*(3)(G) excludes from its coverage "a master or member of a crew of any vessel"--are mutually exclusive compensation regimes; the term "master or member of a crew" in 902(3)(G) is a refinement of the term "seaman" in the Jones Act and excludes from LHWCA coverage those properly covered under the Jones Act; thus, the key requirement for Jones Act coverage appears in 902(3)(G); injured workers who fall under neither category may still recover under an applicable state workers' compensation scheme or, in admiralty, under general maritime tort principles which are admittedly less generous than the Jones Act's protections.

 [***LEdHN6]
FEDERAL        EMPLOYERS'        LIABILITY        AND
WORKERS' COMPENSATION ACTS § 58
SHIPPING § 131
 "seaman" --
Headnote:[6A][6B]

Whether under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--or under general maritime law, seamen do not include land-based workers; the Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to the special hazards and disadvantages to which they who go down to sea in ships are subjected.

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

[***LEdHN7]
ADMIRALTY § 72
FEDERAL EMPLOYERS' LIABILITY AND
WORKERS' COMPENSATION ACTS § 60
jurisdiction -- Jones Act coverage --
Headnote:[7]

Coverage of an injured maritime worker as a "seaman" under the Jones Act (46 USCS Appx 688)--which in 46 USCS Appx 688(a) provides a cause of action in negligence for any seaman injured in the course of employment--like the jurisdiction of admiralty over causes of action for maintenance and cure for injuries received in the course of a seaman's employment, depends not on the place where the injury is inflicted but on the nature of the seaman's service, status as a member of the vessel, and relationship as such to the vessel and its operation in navigable waters; thus, maritime workers who obtain seaman status do not lose that protection automatically when on shore and may recover under the Jones Act whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the ship.

[***LEdHN8]
FEDERAL EMPLOYERS' LIABILITY AND
WORKERS' COMPENSATION ACTS § 75
coverage under Longshore and Harbor Workers' Compensation Act -- injuries --
Headnote:[8]

Land-based maritime workers injured while on a vessel in navigation remain covered by the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 USCS 901-950), which in 33 USCS 903(a) expressly provides compensation for injuries to certain workers engaged in maritime employment that are incurred upon the navigable waters of the United States; a maritime worker does not become a "member of a crew" within the meaning of 33 USCS 902(3)(G)--which excludes from LHWCA coverage "a master or member of a crew of any vessel"--as soon as a vessel leaves the dock. (Stevens, Thomas, and Breyer, JJ., dissented in part from this holding.)

[***LEdHN9]
FEDERAL EMPLOYERS' LIABILITY AND
WORKERS' COMPENSATION ACTS § 60
coverage under Jones Act -- place of injury --
Headnote:[9]

The inquiry as to whether a maritime worker is covered by the Jones Act (46 USCS Appx 688)--which in 46 USCS Appx 688(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--is fundamentally status-based; thus, land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore.

[***LEdHN10]
FEDERAL EMPLOYERS' LIABILITY AND
WORKERS' COMPENSATION ACTS § 58
"seaman" under Jones Act --
Headnote:[10]

A worker is not considered to be a "seaman" under the Jones Act (46 USCS Appx 688)--which in 46 USCS Appx 688(a) provides a cause of action in negligence for any seaman injured in the course of employment--simply because the worker is doing a seaman's work at the time of the injury; seaman status under the Jones Act is not coextensive with seamen's risks.

[***LEdHN11]
FEDERAL EMPLOYERS' LIABILITY AND
WORKERS' COMPENSATION ACTS § 58
"seaman" under Jones Act -- activity at time of injury --
Headnote:[11]

In evaluating the employment-related connection of a maritime worker to a vessel in navigation for purposes of determining whether the worker is a "seaman" under the Jones Act (46 USCS Appx 688)--which in 46 USCS Appx 688(a) provides a cause of action in negligence for any seaman injured in the course of employment--a court should not employ a "snapshot" test for seaman status, which test would inspect the situation as it exists only at the instant of injury; a more enduring relationship is contemplated in jurisprudence under the Jones Act; thus, a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured. (Stevens, Thomas, and Breyer, JJ., dissented in part from this holding.)

[***LEdHN12]
FEDERAL EMPLOYERS' LIABILITY AND
WORKERS' COMPENSATION ACTS § 58
coverage -- Jones Act -- Longshore and Harbor Workers' Compensation Act --
Headnote:[12]

A maritime worker on a ship at sea as part of the worker's employment is not automatically a member of the crew of the vessel within the meaning of 33 USCS 902(3)(G), a provision of the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 USCS 901-950) which (1) excludes from LHWCA coverage "a mas-

ter or member of a crew of any vessel"; and (2) refines the term "seaman" as used in the Jones Act *(46 USCS Appx 688)*, which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any seaman injured in the course of employment.

[***LEdHN13]
STATUTES § 100
 construction -- purpose --
Headnote:[13]

In giving effect to the statutory term "seaman," a court's concern must be to define the meaning for the purpose of a particular statute.

[***LEdHN14]
FEDERAL    EMPLOYERS'    LIABILITY    AND WORKERS' COMPENSATION ACTS § 58
 Jones Act -- "seaman" --
Headnote:[14]

The use of the term "seaman" in the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any seaman injured in the course of employment--must be read in the light of the mischief to be corrected and the end to be attained.

[***LEdHN15]
FEDERAL    EMPLOYERS'    LIABILITY    AND WORKERS' COMPENSATION ACTS § 58
 "seaman" under Jones Act --
Headnote:[15]

Although the protections afforded to maritime employees under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--extend to only those maritime employees who do the ship's work, such threshold requirement is very broad, in that all who work at sea in the service of a ship are eligible for seaman status under the Jones Act.

[***LEdHN16]
SUMMARY  JUDGMENT  AND  JUDGMENT  ON PLEADINGS § 5
TRIAL § 42
 status of worker -- statutes -- mixed question of law and fact -- summary judgment -- directed verdict --
Headnote:[16A][16B][16C]

The question as to who is a "member of a crew" under *33 USCS 902*(3)(G)--a provision of the Longshore and Harbor Workers' Compensation Act (LHWCA) *(33 USCS 901-950)* which excludes from its coverage "a master or member of a crew of any vessel"--and therefore who is a

"seaman" under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--is a mixed question of law and fact; because statutory terms are at issue, their interpretation is a question of law and it is the court's duty to define the appropriate standard; on the other hand, the inquiry into seaman status is of necessity fact specific and will depend on the nature of the vessel and the employee's precise relation to it; hence, if reasonable persons, applying the proper legal standard, could differ as to whether the employee was a member of a crew, then it is a question for the jury; the jury should be permitted, when determining whether a maritime employee has the requisite employment-related connection to a vessel in navigation to qualify as a member of the vessel's crew, to consider all relevant circumstances bearing on whether (1) the employee's duties contribute to the function of the vessel or to the accomplishment of its mission, and (2) the employee has a connection to a vessel in navigation or an identifiable group of vessels that is substantial in terms of both its duration and its nature; moreover, the underlying inquiry whether a vessel is or is not "in navigation" for Jones Act purposes is a fact-intensive question that is normally for the jury and not the court to decide, and removing the issue from the jury's consideration is only appropriate where the facts and the law will reasonably support only one conclusion; however, where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict. (Stevens, Thomas, and Breyer, JJ., dissented in part from this holding.)

[***LEdHN17]
FEDERAL    EMPLOYERS'    LIABILITY    AND WORKERS' COMPENSATION ACTS § 58
 "seaman" under Jones Act --
Headnote:[17]

The total circumstances of an individual's employment must be weighed to determine whether the individual has a sufficient relation to the navigation of vessels and the perils attendant thereon to qualify as a "seaman" under the Jones Act *(46 USCS Appx 688)*, which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any seaman injured in the course of employment; the duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman under the Jones Act, because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

[***LEdHN18]
FEDERAL    EMPLOYERS'    LIABILITY    AND
WORKERS' COMPENSATION ACTS § 58
 coverage -- Jones Act -- Longshore and Harbor Workers'
Compensation Act --
Headnote:[18]

Under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment--seaman status is not merely a temporal concept, but it necessarily includes a temporal element; thus, a maritime worker who spends only a small fraction of working time on board a vessel is fundamentally land-based and therefore not a member of the vessel's crew within the meaning of *33 USCS 902*(3)(G)--a provision of the Longshore and Harbor Workers' Compensation Act (LHWCA) *(33 USCS 901-950)* which (1) excludes from LHWCA coverage "a master or member of a crew of any vessel," and (2) refines the term "seaman" as used in the Jones Act--regardless of what the worker's duties are.

[***LEdHN19]
FEDERAL    EMPLOYERS'    LIABILITY    AND
WORKERS' COMPENSATION ACTS § 58
 "seaman" under Jones Act -- time spent --
Headnote:[19]

For purposes of determining whether a maritime worker qualifies as a "seaman" under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any seaman injured in the course of employment--an appropriate rule of thumb for the ordinary case is that a worker who spends less than about 30 percent of the worker's time in the service of a vessel in navigation should not qualify; such figure serves as no more than a guideline established by years of experience, and departure from the 30 percent figure will be justified in appropriate cases.

[***LEdHN20]
FEDERAL    EMPLOYERS'    LIABILITY    AND
WORKERS' COMPENSATION ACTS § 58
 "seaman" under Jones Act -- change in assignment --
Headnote:[20]

When a maritime worker's basic assignment changes, the worker's status as a "seaman" under the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any seaman injured in the course of employment, with a connection to a vessel in navigation, or an identifiable group of vessels, that is substantial in terms of both its duration and its nature being necessary to qualify as a seaman--may

change as well; thus, if a maritime employee receives a new work assignment in which the employee's essential duties are changed, then the employee is entitled to have an assessment made of the substantiality of the employee's vessel-related work on the basis of the employee's activities in the new position.

[***LEdHN21]
FEDERAL    EMPLOYERS'    LIABILITY    AND
WORKERS' COMPENSATION ACTS § 58
 "seaman" under Jones Act -- vessel in navigation --
Headnote:[21A][21B]

A vessel does not cease to be in navigation for purposes of the Jones Act *(46 USCS Appx 688)*--which in *46 USCS Appx 688*(a) provides a cause of action in negligence for any "seaman" injured in the course of employment, with an employment-related connection to a vessel in navigation being necessary for a maritime worker to qualify as a seaman--when the vessel is not voyaging but is at anchor, berthed, or at dockside, even when the vessel is undergoing repairs; at some point, however, repairs become sufficiently significant that the vessel can no longer be considered in navigation; major renovations can take a ship out of navigation, even though the ship's use before and after the work will be the same.

SYLLABUS:

Respondent Latsis' duties as a superintendent engineer for petitioner Chandris, Inc., required him to take voyages on Chandris' ships. He lost substantial vision in one eye after a condition that he developed while on one of those voyages went untreated by a ship's doctor. Following his recuperation, he sailed to Germany on the S. S. *Galileo* and stayed with the ship while it was in drydock for refurbishment. Subsequently, he sued Chandris for damages for his eye injury under the Jones Act, which provides a negligence cause of action for "any seaman" injured "in the course of his employment." The District Court instructed the jury that Latsis was a "seaman" if he was permanently assigned to, or performed a substantial part of his work on, a vessel, but that the time Latsis spent with the *Galileo* while it was in drydock could not be considered because the vessel was then out of navigation. The jury returned a verdict for Chandris based solely on Latsis' seaman status. The Court of Appeals vacated the judgment, finding that the jury instruction improperly framed the issue primarily in terms of Latsis' temporal relationship to the vessel. It held that the "employment-related connection to a vessel in navigation" required for seaman status under the Jones Act, *McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 355, 112 L. Ed. 2d 866, 111 S. Ct. 807,* exists where an individual contributes to a vessel's function or the ac-

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

complishment of its mission; the contribution is limited to a particular vessel or identifiable group of vessels; the contribution is substantial in terms of its duration or nature; and the course of the individual's employment regularly exposes him to the hazards of the sea. It also found that the District Court erred in instructing the jury that the *Galileo's* drydock time could not count in the substantial connection equation.

*Held:*

1. The "employment-related connection to a vessel in navigation" necessary for seaman status comprises two basic elements: The worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, *id., at 355,* and the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in both its duration and its nature. Pp. 354-372.

(a) The Jones Act provides heightened legal protections to seamen because of their exposure to the perils of the sea, but does not define the term "seaman." However, the Court's Jones Act cases establish the basic principles that the term does not include land-based workers, *498 U.S. at 348,* and that seaman status depends "not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship . . . to the vessel and its operation in navigable waters," *Swanson v. Marra Brothers, Inc., 328 U.S. 1, 4, 90 L. Ed. 1045, 66 S. Ct. 869.* Thus, land-based maritime workers do not become seamen when they happen to be working aboard a vessel, and seamen do not lose Jones Act coverage when their service to a vessel takes them ashore. Latsis' proposed "voyage test"--under which any maritime worker assigned to a vessel for the duration of a voyage, whose duties contribute to the vessel's mission, would be a seaman for injuries incurred during that voyage--conflicts with this status-based inquiry. *Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190, 96 L. Ed. 205, 72 S. Ct. 216,* and *Grimes v. Raymond Concrete Pile Co, 356 U.S. 252, 255, 2 L. Ed. 2d 737, 78 S. Ct. 687,* distinguished. Pp. 354-364.

(b) Beyond the basic themes outlined here, the Court's cases have been silent as to the precise relationship a maritime worker must bear to a vessel in order to come within the Jones Act's ambit, leaving the lower federal courts the task of developing appropriate criteria to distinguish "ship's company" from land-based maritime workers. Those courts generally require at least a significant connection to a vessel in navigation (or to an identifiable fleet of vessels) for a maritime worker to qualify as a seaman under the Jones Act. Pp. 364-368.

(c) The test for seaman status adopted here has two essential requirements. The first is a broad threshold requirement that makes all maritime employees who do the ship's work eligible for seaman status. *Wilander, supra, at 355.* The second requirement determines which of these eligible maritime employees have the required employment-related connection to a vessel in navigation to make them in fact entitled to Jones Act benefits. This requirement gives full effect to the remedial scheme created by Congress and separates sea-based maritime employees entitled to Jones Act protection from land-based workers whose employment does not regularly expose them to the perils of the sea. Who is a "member of a crew" is a mixed question of law and fact. A jury should be able to consider all relevant circumstances bearing on the two requirements. The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether he is a seaman, because the ultimate inquiry is whether the worker is part of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time. Although seaman status is not merely a temporal concept, it includes a temporal element. A worker who spends only a small fraction of his working time aboard a vessel is fundamentally land-based and therefore not a crew member regardless of his duties. An appropriate rule of thumb is that a worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman. This figure is only a guideline that allows a court to take the question from the jury when a worker has a clearly inadequate temporal connection to the vessel. On the other hand, the seaman status inquiry should not be limited exclusively to an examination of the overall course of a worker's service with a particular employer, since his seaman status may change with his basic assignment. Pp. 368-372.

2. The District Court's drydock instruction was erroneous. Whether a vessel is in navigation is a fact-intensive question that can be removed from the jury's consideration only where the facts and the law will reasonably support one conclusion. Based upon the record here, the trial court failed adequately to justify its decision to remove that question from the jury. Moreover, the court's charge to the jury swept too broadly in prohibiting the jury from considering the time Latsis spent with the vessel while in drydock for any purpose. Pp. 372-376.

*20 F.3d 45,* affirmed.

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, SOUTER, and GINSBURG, JJ., joined. STEVENS, J., filed an opinion concurring in the judg-

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

ment, in which THOMAS and BREYER, JJ., joined, *post*, p. 377.

**COUNSEL:** David W. McCreadie argued the cause for petitioners. With him on the briefs were David F. Pope and Christ Stratakis.

Lewis Rosenberg argued the cause for respondent. With him on the brief was Barry I. Levy. *

> \* Briefs of amici curiae urging reversal were filed for the City of New York by Paul A. Crotty and Leonard J. Koerner; and for TECO Transport & Trade Corp. et al. by Robert B. Acomb, Jr., and Robert T. Lemon II.
>
> Briefs of amici curiae urging affirmance were filed for the Association of Trial Lawyers of America by Stevan C. Dittman and Larry S. Stewart; and for the United Brotherhood of Carpenters and Joiners of America by John R. Hillsman.

**JUDGES:** O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, SOUTER, and GINSBURG, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, in which THOMAS and BREYER, JJ., joined, post, p. 377.

**OPINIONBY:** O'CONNOR

**OPINION:**

[*349]    [**2181]    [***325]    JUSTICE O'CONNOR delivered the opinion of the Court.

[***LEdHR1A]    [1A]    [***LEdHR2A]    [2A] [***LEdHR3A]    [3A]This case asks us to clarify what "employment-related connection to a vessel in navigation," *McDermott Int'l, Inc. v.* [*350] *Wilander, 498 U.S. 337, 355, 112 L. Ed. 2d 866, 111 S. Ct. 807 (1991),* is necessary for a maritime worker to qualify as a seaman under the Jones Act, *46 U.S.C. App. § 688*(a). In *Wilander,* we addressed the *type* of activities that a seaman's job need not be limited to transportation-related functions that directly aid in the vessel's navigation. We now determine what *relationship* a worker must have to the vessel, regardless of the specific tasks the worker undertakes, in order to obtain seaman status.

[***326] I

In May 1989, respondent Antonios Latsis was employed by petitioner Chandris, Inc., as a salaried superintendent engineer. Latsis was responsible for maintain-

ing and up-dating the electronic and communications equipment on Chandris' fleet of vessels, which consisted of six passenger cruise ships. Each ship in the Chandris fleet carried between 12 and 14 engineers who were assigned permanently to that vessel. Latsis, on the other hand, was one of two supervising engineers based at Chandris' Miami office; his duties ran to the entire fleet and included not only overseeing the vessels' engineering departments, which required him to take a number of voyages, but also planning and directing ship maintenance from the shore. Latsis claimed at trial that he spent 72 percent of his time at sea, App. 58; his immediate supervisor testified that the appropriate figure was closer to 10 percent, *id.,* at 180.

On May 14, 1989, Latsis sailed for Bermuda aboard the S. S. *Galileo* to plan for an upcoming renovation of the ship, which was one of the older vessels in the Chandris fleet. Latsis developed a problem with his right eye on the day of departure, and he saw the ship's doctor as the *Galileo* left port. The doctor diagnosed a suspected detached retina  but failed to follow standard medical procedure, which would have been to direct Latsis to see an ophthalmologist on an emergency basis. Instead, the ship's doctor recommended [*351] that Latsis relax until he could see an eye specialist when the *Galileo* arrived in Bermuda two days later. No attempt was made to transport Latsis ashore for prompt medical care by means of a pilot vessel or helicopter during the 11 hours it took the ship to reach the open sea from Baltimore, and Latsis received no further medical care until after the ship arrived in Bermuda. In Bermuda, a doctor diagnosed a detached retina and recommended immediate hospitalization and surgery. Although the operation was a partial success, Latsis lost 75 percent of his vision in his right eye.

Following his recuperation, which lasted approximately six weeks, Latsis resumed his duties with Chandris. On September 30, 1989, he sailed with the *Galileo* to Bremerhaven, Germany, where the vessel was placed in drydock for a 6-month refurbishment. After the conversion, the company renamed the vessel the S. S. *Meridian.* Latsis, who had been with the ship the entire time it was in drydock in Bremerhaven, sailed back to the United States on board the *Meridian* and continued to work for Chandris until November 1990, when his employment was terminated for reasons that are not clear from the record.

In October 1991, Latsis filed suit in the United States District Court for the Southern District of New York seeking compensatory damages under the Jones Act, *46 U.S.C. App. § 688,* for the negligence of the ship's doctor that resulted in the significant loss of sight in Latsis' right eye. The Jones Act provides, in pertinent part, that "any seaman who shall suffer personal injury in

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury . . . ." The District Court instructed the jury that it could conclude that Latsis was a seaman within the [***327] meaning of the statute if it found as follows:

"The plaintiff was either permanently assigned to the vessel or performed a [*352] substantial [**2182] part of his work on the vessel. In determining whether Mr. Latsis performed a substantial part of his work on the vessel, you may not consider the period of time the *Galileo* was in drydock in Germany, because during that time period she was out of navigation. You may, however, consider the time spent sailing to and from Germany for the conversion. Also, on this first element of being a seaman, seamen do not include land-based workers." App. 210.

The parties stipulated to the District Court's second requirement for Jones Act coverage--that Latsis' duties contributed to the accomplishment of the missions of the Chandris vessels. *Id.,* at 211. Latsis did not object to the seaman status jury instructions in their entirety, but only contested that portion of the charge which explicitly took from the jury's consideration the period of time that the *Galileo* was in drydock. The jury returned a verdict in favor of Chandris solely on the issue of Latsis' status as a seaman under the Jones Act. *Id.,* at 213.

Respondent appealed to the Court of Appeals for the Second Circuit, which vacated the judgment and remanded the case for a new trial. *20 F.3d 45 (1994).* The court emphasized that its longstanding test for seaman status under the Jones Act required "'a more or less permanent connection with the ship,'" *Salgado v. M. J. Rudolph Corp.,* 514 F.2d 750, 755 (CA2 1975), a connection that need not be limited to time spent on the vessel but could also be established by the nature of the work performed. The court thought that the alternate formulation employed by the District Court (permanent assignment to the vessel or performance of a substantial part of his work on the vessel), which was derived from *Offshore Co. v. Robison,* 266 F.2d 769, 779 (CA5 1959), improperly framed the issue for the jury primarily, if not solely, in terms of Latsis' temporal relationship to the vessel. With that understanding of what the language of the *Robison* test implied, the court concluded that the District Court's seaman status jury instructions constituted plain error under established Circuit precedent. The court then [*353] took this case as an opportunity to

clarify its seaman status requirements, directing the District Court that the jury should be instructed on remand as follows:

"The test of seaman status under the Jones Act is an employment-related connection to a vessel in navigation. The test will be met where a jury finds that (1) the plaintiff contributed to the function of, or helped accomplish the mission of, a vessel; (2) the plaintiff's contribution was limited to a particular vessel or identifiable group of vessels; (3) the plaintiff's contribution was substantial in terms of its (a) duration or (b) nature; and (4) the course of the plaintiff's employment regularly exposed the plaintiff to the hazards of the sea." *20 F.3d at 57.*

Elsewhere on the same page, however, the court phrased the third prong as requiring a substantial connection in terms of both duration *and* nature. Finally, the Court of Appeals held that the District Court [***328] erred in instructing the jury that the time Latsis spent with the ship while it was in drydock could not count in the substantial connection equation. *Id.,* at 55-56. Judge Kearse dissented, arguing that the drydock instruction was not erroneous and that the remainder of the charge did not constitute plain error. *Id.,* at 58.

We granted certiorari, *513 U.S. 945 (1994),* to resolve the continuing conflict among the Courts of Appeals regarding the appropriate requirements for seaman status under the Jones Act. *

[***LEdHR4B] [4B]* We granted certiorari on the following question, set forth in the petition: "What employment-related connection to a vessel in navigation is necessary for a maritime worker to qualify as a seaman under the Jones Act, *46 U.S.C. § 688?*" Pet. for Cert. i. Petitioners argue for the first time in their opening brief on the merits that, because respondent failed to raise a timely objection under *Rule 51 of the Federal Rules of Civil Procedure,* we should limit the scope of our review to the narrower issue of whether the District Court's seaman status jury instructions constituted "plain error." Brief for Petitioners 12-14. Under this Court's Rule 14.1(a), "only the questions set forth in the peti-

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

tion [for certiorari], or fairly included therein, will be considered by the Court," see, *e. g.,* *Berkemer v. McCarty, 468 U.S. 420, 443, n. 38, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984),* and our Rule 24.1(a) provides that a merits brief should not "raise additional questions or change the substance of the questions already presented" in the petition. See also *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp., 510 U.S. 27, 31-32; 126 L. Ed. 2d 396, 114 S. Ct. 425 (1993); Taylor v. Freeland & Kronz, 503 U.S. 638, 645-646, 118 L. Ed. 2d 280, 112 S. Ct. 1644 (1992).* Because petitioners did not raise the issue in the petition for certiorari, we will not consider any argument they may have under Rule 51 concerning the effect of respondent's failure to object to the seaman status jury instructions in their entirety.

[*354]  [**2183] II

The Jones Act provides a cause of action in negligence for "any seaman" injured "in the course of his employment." *46 U.S.C. App. § 688(a).* Under general maritime law prevailing prior to the statute's enactment, seamen were entitled to "maintenance and cure" from their employer for injuries incurred "in the service of the ship" and to recover damages from the vessel's owner for "injuries received by seamen in consequence of the unseaworthiness of the ship," but they were "not allowed to recover an indemnity for the negligence of the master, or any member of the crew." *The Osceola, 189 U.S. 158, 175, 47 L. Ed. 760, 23 S. Ct. 483 (1903);* see also *Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 370-371, 77 L. Ed. 368, 53 S. Ct. 173 (1932).* Congress enacted the Jones Act in 1920 to remove the bar to suit for negligence articulated in *The Osceola,* thereby completing the trilogy of heightened legal protections (unavailable to other maritime workers) that seamen receive because of their exposure to the "perils of the sea." See G. Gilmore & C. Black, Law of Admiralty § 6-21, pp. 328-329 (2d ed. 1975); Robertson, A New Approach to Determining Seaman Status, *64 Texas L. Rev. 79 (1985)* (hereinafter Robertson). Justice Story identified this animating purpose behind the legal regime governing maritime injuries when he observed that seamen "are emphatically the wards of the admiralty" because they "are by the peculiarity of their lives liable to sudden sickness from [*355] change of climate, exposure to perils, and exhausting labour." *Harden v. Gordon, 11 F. Cas. 480, 485, 483* (No. 6,047) (CC Me. 1823). Similarly, we stated in *Wilander* that "traditional seamen's remedies . . . have been 'universally [***329] recognized as . . . growing out of the status of the seaman and his peculiar relationship to the vessel, and as a feature of the maritime law

compensating or offsetting the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *498 U.S. at 354* (quoting *Seas Shipping Co. v. Sieracki, 328 U.S. 85, 104, 90 L. Ed. 1099, 66 S. Ct. 872 (1946)* (Stone, C. J., dissenting)).

The Jones Act, however, does not define the term "seaman" and therefore leaves to the courts the determination of exactly which maritime workers are entitled to admiralty's special protection. Early on, we concluded that Congress intended the term to have its established meaning under the general maritime law at the time the Jones Act was enacted. See *Warner v. Goltra, 293 U.S. 155, 159, 79 L. Ed. 254, 55 S. Ct. 46 (1934).* In *Warner,* we stated that "a seaman is a mariner of any degree, one who lives his life upon the sea." *Id., at 157.* Similarly, in *Norton v. Warner Co., 321 U.S. 565, 572, 88 L. Ed. 931, 64 S. Ct. 747 (1944),* we suggested that "'every one is entitled to the privilege of a seaman who, like seamen, at all times contributes to the labors about the operation and welfare of the ship when she is upon a voyage'" (quoting *The Buena Ventura, 243 F. 797, 799 (SDNY 1916)).*

[***LEdHR5]  [5]Congress provided some content for the Jones Act requirement in 1927 when it enacted the Longshore and Harbor Workers' Compensation Act (LHWCA), which provides scheduled compensation (and the exclusive remedy) for injury to a broad range of land-based maritime workers but which also explicitly excludes from its coverage "a master or member of a crew of any vessel." 44 Stat. (part 2) 1424, as amended, *33 U.S.C. § 902(3)(G).* As the Court has stated on several occasions, the Jones Act and the LHWCA are mutually [*356] exclusive compensation regimes: "'master or member of a crew' is a refinement of the term 'seaman' in the Jones Act; it excludes from LHWCA coverage [**2184] those properly covered under the Jones Act." *Wilander, 498 U.S. at 347.* Indeed, "it is odd but true that the key requirement for Jones Act coverage now appears in another statute." *Ibid.* Injured workers who fall under neither category may still recover under an applicable state workers' compensation scheme or, in admiralty, under general maritime tort principles (which are admittedly less generous than the Jones Act's protections). See Cheavens, Terminal Workers' Injury and Death Claims, *64 Tulane L. Rev. 361, 364-365 (1989).*

Despite the LHWCA language, drawing the distinction between those maritime workers who should qualify as seamen and those who should not has proved to be a difficult task and the source of much litigation-- particularly because "the myriad circumstances in which men go upon the water confront courts not with discrete classes of maritime employees, but rather with a spectrum ranging from the blue-water seaman to the land- based longshoreman." *Brown v. ITT Rayonier, Inc., 497*

*F.2d 234, 236 (CA5 1974)*. The federal courts have struggled over the years to articulate generally applicable criteria to distinguish among the many varieties of maritime workers, often developing detailed multipronged tests for seaman status. [***330] Since the 1950's, this Court largely has left definition of the Jones Act's scope to the lower courts. Unfortunately, as a result, "the perils of the sea, which mariners suffer and shipowners insure against, have met their match in the perils of judicial review." Gilmore & Black, *supra*, § 6-1, at 272. Or, as one court paraphrased Diderot in reference to this body of law: "'We have made a labyrinth and got lost in it. We must find our way out.'" *Johnson v. John F. Beasley Constr. Co.*, 742 F.2d 1054, 1060 (CA7 1984),

[***LEdHR4A] [4A]cert. denied, 469 U.S. 1211, 84 L. Ed. 2d 328, 105 S. Ct. 1180 (1985); see 9 Oeuvres Completes de Diderot, 203 (J. Assezat ed. 1875).

[*357] A

In *Wilander*, decided in 1991, the Court attempted for the first time in 33 years to clarify the definition of a "seaman" under the Jones Act. Jon Wilander was injured while assigned as a foreman supervising the sandblasting and painting of various fixtures and piping on oil drilling platforms in the Persian Gulf. His employer claimed that he could not qualify as a seaman because he did not aid in the navigation function of the vessels on which he served. Emphasizing that the question presented was narrow, we considered whether the term "seaman" is limited to only those maritime workers who aid in a vessel's navigation.

After surveying the history of an "aid in navigation" requirement under both the Jones Act and general maritime law, we concluded that "all those with that 'peculiar relationship to the vessel' are covered under the Jones Act, regardless of the particular job they perform," *498 U.S. at 354*, and that "the better rule is to define 'master or member of a crew' under the LHWCA, and therefore 'seaman' under the Jones Act, solely in terms of the employee's connection to a vessel in navigation," *ibid*. Thus, we held that, although "it is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, . . . a seaman must be doing the ship's work." *Id., at 355*. We explained that "the key to seaman status is employment-related connection to a vessel in navigation," and that, although "we are not called upon here to define this connection in all details, . . . we believe the requirement that an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission' captures well an important requirement of seaman status." *Ibid.*

Beyond dispensing with the "aid to navigation" requirement, however, *Wilander* did not consider the req-

uisite connection to a vessel in any detail and therefore failed to end the prevailing confusion regarding seaman status.

[*358] B

Respondent urges us to find our way out of the Jones Act "labyrinth" by focusing on the seemingly activity-based policy underlying the statute (the protection of those who are exposed to the perils of the sea), and to conclude that anyone working on board a [**2185] vessel for the duration of a "voyage" in furtherance of the vessel's mission has the necessary employment-related connection to qualify as a seaman. Brief for Respondent 12-17. Such an approach, however, would run counter to our prior decisions and our understanding [***331] of the remedial scheme Congress has established for injured maritime workers. A brief survey of the Jones Act's tortured history makes clear that we must reject the initial appeal of such a "voyage" test and undertake the more difficult task of developing a status-based standard that, although it determines Jones Act coverage without regard to the precise activity in which the worker is engaged at the time of the injury, nevertheless best furthers the Jones Act's remedial goals.

[***LEdHR6A] [6A]Our Jones Act cases establish several basic principles regarding the definition of a seaman. First, "whether under the Jones Act or general maritime law, seamen do not include land-based workers." *Wilander, supra, at 348;* see also Allbritton, Seaman Status in *Wilander's* Wake, 68 Tulane L. Rev. 373, 387 (1994). Our early Jones Act decisions had not recognized this fundamental distinction. In *International Stevedoring Co. v. Haverty*, 272 U.S. 50, 71 L. Ed. 157, 47 S. Ct. 19 (1926), we held that a longshoreman injured while stowing cargo, and while aboard but not employed by a vessel at dock in navigable waters, was a seaman covered by the Jones Act. Recognizing that "for most purposes, as the word is commonly used, stevedores are not 'seamen,'" the Court nevertheless concluded that "we cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship." *Id., at* [*359] *52*. Because stevedores are engaged in "a maritime service formerly rendered by the ship's crew," *ibid* (citing *Atlantic Transport Co. of W. Va. v. Imbrovek*, 234 U.S. 52, 62, 58 L. Ed. 1208, 34 S. Ct. 733 (1914)), we concluded, they should receive the Jones Act's protections. See also *Uravic v. F. Jarka Co.*, 282 U.S. 234, 238, 75 L. Ed. 312, 51 S. Ct. 111 (1931); *Jamison v. Encarnacion*, 281 U.S. 635, 639, 74 L. Ed. 1082, 50 S. Ct. 440 (1930). In 1946, the Court belatedly recognized that Congress had acted, in passing the LHWCA in 1927, to undercut the Court's reasoning in the *Haverty* line of

cases and to emphasize that land-based maritime workers should not be entitled to the seamen's traditional remedies. Our decision in *Swanson v. Marra Brothers, Inc., 328 U.S. 1, 7, 90 L. Ed. 1045, 66 S. Ct. 869 (1946)*, acknowledged that Congress had expressed its intention to "confine the benefits of the Jones Act to the members of the crew of a vessel plying in navigable waters and to substitute for the right of recovery recognized by the *Haverty* case only such rights to compensation as are given by [the LHWCA]." See also *South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 257, 84 L. Ed. 732, 60 S. Ct. 544 (1940)*. Through the LHWCA, therefore, Congress "explicitly denied a right of recovery under the Jones Act to maritime workers not members of a crew who are injured on board a vessel." *Swanson, supra, at 6.* And this recognition process culminated in *Wilander* with the Court's statement that, "with the passage of the LHWCA, Congress established a clear distinction between land-based and sea-based maritime workers. The latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seamen." *498 U.S. at 347.*

[***LEdHR7] [7]In addition to recognizing a [***332] fundamental distinction between land-based and sea-based maritime employees, our cases also emphasize that Jones Act coverage, like the jurisdiction of admiralty over causes of action for maintenance and cure for injuries received in the course of a seaman's employment, depends "not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as [*360] such to the vessel and its operation in navigable waters." *Swanson, supra, at 4.* Thus, maritime workers who obtain seaman status do not lose that protection automatically when on shore and may recover under the Jones Act whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the [**2186] ship. In *O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 87 L. Ed. 596, 63 S. Ct. 488 (1943)*, the Court held a shipowner liable for injuries caused to a seaman by a fellow crew member while the former was on shore repairing a conduit that was a part of the vessel and that was used for discharging the ship's cargo. We explained: "The right of recovery in the Jones Act is given to the seaman as such, and, as in the case of maintenance and cure, the admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the vessel plying in navigable waters." *Id., at 42-43.* Similarly, the Court in *Swanson* emphasized that the LHWCA "leaves unaffected the rights of members of the crew of a vessel to recover under the Jones Act when injured while pursuing their maritime employment whether on board . . . or on shore." *328 U.S. at 7-8.* See also *Braen v. Pfeifer Oil Transp.*

*Co., 361 U.S. 129, 131-132, 4 L. Ed. 2d 191, 80 S. Ct. 247 (1959).*

[***LEdHR8] [8]Our LHWCA cases also recognize the converse: Land-based maritime workers injured while on a vessel in navigation remain covered by the LHWCA, which expressly provides compensation for injuries to certain workers engaged in "maritime employment" that are incurred "upon the navigable waters of the United States," *33 U.S.C. § 903(a)*. Thus, in *Director, Office of Workers' Compensation Programs v. Perini North River Associates, 459 U.S. 297, 74 L. Ed. 2d 465, 103 S. Ct. 634 (1983)*, we held that a worker injured while "working on a barge in actual navigable waters" of the Hudson River, *id., at 300, n. 4*, could be compensated under the LHWCA, *id., at 324.* See also *Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 244-245, 86 L. Ed. 184, 62 S. Ct. 221 (1941)* (upholding LHWCA coverage for a worker testing [*361] outboard motors who "was drowned when a motor boat in which he was riding capsized"). These decisions, which reflect our longstanding view of the LHWCA's scope, indicate that a maritime worker does not become a "member of a crew" as soon as a vessel leaves the dock.

[***LEdHR9] [9]It is therefore well settled after decades of judicial interpretation that the Jones Act inquiry is fundamentally status based: Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes [***333] them ashore. In spite of this background, respondent and JUSTICE STEVENS suggest that any maritime worker who is assigned to a vessel for the duration of a voyage--and whose duties contribute to the vessel's mission--should be classified as a seaman for purposes of injuries incurred during that voyage. See Brief for Respondent 14; *post*, at 377 (opinion concurring in judgment). Under such a "voyage test," which relies principally upon this Court's statements that the Jones Act was designed to protect maritime workers who are exposed to the "special hazards" and "particular perils" characteristic of work on vessels at sea, see, *e. g., Wilander, supra, at 354*, the worker's activities at the time of the injury would be controlling.

[***LEdHR10] [10]The difficulty with respondent's argument, as the foregoing discussion makes clear, is that the LHWCA repudiated the *Haverty* line of cases and established that a worker is no longer considered to be a seaman simply because he is doing a seaman's work at the time of the injury. Seaman status is not coextensive with seamen's risks. See, *e. g., Easley v. Southern Shipbuilding Corp., 965 F.2d 1, 4-5 (CA5 1992)*, cert. denied,

*506 U.S. 1050, 122 L. Ed. 2d 124, 113 S. Ct. 969 (1993);* Robertson 93 (following "the overwhelming weight of authority in taking it as given that seaman status cannot be established by any worker who fails to demonstrate that a significant portion of his work was done aboard a vessel" and acknowledging that "some [*362] workers who unmistakably confront the perils of the sea, often in extreme form, are thereby left out of the seamen's protections" (footnote omitted)). A "voyage test" would conflict with our prior understanding of the Jones Act as fundamentally status based, granting the negligence cause of action to those maritime workers who form the ship's company. *Swanson,* [**2187] *supra, at 4-5; O'Donnell, supra, at 42-43.*

*Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190, 96 L. Ed. 205, 72 S. Ct. 216 (1952),* is not to the contrary. Although some language in that case does suggest that whether an individual is a seaman depends upon "the activity in which he was engaged at the time of injury," the context of that discussion reveals that "activity" referred to the worker's employment as a laborer on a vessel undergoing seasonal repairs while out of navigation, and not to his precise task at the time of injury. Similarly, despite Justice Harlan's suggestion in dissent that the Court's decision in *Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 2 L. Ed. 2d 737, 78 S. Ct. 687 (1958),* necessarily construed the word seaman "to mean nothing more than a person injured while working at sea," *id., at 255,* our short *per curiam* opinion in that case does not indicate that we adopted so expansive a reading of the statutory term. Citing our prior cases which emphasized that the question of seaman status is normally for the factfinder to decide, see, *e. g., Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 371-372, 1 L. Ed. 2d 404, 77 S. Ct. 415 (1957); Bassett, 309 U.S. at 257-258,* we reversed the judgment of the Court of Appeals and held simply that the jury could have inferred from the facts presented that the petitioner was a member of a crew in light of his [***334] overall service to the company (as the District Court had concluded in ruling on a motion for a directed verdict at the close of petitioner's case). *Grimes, supra, at 253.* That neither *Desper* nor *Grimes* altered our established course in favor of a voyage test is confirmed by reference to our later decision in *Braen, supra, at 131,* in which we repeated that "the injured party must of course have 'status as a member of the vessel' for it is seamen, not others who may work on [*363] the vessel ( *Swanson v. Marra Bros., 328 U.S. 1, 4, 90 L. Ed. 1045, 66 S. Ct. 869),* to whom Congress extended the protection of the Jones Act."

[***LEdHR11] [11] [***LEdHR12] [12]We believe it is important to avoid "'engrafting upon the statutory classification of a "seaman" a judicial gloss so protean, elusive, or arbitrary as to permit a worker to walk into and

out of coverage in the course of his regular duties.'" *Barrett v. Chevron, U.S.A., Inc., 781 F.2d 1067, 1075 (CA5 1986) (en banc) (quoting Longmire v. Sea Drilling Corp., 610 F.2d 1342, 1347, n. 6 (CA5 1980)).* In evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ "a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence." *Easley, supra, at 5.* Thus, a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured. *Reeves v. Mobile Dredging & Pumping Co., 26 F.3d 1247, 1256 (CA3 1994).* Unlike JUSTICE STEVENS, see *post,* at 383, we do not believe that any maritime worker on a ship at sea as part of his employment is automatically a member of the crew of the vessel within the meaning of the statutory terms. Our rejection of the voyage test is also consistent with the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act (and, perhaps more importantly for purposes of the employers' workers' compensation obligations, who will be covered by the LHWCA) before a particular workday begins.

To say that our cases have recognized a distinction between land-based and sea-based maritime workers that precludes application of a voyage test for seaman status, however, is not to say that a maritime employee must work *only* on board a vessel to qualify as a seaman under the Jones Act. In *Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 116 L. Ed. 2d 405, 112 S. Ct. 486 (1991),* decided only a few months after *Wilander,* we concluded that a worker's status as a ship repairman, one of the enumerated [*364] occupations encompassed within the term "employee" under the LHWCA, *33 U.S.C. § 902* (3), did not necessarily restrict the worker to a remedy under that statute. We explained that, "while in some cases a ship [**2188] repairman may lack the requisite connection to a vessel in navigation to qualify for seaman status, . . . not all ship repairmen lack the requisite connection as a matter of law. This is so because 'it is not the employee's particular job that is determinative, but the employee's connection to a vessel.'" *Gizoni, supra, at 89 (quoting Wilander, 498 U.S. at 354)* [***335] (footnote omitted). Thus, we concluded, the Jones Act remedy may be available to maritime workers who are employed by a shipyard and who spend a portion of their time working on shore but spend the rest of their time at sea.

Beyond these basic themes, which are sufficient to foreclose respondent's principal argument, our cases are largely silent as to the precise relationship a maritime worker must bear to a vessel in order to come within the Jones Act's ambit. We have, until now, left to the lower

federal courts the task of developing appropriate criteria to distinguish the "ship's company" from those members of the maritime community whose employment is essentially land based.

### C

The Court of Appeals for the First Circuit was apparently the first to develop a generally applicable test for seaman status in *Carumbo v. Cape Cod S. S. Co., 123 F.2d 991 (1941)*, the court retained the pre-Swanson view that "the word 'seaman' under the Jones Act [did] not mean the same thing as 'member of a crew' under the [LHWCA]," *123 F.2d at 994*. It concluded that "one who does any sort of work aboard a ship in navigation is a 'seaman' within the meaning of the Jones Act." *Id., at 995*. To the phrase "member of a crew," on the other hand, the court gave a more restrictive meaning. The court adopted three elements to define the phrase that had been used at various times in prior cases, [*365] holding that "the requirements that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation appear to us to be the essential and decisive elements of the definition of a 'member of a crew.'" *Ibid*. Cf. *Senko, supra, at 375* (Harlan, J., dissenting) ("According to past decisions, to be a 'member of a crew' an individual must have some connection, more or less permanent, with a ship and a ship's company"). Once it became clear that the phrase "master or member of a crew" from the LHWCA is coextensive with the term "seaman" in the Jones Act, courts accepted the *Carumbo* formulation of master or member of a crew in the Jones Act context. See *Boyd v. Ford Motor Co., 948 F.2d 283 (CA6 1991); Estate of Wenzel v. Seaward Marine Services, Inc., 709 F.2d 1326, 1327 (CA9 1983); Whittington v. Sewer Constr. Co., 541 F.2d 427, 436 (CA4 1976); Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 36 (CA3 1975)*, cert. denied, *423 U.S. 1054, 46 L. Ed. 2d 643, 96 S. Ct. 785 (1976); McKie v. Diamond Marine Co., 204 F.2d 132, 136 (CA5 1953)*. The Court of Appeals for the Second Circuit initially was among the jurisdictions to adopt the *Carumbo* formulation as the basis of its seaman status inquiry, see *Salgado v. M. J. Rudolph Corp., 514 F.2d at 755*, but that court took the instant case as an opportunity to modify the traditional test somewhat (replacing the "more or less permanent connection" prong with a requirement that the connection be "substantial in terms of its (a) duration and (b) nature"), *20 F.3d at 57*.

The second major body of seaman status law developed in the Court of Appeals for the Fifth Circuit, which has a substantial Jones Act caseload, in the wake of *Offshore Co. v. Robison, 266 F.2d 769 (CA5 1959)*. At the [***336] time of his injury, Robison was an oil worker permanently assigned to a drilling rig mounted on a

barge in the Gulf of Mexico. In sustaining the jury's award of damages to Robison under the Jones Act, the court abandoned the aid in navigation requirement of the traditional test and held as follows:

> [*366] "There is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel . . . or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of [**2189] its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." *Id., at 779* (footnote omitted).

Soon after *Robison*, the Fifth Circuit modified the test to allow seaman status for those workers who had the requisite connection with an "identifiable fleet" of vessels, a finite group of vessels under common ownership or control. *Braniff v. Jackson Avenue-Gretna Ferry, Inc., 280 F.2d 523, 528 (1960)*. See also *Barrett, 781 F.2d at 1074; Bertrand v. International Mooring & Marine, Inc., 700 F.2d 240 (CA5 1983)*, cert. denied, *464 U.S. 1069, 79 L. Ed. 2d 212, 104 S. Ct. 974 (1984)*. The modified *Robison* formulation, which replaced the *Carumbo* version as the definitive test for seaman status in the Fifth Circuit, has been highly influential in other courts as well. See *Robertson 95; Miller v. Patton-Tully Transp. Co., 851 F.2d 202, 204 (CA8 1988); Caruso v. Sterling Yacht & Shipbuilders, Inc., 828 F.2d 14, 15 (CA11 1987); Bennett v. Perini Corp., 510 F.2d 114, 115 (CA1 1975)*.

While the *Carumbo* and *Robison* approaches may not seem all that different at first glance, subsequent developments in the Fifth Circuit's Jones Act jurisprudence added a strictly temporal gloss to the Jones Act inquiry. Under *Barrett v. Chevron, U.S.A., Inc., supra*, if an employee's regular duties require him to divide his time between vessel and land, his status as a crew member is determined "in the context of his entire employment" with his current employer. *Id., at 1075*. See also Allbritton, *68 Tulane L. Rev., at 386; Longmire, 610 F.2d at 1347* (explaining that a worker's seaman status "should be addressed with reference to the nature [*367] and location of his occupation taken as a whole"). In *Barrett*, the court noted that the worker "performed seventy to

eighty percent of his work on platforms and no more than twenty to thirty percent of his work on vessels" and then concluded that, "because he did not perform a substantial portion of his work aboard a vessel or fleet of vessels, he failed to establish that he was a member of the crew of a vessel." *781 F.2d at 1076*. Since *Barrett*, the Fifth Circuit consistently has analyzed the problem in terms of the percentage of work performed on vessels for the employer in question--and has declined to find seaman status where the employee spent less than 30 percent of his time aboard ship. See, *e. g., Palmer v. Fayard Moving & Transp. Corp., 930 F.2d 437, 439 (CA5 1991); Lormand v. Superior Oil Co., 845 F.2d 536, 541 (CA5 1987)*, cert. denied, *484 U.S. 1031 (1988)*; cf. *Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291, 295 [***337] (CA5 1987); Pickle v. International Oilfield Divers, Inc., 791 F.2d 1237, 1240 (CA5 1986)*, cert. denied, *479 U.S. 1059, 93 L. Ed. 2d 989, 107 S. Ct. 939 (1987)*.

Although some Courts of Appeals have varied the applicable tests to some degree, see, *e. g., Johnson v. John F. Beasley Constr. Co., 742 F.2d at 1062-1063*, the traditional *Carumbo* seaman status formulation and the subsequent *Robison* modification are universally recognized, and one or the other is applied in every Federal Circuit to have considered the issue. See Bull, Seaman Status Revisited: A Practical Guide To Status Determination, 6 U. S. F. Mar. L. J. 547, 562-572 (1994) (collecting cases). The federal courts generally require *at least* a significant connection to a vessel in navigation (or to an identifiable fleet of vessels) for a maritime worker to qualify as a seaman under the Jones Act. Although the traditional test requires a "more or less permanent connection" and the *Robison* formulation calls for "substantial" work aboard a vessel, "this general requirement varies little, if at all, from one jurisdiction to another," *Bull, supra*, at 587, and "the courts have repeatedly held [*368] that the relationship creating seaman status must be substantial in point of time and work, and not merely sporadic," *id.*, at 587-588.

D

[***LEdHR1B]    [1B]    [***LEdHR13]    [13]
[***LEdHR14]    [14]    [***LEdHR15]    [15]From this background emerge the essential contours of the "employment-related connection to a vessel in navigation," *Wilander, 498 U.S. at 355*, required for an employee to qualify as a seaman under the Jones Act. We have said that, in giving effect to the term "seaman," our concern must be "to define the meaning for the purpose of a particular statute" and [**2190] that its use in the Jones Act "must be read in the light of the mischief to be corrected and the end to be attained." *Warner, 293 U.S. at 158*. Giving effect to those guiding principles, we think

that the essential requirements for seaman status are two-fold. First, as we emphasized in *Wilander*, "an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission.'" *498 U.S. at 355* (quoting *Robison, 266 F.2d at 779*). The Jones Act's protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: "All who work at sea in the service of a ship" are *eligible* for seaman status. *498 U.S. at 354*.

[***LEdHR1C]  [1C]Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea. See 1B A. Jenner, Benedict on Admiralty § 11a, pp. 2-10.1 to 2-11 (7th ed. 1994) ("If it can be shown that the employee performed a [*369] significant part of his work on board [***338] the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied" (footnote omitted)). This requirement therefore determines which maritime employees in *Wilander's* broad category of persons eligible for seaman status because they are "doing the ship's work," *498 U.S. at 355*, are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation.

[***LEdHR16A]  [16A]It is important to recall that the question of who is a "member of a crew," and therefore who is a "seaman," is a mixed question of law and fact. Because statutory terms are at issue, their interpretation is a question of law and it is the court's duty to define the appropriate standard. *Wilander, 498 U.S. at 356*. On the other hand, "if reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury." *Ibid.* See also *Senko, 352 U.S. at 374* (explaining that "the determination of whether an injured person was a 'member of a crew' is to be left to the finder of fact" and that "a jury's decision is final if it has a reasonable basis"). The jury should be permitted, when determining whether a maritime employee has the requisite employment-related connection to a vessel in navigation to qualify as a member of the vessel's crew, to consider all rele-

vant circumstances bearing on the two elements outlined above.

[***LEdHR6B] [6B] [***LEdHR17] [17]In defining the prerequisites for Jones Act coverage, we think it preferable to focus upon the essence of what it means to be a seaman and to eschew the temptation to create detailed tests to effectuate the congressional purpose, tests that tend to become ends in and of themselves. The principal formulations employed by the Courts of Appeals--"more or less permanent assignment" or "connection to a vessel that is substantial in terms of its duration and nature"--are [*370] simply different ways of getting at the same basic point: The Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to "the special hazards and disadvantages to which they who go down to sea in ships are subjected." *Sieracki, 328 U.S. at 104* (Stone, C. J., dissenting). Indeed, it is difficult to discern major substantive differences in the language of the two phrases. In our view, "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." *Wallace v. Oceaneering Int'l, 727 F.2d 427, 432 (CA5 1984).* The duration of a worker's connection to a vessel and the nature of the worker's activities, [**2191] taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

Although we adopt the centerpiece of the formulation used by the Court of Appeals in this case--that a seaman must have a connection with a vessel in navigation that is substantial in both duration and nature--we [***339] should point out how our understanding of the import of that language may be different in some respects from that of the court below. The Court of Appeals suggested that its test for seaman status "does not unequivocally require a Jones Act seaman to be substantially connected to a vessel" in terms of time if the worker performs important work on board on a steady, although not necessarily on a temporally significant, basis. *20 F.3d at 53.* Perhaps giving effect to this intuition, or perhaps reacting to the temporal gloss placed on the *Robison* language by later Fifth Circuit decisions, the court phrased its standard at one point as requiring a jury to find that a Jones Act plaintiff's contribution to the function of the vessel was substantial in terms of its duration *or* nature. *20 F.3d at 57.* It is not clear which version ("duration or nature" [*371] as opposed to "duration and nature") the Court of Appeals intended to adopt for the substantial connection requirement--or indeed whether the court saw a significant difference between

the two. Nevertheless, we think it is important that a seaman's connection to a vessel in fact be substantial in both respects.

[***LEdHR16B] [16B] [***LEdHR18] [18] [***LEdHR19] [19]We agree with the Court of Appeals that seaman status is not *merely* a temporal concept, but we also believe that it necessarily includes a temporal element. A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are. Naturally, substantiality in this context is determined by reference to the period covered by the Jones Act plaintiff's maritime employment, rather than by some absolute measure. Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "the inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Wilander, 498 U.S. at 356.* Nevertheless, we believe that courts, employers, and maritime workers can all benefit from reference to these general principles. And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict. See, *e. g., Palmer, 930 F.2d at 439.*

[***LEdHR20] [20]On the other hand, we see no reason to limit the seaman status inquiry, as petitioners contend, exclusively to an examination of the overall course of a worker's service with a [*372] particular employer. Brief for Petitioners 14-15. When a maritime worker's basic assignment changes, his seaman status may change as well. See *Barrett, 781 F.2d at 1077* (Rubin, J., dissenting) ("An assignment to work as a crew member, like the voyage of a vessel, may be brief, and the *Robison* test is applicable in deciding the worker's status during any such employment"); *Longmire, 610 F.2d at 1347, n. 6.* For example, we can imagine situations in which [***340] someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, just as someone actually transferred to a desk job in the company's office and injured

in the hallway should not be entitled to claim seaman status on the basis of prior service at sea. If a maritime employee receives a new work assignment in which his [**2192] essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position. See Cheavens, *64 Tulane L. Rev., at 389-390.* Thus, nothing in our opinion forecloses Jones Act coverage, in appropriate cases, for JUSTICE STEVENS' paradigmatic maritime worker injured while reassigned to "a lengthy voyage on the high seas," *post,* at 386. While our approach maintains the status-based inquiry this Court's earlier cases contemplate, we recognize that seaman status also should not be some immutable characteristic that maritime workers who spend only a portion of their time at sea can never attain.

### III

[***LEdHR2B]   [2B]One final issue remains for our determination: whether the District Court erred in instructing the jurors that, "in determining whether Mr. Latsis performed a substantial part of his work on the vessel, [they could] not consider the period [*373] of time the *Galileo* was in drydock in Germany, because during that time period she was out of navigation." We agree with the Court of Appeals that it did.

[***LEdHR2C]   [2C]   [***LEdHR16C]   [16C]The foregoing discussion establishes that, to qualify as a seaman under the Jones Act, a maritime employee must have a substantial employment-related connection to a vessel *in navigation.* See *Wilander, supra,* at 354-355. Of course, any time Latsis spent with the *Galileo* while the ship was out of navigation could not count as time spent at sea for purposes of that inquiry, and it would have been appropriate for the District Court to make this clear to the jury. Yet the underlying inquiry whether a vessel is or is not "in navigation" for Jones Act purposes is a fact-intensive question that is normally for the jury and not the court to decide. See *Butler v. Whiteman, 356 U.S. 271, 2 L. Ed. 2d 754, 78 S. Ct. 734 (1958) (per curiam);* 2 M. Norris, Law of Seamen § 30.13, p. 363 (4th ed. 1985) ("Whether the vessel is in navigation presents a question of fact to be determined by the trier of the facts. When the case is tried to a jury the fact question should be left to their consideration if sufficient evidence has been presented to provide the basis for jury consideration"). Removing the issue from the jury's consideration is only appropriate where the facts and the law will reasonably support only one conclusion, *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986),* and the colloquy between the court and counsel does not indicate that the District Court made any such findings before overruling respondent's objection to the drydock instruction. See Tr. 432.

Based upon the record before us, we think the court failed adequately to justify its [***341] decision to remove the question whether the *Galileo* was "in navigation" while in Bremerhaven from the jury.

[***LEdHR21A]   [21A]Under our precedent and the law prevailing in the Circuits, it is generally accepted that "a vessel does not cease to be a vessel when she is not voyaging, but is at anchor, berthed, or at dockside." *DiGiovanni v. Traylor Bros., Inc., 959 F.2d 1119, 1121 (CA1) (en banc), cert. denied, 506 U.S. [*374] 827, 121 L. Ed. 2d 50, 113 S. Ct. 87 (1992),* even when the vessel is undergoing repairs. See *Butler, supra,* at 271; *Senko, 352 U.S. at 373;* Norris, *supra,* at 364 ("[A] vessel is in navigation... when it returns from a voyage and is taken to a drydock or shipyard to undergo repairs in preparation to making another trip, and likewise a vessel is in navigation, although moored to a dock, if it remains in readiness for another voyage" (footnotes omitted)). At some point, however, repairs become sufficiently significant that the vessel can no longer be considered in navigation. In *West v. United States, 361 U.S. 118, 4 L. Ed. 2d 161, 80 S. Ct. 189 (1959),* we held that a shoreside worker was not entitled to recover for unseaworthiness because the vessel on which he was injured was undergoing an overhaul for the purpose of making her seaworthy and therefore had been withdrawn from navigation. We explained that, in such cases, "the focus should be upon the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done." *Id., at 122.* See also *United N.Y. and N.J. Sandy Hook Pilots Assn. v. Halecki, 358 U.S. 613, 79 S. Ct. 517, 3 L. Ed. 2d 541 [**2193] (1959); Desper, 342 U.S. at 191.* The general rule among the Courts of Appeals is that vessels undergoing repairs or spending a relatively short period of time in drydock are still considered to be "in navigation" whereas ships being transformed through "major" overhauls or renovations are not. See Bull, 6 U.S. F. Mar. L. J., at 582-584 (collecting cases).

[***LEdHR2D]         [2D]         [***LEdHR21B] [21B]Obviously, while the distinction at issue here is one of degree, the prevailing view is that "major renovations can take a ship out of navigation, even though its use before and after the work will be the same." *McKinley v. All Alaskan Seafoods, Inc., 980 F.2d 567, 570 (CA9 1992).* Our review of the record in this case uncovered relatively little evidence bearing on the *Galileo's* status during the repairs, and even less discussion of the question by the District Court. On the one hand, the work on the Chandris vessel took only about six months, which seems to be a relatively short period of time for important repairs on oceangoing vessels. Cf. *id., at 571* [*375] (17-month-long project involving major structural changes took the vessel out of navigation); *Wixom*

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

*v. Boland Marine & Manufacturing Co., 614 F.2d 956 (CA5 1980)* (similar 3-year project); see also *Senko, supra,* at 373 (noting that "even a transoceanic liner may be confined to berth for lengthy periods, and while there the ship is kept in repair by its 'crew'"--and that "there can be no doubt that a member of its crew would be covered by the Jones Act during this period, even though the ship was never in transit during his employment"). On the other hand, Latsis' own description of the work performed suggests [***342] that the modifications to the vessel were actually quite significant, including the removal of the ship's bottom plates and propellers, the addition of bow thrusters, overhaul of the main engines, reconstruction of the boilers, and renovations of the cabins and other passenger areas of the ship. See App. 93-94. On these facts, which are similar to those in *McKinley,* it is possible that Chandris could be entitled to partial summary judgment or a directed verdict concerning whether the *Galileo* remained in navigation while in drydock; the record, however, contains no stipulations or findings by the District Court to justify its conclusion that the modifications to the *Galileo* were sufficiently extensive to remove the vessel from navigation as a matter of law. On that basis, we agree with the Court of Appeals that the District Court's drydock instruction was erroneous.

[***LEdHR2E] [2E]Even if the District Court had been justified in directing a verdict on the question whether the *Galileo* remained in navigation while in Bremerhaven, we think that the court's charge to the jury swept too broadly. Instead of simply noting the appropriate legal conclusion and instructing the jury not to consider the time Latsis spent with the vessel in drydock *as time spent with a vessel in navigation,* the District Court appears to have prohibited the jury from considering Latsis' stay in Bremerhaven *for any purpose.* In our view, Latsis' activities while the vessel was in drydock are at least [*376] marginally relevant to the underlying inquiry (whether Latsis was a seaman and not a land-based maritime employee). Naturally, the jury would be free to draw several inferences from Latsis' work during the conversion, not all of which would be in his favor. But the choice among such permissible inferences should have been left to the jury, and we think the District Court's broadly worded instruction improperly deprived the jury of that opportunity by forbidding the consideration of Latsis' time in Bremerhaven at all.

IV

[***LEdHR3B] [3B]Under the Jones Act, "if reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury." *Wilander,* 498 U.S. at 356. On the facts of this case, given that essential points

are in dispute, reasonable factfinders could disagree as to whether Latsis was a seaman. Because the question whether the *Galileo* remained "in navigation" while in drydock should have been submitted to the jury, and because the decision on that issue might affect the outcome of the ultimate seaman status inquiry, we affirm the judgment of the Court of Appeals remanding the case to the District Court for a new trial. [**2194]

[***LEdHR1D] [1D] [***LEdHR3C] [3C]On remand, the District Court should charge the jury in a manner consistent with our holding that the "employment-related connection to a vessel in navigation" necessary to qualify as a seaman under the Jones Act, *id., at 355,* comprises two basic elements: The worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and [***343] its nature. As to the latter point, the court should emphasize that the Jones Act was intended to protect sea-based maritime workers, who owe their allegiance to a vessel, and not land-based employees, who do not. By instructing juries in Jones Act [*377] cases accordingly, courts can give proper effect to the remedial scheme Congress has created for injured maritime workers.

*It is so ordered.*

**CONCURBY:** STEVENS

**CONCUR:**

JUSTICE STEVENS, with whom JUSTICE THOMAS and JUSTICE BREYER join, concurring in the judgment.

The majority has reached the odd conclusion that a maritime engineer, injured aboard ship on the high seas while performing his duties as an employee of the ship, might not be a "seaman" within the meaning of the Jones Act. This decision is unprecedented. It ignores the critical distinction between work performed aboard ship during a voyage--when the members of the crew encounter "the perils of the sea"--and maritime work performed on a vessel moored to a dock in a safe harbor. In my judgment, an employee of the ship who is injured at sea in the course of his employment is always a "seaman." I would leave more ambiguous, shore-bound cases for another day. Accordingly, though I concur in the Court's disposition of this case, returning it to the District Court for a new trial, I disagree with the standard this Court directs the trial court to apply on remand.

I

The Jones Act, n1 *46 U.S.C. App. § 688*, provides, in part, "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law." In this case, it is undisputed that respondent, Antonios Latsis, was injured in the course of his employment. When the injury occurred, he was on board the steamship *Galileo*, a vessel in navigation in the Atlantic Ocean. He was therefore exposed to the perils of the sea; indeed, as the Court of Appeals correctly noted, "his injury [*378] was the result of such a peril." n2 Respondent was not a mere passenger; he was performing duties for his employer that contributed to the ship's mission. In common parlance, then, he was a member of the crew of the *Galileo*. I think these facts are sufficient to establish that respondent was, as a matter of law, a "seaman" within the meaning of the Jones Act at the time of his injury. Although the character of Latsis's responsibilities before the voyage began and after it ended would be relevant in determining his status if he had been injured while the ship was in port, they have no bearing on his status as a member of the *Galileo*'s crew during the voyage.

n1 The "Jones Act" is actually § 33 of the Merchant Marine Act, 1920, 41 Stat. 1007.

n2 Latsis's employment did expose him to the perils of the sea--in fact, his injury was the result of such a peril in the sense that while on board a seaman is very much reliant upon and in the care of the ship's physician. If that physician is unqualified or engages in medical malpractice, it is just as much a peril to the mariner on board as the killer wave, the gale or hurricane, or other dangers of the calling." *20 F.3d 45, 55 (CA2 1994)*.

This conclusion follows, first, from the language of the Jones Act and of [***344] the Longshore and Harbor Workers' Compensation Act (LHWCA), *33 U.S.C. § 901, et seq.* The latter, a federal workers' compensation scheme for shore-based maritime workers, exempts any "master or member of a crew of any vessel," *33 U.S.C. § 902(3)(G)*--a formulation that, we have held, is coextensive with the term "seaman" in the Jones Act. *McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 347, 112 L. Ed. 2d 866, 111 S. Ct. 807 (1991)*. In ordinary parlance, an employee of a ship [**2195] at sea who is on that ship as part of his employment and who contributes to the ship's mission is both a "seaman" and a "member of [the] crew of [the] vessel." Indeed, I am not sure how these words can reasonably be read to exclude such an employee. Surely none of the statutory language suggests that the

individual must be a member of the ship's crew for longer than a single voyage.

My conclusion also comports with the clear purpose of the Jones Act and of the other maritime law remedies traditionally [*379] afforded to seamen: n3 to protect maritime workers from exposure to the perils of the sea. In *Wilander, 498 U.S. at 354*, we endorsed Chief Justice Stone's explanation of the admiralty law's favored treatment of seamen. Chief Justice Stone wrote:

"The liability of the vessel or owner for maintenance and cure, regardless of their negligence, was established long before our modern conception of contract. But it, like the liability to indemnify the seaman for injuries resulting from unseaworthiness, has been universally recognized as an obligation growing out of the status of the seaman and his peculiar relationship to the vessel, and as a feature of the maritime law compensating or offsetting the special hazards and disadvantages to which they who go down to sea in ships are subjected. They are exposed to the perils of the sea and all the risks of unseaworthiness, with little opportunity to avoid those dangers or to discover and protect themselves from them or to prove who is responsible for the unseaworthiness causing the injury.

"For these reasons the seaman has been given a special status in the maritime law as the ward of the admiralty, entitled to special protection of the law not extended to land employees. Justice Story said in *Reed v. Canfield, Fed. Cas. No. 11,641, 1 Summ. 195, 199, 20 F. Cas. 426*: 'Seamen are in some sort co-adventurers upon the voyage; and lose their wages upon casualties, which do not affect artisans at home. They share the fate of the ship in cases of shipwreck and capture. They are liable to different rules of discipline and sufferings from landsmen. The policy of the maritime law, for great, and wise, and benevolent purposes, has built up peculiar rights, privileges, [*380] duties, and liabilities in the sea-service, which do not belong to home pursuits.'" *Seas Shipping Co. v. Sieracki, 328 U.S. 85, 104-105, 90 L. Ed. 1099, 66 S. Ct. 872 (1946)* (dissenting opinion) (citations omitted).

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

[***345] This exposure to the perils of the sea is what separates seamen from longshoremen, who are subject to entirely different, and usually less advantageous, remedies for injuries suffered in the course of their employment. Chief Justice Stone continued:

"It is for these reasons that throughout the long history of the maritime law the right to maintenance and cure, and later the right to indemnity for injuries attributable to unseaworthiness, have been confined to seamen. Longshoremen and harbor workers are in a class very different from seamen, and one not calling for the creation of extraordinary obligations of the vessel or its owner in their favor, more than other classes of essentially land workers. Unlike members of the crew of a vessel they do not go to sea; they are not subject to the rigid discipline of the sea; they are not prevented by law or ship's discipline from leaving the vessel on which they may be employed; they have the same recourse as land workers to avoid the hazards to which they are exposed, to ascertain the cause of their injury and to prove it in court." *Id., at 105.*

n3 These remedies are maintenance and cure and recovery for unseaworthiness. See G. Gilmore & C. Black, Law of Admiralty, ch. VI (2d ed. 1975).

In some cases, workers who labor on ships close to shore may face sufficient exposure to the perils of the sea to merit seaman status. The determination of seaman status will depend on the particular facts of the case. See, *e. g., Desper v. Starved Rock Ferry Co., 342 U.S. 187, 96 L. Ed. 205, 72 S. Ct. 216 (1952);* n4 [**2196] *Senko v.* [*381] *LaCrosse Dredging Corp., 352 U.S. 370, 1 L. Ed. 2d 404, 77 S. Ct. 415 (1957); Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 2 L. Ed. 2d 737, 78 S. Ct. 687 (1958); Butler v. Whiteman, 356 U.S. 271, 2 L. Ed. 2d 754, 78 S. Ct. 734 (1958).* When the extent and consequence of the employee's exposure to the seaman's hazards is facially unclear, a test like the majority's may be appropriate. But no ambiguity exists when an employee is injured on the high seas. Unquestionably, that employee faces the perils associated with the voyage. Incontrovertibly, that employee is a "master or member of a crew of any vessel," within the meaning of the LHWCA, and hence a "seaman" under the Jones

Act. Whatever treatment Congress intended for employees working in proximity to the shoreline, certainly it intended to extend Jones Act protection to the captain and crew of a ship on the high seas.

n4 In *Desper,* we held that a workman on a moored barge was not a "seaman" at the time of his death even though "he was a probable navigator in the near future." *342 U.S. at 191.* We noted that "the many cases turning upon the question whether an individual was a 'seaman' demonstrate that the matter depends largely on the facts of the particular case and the activity in which he was engaged at the time of injury ... There was no vessel engaged in navigation at the time of the decedent's death." *Id., at 190-191.*

This conclusion is consistent with every Jones Act case that this Court has decided. Justice Cardozo's opinion for the Court in *Warner v. Goltra, 293 U.S. 155, 79 L. Ed. 254, 55 S. Ct. 46 (1934),* set a course that we have consistently followed. Explaining our holding that the master of a tugboat is a "seaman," he explained that "it is enough that what he does affects 'the operation and welfare of the ship when she is upon a voyage.'" [***346] *Id., at 157,* n5 Indeed, apart from the argument that a seaman must assist in performing the transportation function of the vessel--an argument finally put to rest in *McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 112 L. Ed. 2d 866, 111 S. Ct. 807 (1991)*--I am not aware of a single Jones Act case decided by this Court, other [*382] than *Warner,* n6 in which anyone even *argued* that an employee who was aboard the ship contributing to the ship's mission while the vessel was in navigation on the high seas was not a seaman. In light of the purposes of the Jones Act, that position is simply too far-fetched. As a leading admiralty treatise has recognized, "it seems never to have been questioned that any member of a ship's company who actually goes to sea, no matter what his (or her) duties may be, is a seaman." G. Gilmore & C. Black, Law of Admiralty § 6-21, p. 331 (2d ed. 1975).

n5 The quotation is from a pre-Jones Act case, *The Buena Ventura, 243 F. 797, 799 (SDNY 1916).* Earlier in his opinion, Justice Cardozo had noted: "In the enforcement of the statute a policy of liberal construction announced at the beginning has been steadily maintained." *Warner, 293 U.S. at 156.*

n6 Even in *Warner,* no one contested the basic proposition that an employee of a ship at sea is a "seaman." Instead, the issue in that case was whether the term "seaman" extended to the *captain* of such a ship, or whether it referred only to lower level employees. The Court, applying the "liberal construction" that Congress intended, held that the master was a "seaman."

Surely nothing in *Wilander* contradicts this basic proposition. In that opinion, we made several references to the importance of work performed on a voyage. Thus, we quoted from leading 19th-century treatises on admiralty: "'The term mariner includes all persons employed on board ships and vessels during the voyage to assist in their navigation and preservation, or to promote the purposes of the voyage ... At all times and in all countries, all the persons who have been necessarily or properly employed in a vessel as co-laborers to the great purpose of the voyage, have, by the law, been clothed with the legal rights of mariners.'" *498 U.S. at 344-345* (emphasis deleted), quoting E. Benedict, American Admiralty § § 278, 241, pp. 158, 133-134 (1850). "An 1883 treatise declared: 'All persons employed on a vessel to assist in the main purpose of the voyage are mariners, and included under the name of seamen.' M. Cohen, Admiralty 239." *498 U.S. at 346.* Summarizing our conclusion, we wrote:

> "We believe the better rule is to define 'master or member of a crew' under the LHWCA, and therefore 'seaman' under the Jones Act, solely in terms of the employee's [*383] connection to a vessel in navigation. [**2197] This rule best explains our case law and is consistent with the pre-Jones Act interpretation of 'seaman' and Congress' land-based/sea-based distinction. All who work at sea in the service of a ship face those particular perils to which the protection of maritime law, statutory as well as decisional, is directed." *Id., at 354.*

Our opinion in *Wilander* is thus entirely consistent with my view that while a vessel is at sea every member of its crew is a seaman within the meaning of the Jones Act.

[***347] II

Despite the language, history, and purpose of the Jones Act, the Court today holds that seaman status may require more than a single ocean voyage. The Court's opinion thus obscures, if it does not ignore, the distinction between the perils of the sea and the risks faced by maritime workers when a ship is moored to a dock. The test that the Court formulates may be appropriate for the resolution of cases in the latter category. The Court fails, however, to explain why the member of the crew of a vessel at sea is not always a seaman.

Respondent's argument, that "any worker who is assigned to a vessel for the duration of a voyage and whose duties contribute to the vessel's mission must be classified as a seaman respecting injuries incurred on that voyage," Brief for Respondent 14, is not inconsistent with the Court's view, *ante,* at 359-361, that an employee must occupy a certain status in order to qualify as a seaman. It merely recognizes that all members of a ship's crew have that status while the vessel is at sea. In contrast, when the ship is in a harbor, further inquiry may be necessary to separate land-based from sea-based maritime employees. The Court is therefore simply wrong when it states that a "'voyage test' would conflict with our prior understanding of the Jones Act as fundamentally status based, granting the negligence cause [*384] of action to those maritime workers who form the ship's company," *ante,* at 362. The "ship's company" is readily identifiable when the ship is at sea; the fact that it may be less so when the ship is in port is not an acceptable reason for refusing to rely on the voyage test in a case like this one.

The Court is also quite wrong to suggest that our prior cases "indicate that a maritime worker does not become a 'member of a crew' as soon as a vessel leaves the dock," *ante,* at 361. In neither of the two cases on which it relies to support this conclusion did the injured workman even claim the status of a seaman. In *Director, Office of Workers' Compensation Programs v. Perini North River Associates, 459 U.S. 297, 74 L. Ed. 2d 465, 103 S. Ct. 634 (1983),* we held that an employee of a firm that was building the foundation of a sewage treatment plant, which extended over the Hudson River adjacent to Manhattan, was covered by the LHWCA because he was injured while working on a barge in navigable waters. The Court of Appeals had denied coverage on the ground that this worker was not engaged in maritime employment. Thus, *Perini* had nothing to do with any possible overlap between the Jones Act and the LHWCA; this Court's reversal merely found a sufficient maritime connection to support LHWCA coverage of an admittedly shore-based worker.

The other case that the Court cites, *Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 86 L. Ed. 184, 62 S. Ct. 221 (1941),* involved a janitor who had drowned while riding in a motor boat on the James River near Richmond. The Court of Appeals had held that his widow was not entitled to compensation under the LHWCA on the alternative grounds (1) that the janitor was not acting in the course of his employment when the boat capsized,

and (2) that the LHWCA did not apply because Virginia law could provide compensation. See *id., at* [***348] *245.* As in *Perini,* our opinion reversing that decision did not discuss the Jones Act, because no one had even mentioned the possibility that the janitor might be a "seaman." Because *Parker* was decided during the 19-year period "during which the Court did [*385] not recognize the mutual exclusivity of the LHWCA and the Jones Act," *Wilander,* 498 [**2198] *U.S. at 348, n7* it is not at all clear that the Court, if asked to do so, would not have found that the janitor was a Jones Act seaman as well as an LHWCA-covered employee. Accordingly, the cases cited by the majority lend no support to its holding that the member of a crew of a ship at sea is not always a seaman.

> n7 During this period, the Court incorrectly treated stevedores working on moored vessels as seamen covered by the Jones Act under the pre-LHWCA ruling in *International Stevedoring Co. v. Haverty,* 272 U.S. 50, 71 L. Ed. 157, 47 S. Ct. 19 (1926). See *Wilander,* 498 U.S. at 348-349.

The Court's only other justification for refusing to apply a voyage test is its purported concern about a worker who might "walk into and out of coverage in the course of his regular duties." *Ante,* at 363 (internal quotation marks omitted). Because the only way that a seaman could walk out of Jones Act coverage during a voyage would be to quit his job and become a passenger (or possibly jump overboard), I take the majority's argument to mean that a single voyage is not a long enough time to establish seaman status. n8 I simply do not understand this argument. Surely a voyage is sufficient time to establish an employment-related, status-based connection to a vessel in navigation that exposes the employee to the perils of the sea. The majority cannot explain why an employee who signs on for a single journey is any less a "seaman" or "member of a crew" if he intends to become an insurance agent after the voyage than if he intends to remain with the ship. What is important is the employee's status at the time of the injury, not his status a day, a month, or a year beforehand or afterward.

> n8 Or at least, it is not necessarily a long enough time. It depends on the facts. See *ante,* at 371-372.

Apparently, the majority's real concern about walking in and out of coverage is that an employer will be unable to predict which of his employees will be covered by the Jones Act, and which by the LHWCA, on any

given day. I think [*386] it is a novel construction of the Jones Act to read it as a scheme to protect employers. n9 But even if Congress had shared the Court's concern, this case does not implicate it in the least. We are talking here about a lengthy voyage on the high seas. The employer controls who goes on that voyage; he knows, more or less, when that voyage will begin and when it will end. And, but for the majority's decision today, he would know that while the ship is at sea, all his employees thereon would be covered by the Jones Act and not by the LHWCA. Thus, no one is [***349] walking out of Jones Act coverage and into LHWCA coverage (or vice versa) without the employer's knowledge and control. Once again, the majority's concern--and its method of determining seaman status--is properly directed at injuries occurring while the ship is at port.

> n9 The Jones Act was passed to overturn the harsh rule of *The Osceola,* 189 U.S. 158, 47 L. Ed. 760, 23 S. Ct. 483 (1903), which disallowed any recovery by a seaman for negligence of the master or any member of the crew of his ship under general maritime law. *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 342, 112 L. Ed. 2d 866, 111 S. Ct. 807 (1991). The aim of the statute, then, was to expand the remedies available to employees, not to aid their employers.

As a matter of history, this concern with oscillating back and forth between different types of compensation systems recalls a very different and far more serious problem: the difficulty of defining who is a "maritime employee" (a class of workers that includes both seaman and longshoremen) and who is not. Over the powerful dissent of Justice Holmes, in *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 61 L. Ed. 1086, 37 S. Ct. 524 (1917), the Court held that the constitutional grant of admiralty and maritime jurisdiction to the federal courts prevented the State of New York from applying its workmen's compensation statute to a longshoreman who was injured on a gang plank about 10 feet seaward of Pier 49 in New York City. Jensen was a shore-based worker who had walked out of the coverage of the state law into an unprotected federal area--the area seaward of the shoreline. In enacting the [*387] LHWCA, Congress in 1927 responded to *Jensen* and its progeny by extending federal protection to shore-based workers injured while temporarily on navigable waters. The statute excluded [**2199] Jones Act seamen, on the one hand, and shore-based workers while they were on the landward side of the *Jensen* line, on the other. As we have explained on more than one occasion, then, the LHWCA was originally a "gap-filling" measure intended to create coverage for those workers for whom, after *Jensen,*

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

States could not provide compensation. See, *e.g.*, *Norton v. Warner Co.*, 321 U.S. 565, 570, 88 L. Ed. 931, 64 S. Ct. 747 (1944); *Davis v. Department of Labor and Industries of Wash.*, 317 U.S. 249, 252-253, 87 L. Ed. 246, 63 S. Ct. 225 (1942); see also S. Rep. No. 973, 69th Cong., 1st Sess., 16 (1926). n10

n10 Whereas the LHWCA as enacted in 1927 responded to the problem of employees who walked out of state coverage every time they boarded a ship, the 1972 amendment to that Act responded to the opposite concern--longshoremen who walked out of federal coverage every time they left the ship. Because state compensation schemes were sometimes less generous than the LHWCA, Congress expanded the federal coverage to encompass injuries occurring on piers and adjacent land used for loading and unloading ships. See H. R. Rep. No. 92-1441, pp. 10-11 (1972). Because the class of workers protected by the LHWCA continued to be composed entirely of shore-based workers, the 1972 amendment appropriately preserved the exclusion of Jones Act seamen. It did not alter the original 1927 Act's constructive definition of "seaman" as "master or member of a crew of any vessel."

Thus, the majority's concern about employees "walking in and out of coverage" evokes images of a real problem engendered by *Jensen*--the problem of employees changing their legal status, sometimes many times a day, merely by walking from one place to another in the course of their employment. That problem is not implicated in this case. At the time of his injury Latsis was employed, with the full knowledge of his employer, on a ship at sea. He could not walk out of coverage until the voyage was over. At the end of the voyage, if Latsis had taken on other duties, wholly or partly on land, and had been injured while so engaged, then the majority's [*388] concern might have substance. But in this case, the majority's concern--and its [***350] test for seaman status--is completely misplaced.

III

In my opinion every member of the crew of a vessel is entitled to the protection of the Jones Act during a voyage on the high seas, even if he was not a part of the crew before the ship left port, and even if he abandoned the ship the moment it arrived at its destination. This view is consistent with every Jones Act case this Court has ever decided, and it is faithful to the statutory purpose to provide special protection to those who must encounter the perils of the sea while earning their livelihood. Whether a sailor voluntarily signs on for a single

voyage, as Jim Hawkins did, n11, or, like Billy Budd, is impressed into duty against his will, n12 he is surely a seaman when his ship sails, whatever fate might await him at the end of the voyage.

n11 R. Stevenson, Treasure Island (1883).

n12 H. Melville, Billy Budd (1924).

**REFERENCES:** Return To Full Text Opinion

Go to Supreme Court Brief(s)
Go to Oral Argument Transcript

Supreme Court's construction and application of Supreme Court Rules 24, 25, and 37 (and similar predecessor provisions), prescribing requirements for briefs on merits and for amicus curiae briefs

*32 Am Jur 2d, Federal Employers' Liability and Compensation Acts 45-47; 32 Am Jur 2d, Federal Practice and Procedure 391, 399, 424*

11 Federal Procedure, L Ed, Employers' Liability Acts 30:87, 30:118, 30:123

9 Federal Procedural Forms, L Ed, Employers' Liability Acts 27:171, 27:193, 27:235

11 Am Jur Pl & Pr Forms (Rev), Federal Employers' Liability and Compensation Acts, Forms 151, 164, 212

9 Am Jur Trials 665, Seamen's Injuries

*46 USCS Appx 688*

L Ed Digest, Appeal 1673, 1689, 1692.3; Federal Employers' Liability and Workers' Compensation Acts 58; Trial 272

L Ed Index, Instructions to Jury; Jones Act; Seamen

ALR Index, Instructions to Jury; Jones Act; Seamen

Annotation References:

Supreme Court's construction and application of Supreme Court Rule 14 (and similar predecessor provisions), prescribing requirements of petition for certiorari. *118 L Ed 2d 665*.

Supreme Court's views as to who is "seaman" under Jones Act (*46 USCS Appx 688*, and similar predecessor provisions). *112 L Ed 2d 1254*.

515 U.S. 347, *; 115 S. Ct. 2172, **;
132 L. Ed. 2d 314, ***; 1995 U.S. LEXIS 4047

Construction and application of Rules 40-42 [predecessors of Rules 24, 25, and 37] of Rules of Supreme Court prescribing requirements of briefs. *38 L Ed 2d 857.*

Seaman as injured "in the course of his employment" for purposes of the *Jones Act--federal cases. 4 L Ed 2d 1777.*

Admiralty jurisdiction: maritime nature of tort--modern cases. *80 ALR Fed 105.*

"Maritime employment" coverage under Longshoremen's and Harbor Workers' Compensation Act. *41 ALR Fed 685.*

Who is a "master or member of a crew of any vessel" within exclusion of Longshoremen's and Harbor Workers' Compensation Act *(33 USCS 902*(3) and 903(a)(1)). *20 ALR Fed 600.*

When is vessel in navigation for purposes of Jones Act *(46 USC 688). 5 ALR Fed 674.*

LEXSEE 520 U.S. 548

**HARBOR TUG AND BARGE COMPANY, PETITIONER v. JOHN PAPAI ET UX.**

**No. 95-1621**

**SUPREME COURT OF THE UNITED STATES**

*520 U.S. 548; 117 S. Ct. 1535; 137 L. Ed. 2d 800; 1997 U.S. LEXIS 2846; 65 U.S.L.W. 4330; 1997 AMC 1817; 97 Cal. Daily Op. Service 3507; 97 Daily Journal DAR 6021; 10 Fla. L. Weekly Fed. S 433*

**January 13, 1997, Argued**
**May 12, 1997, Decided**

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT, Reported at: *1995 U.S. App. LEXIS 27219.*

**DISPOSITION:** *67 F. 3d 203,* reversed.

**DECISION:**

Worker injured while on 1-day assignment obtained through union hiring hall to paint tug at dockside held not to be "seaman" under Jones Act *(46 USCS Appx 688(a)).*

**SUMMARY:**

For about 2 1/4 years, an individual had obtained short-term job assignments from a number of employers through a union's hiring hall. Most of the individual's assignments were deckhand work, but some assignments were longshoring work or maintenance work aboard docked vessels. The individual had worked on vessels owned by three different employers, and his longshoring work had been done for still other employers. A company that had employed the individual through the hiring hall on 12 occasions in the previous 2 1/2 months--3 or 4 of which occasions involved only dockside maintenance work aboard a particular tug which the company operated--hired the individual on a 1-day assignment to paint the housing structure of the tug at dockside. There was no vessel captain on board and the individual reported to the port captain at a dockside office. The individual was not going to sail with the tug after he finished painting. While on this job, the individual fell from a ladder and allegedly injured his knee. Subsequently, the individual (1) brought an action in the United States District Court for the Northern District of California against the com-

pany, and (2) included a claim for damages against the company, under the Jones Act *(46 USCS Appx 688(a)),* for the company's alleged negligence. The company moved for summary judgment on the Jones Act claim. The District Court, granting the motion, ruled that the individual was not a "seaman" within the meaning of the Jones Act. On appeal, the United States Court of Appeals for the Ninth Circuit, reversing and remanding, expressed the view that (1) for purposes of the individual's Jones Act claim, it would have been reasonable for a jury to conclude that the individual's relationship with a vessel or a group of vessels was substantial in terms of duration and nature, considering the total circumstances of the individual's employment; (2) a worker should not be deprived of seaman status under the Jones Act simply because the industry operated under a daily assignment system rather than a permanent employment system; and (3) the circumstance of the individual's employment history with the company might in itself provide a sufficient connection to the company's vessels to establish seaman status *(67 F.3d 203).*

On certiorari, the United States Supreme Court reversed. In an opinion by Kennedy, J., joined by Rehnquist, Ch. J., and O'Connor, Scalia, Souter, and Thomas, JJ., it was held that the record in the case at hand did not permit a reasonable jury to conclude that the individual was a seaman under the Jones Act, where (1) there was no evidence that the vessels which obtained employees from the hiring hall were subject to unitary ownership or control in any aspect of their business or operation; (2) a link to an identifiable group of vessels in navigation was not established by employers' mere use of the same hiring hall which drew from the same pool of employees; (3) the individual's recent discrete engagements for the company were separate from the one during which the individual allegedly was injured, which engagement was the sort of transitory or sporadic con-

$\mathcal{E}x.3$

nection to a vessel or group of vessels that did not qualify one for seaman status; and (4) the only connection a reasonable jury could have identified among the vessels the individual worked aboard was that each employer hired some of its employees from the same union hiring hall where the employer hired the individual.

Stevens, J., joined by Ginsburg and Breyer, JJ., dissenting, expressed the view that the Court of Appeals had correctly concluded that the individual's status as a seaman should have been tested by the character of the individual's work for the group of vessel owners that used the same union agent to make selections from the same pool of employees.

## LAWYERS' EDITION HEADNOTES:

[***LEdHN1]
FEDERAL EMPLOYERS&APOS; LIABILITY AND WORKERS&APOS; COMPENSATION ACTS § 58
SUMMARY JUDGMENT AND JUDGMENT ON PLEADINGS § 5
 "seaman" under Jones Act --
Headnote:[1A][1B][1C][1D][1E][1F]

The record in a suit brought in a Federal District Court by an individual who allegedly was injured while painting the housing structure of a tug at dockside does not permit a reasonable jury to conclude that the individual is a "seaman" under the Jones Act *(46 USCS Appx 688*(a))--and thus the individual fails to meet his burden on a motion for summary judgment, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, to set forth specific facts showing that there is a genuine issue for trial-- where (1) the record indicates that (a) for about 2 1/4 years, the individual had obtained short-term job assignments from a number of employers through a union's hiring hall, (b) most of the individual's assignments were deckhand work, but some assignments were longshoring work or maintenance work aboard docked vessels, (c) the individual had worked on vessels owned by three different employers, and his longshoring work was done for still other employers, (d) the company which operated the tug had employed the individual on 12 occasions in the previous 2 1/2 months, and 3 or 4 occasions aboard the tug had involved only maintenance work while the tug was docked, (e) the painting assignment was expected to begin and end the same day, (f) there was no vessel captain on board, (g) the individual reported to the port captain at a dockside office, and (h) the individual was not going to sail with the tug after he finished painting; (2) there is no evidence in the record that (a) the contract which the company and the individual's other employers had with the union about employing deckhands was negotiated by a multiemployer bargaining group, or (b) the vessels that obtained employees from

the hiring hall were subject to unitary ownership or control in any aspect of their business or operation; (3) a link to an identifiable group of vessels in navigation, for purposes of determining whether an employee is a Jones Act seaman, is not established by employers' mere use of the same hiring hall which draws from the same pool of employees; (4) the contract gives no reason to assume that any particular percentage of the individual's work would subject him to the perils of the sea; (5) it would not be reasonable to infer that the individual's recent engagements with the company involved work of a seagoing nature; (6) in any event, such discrete engagements were separate from the one during which the individual allegedly was injured, which engagement was the sort of transitory or sporadic connection to a vessel or group of vessels that does not qualify one for seaman status; (7) the only connection a reasonable jury could identify among the vessels the individual worked aboard is that each employer hired some of its employees from the same union hiring hall where the employer hired the individual; and (8) such connection is not sufficient to establish seaman status under the group of vessels concept. (Stevens, Ginsburg, and Breyer, JJ., dissented from this holding.)

[***LEdHN2]
APPEAL § 1662
 effect of decision on other grounds --
Headnote:[2]

The United States Supreme Court--having resolved in favor of an injured worker's employer, on certiorari to review a Federal Court of Appeals' decision that there was a jury question as to whether the worker was a "seaman" under the Jones Act *(46 USCS Appx 688*(a)), the question whether the record in the case would permit a reasonable jury to conclude that the worker was a Jones Act seaman--will not reach the question whether an administrative ruling in favor of the worker on a claim of coverage under the Longshore and Harbor Workers' Compensation Act *(33 USCS 901* et seq.) bars the worker's claim of seaman status under the Jones Act.

[***LEdHN3]
FEDERAL EMPLOYERS&APOS; LIABILITY AND WORKERS&APOS; COMPENSATION ACTS § 58
 coverage --
Headnote:[3]

An employee who is within the exclusion from coverage under the Longshore and Harbor Workers' Compensation Act (LHWCA) *(33 USCS 901* et seq.) as "a master or member of a crew of any vessel" pursuant to *33 USCS 902*(3)(G) is a "seaman" entitled to sue for damages under the Jones Act *(46 USCS Appx 688*(a)); in other

520 U.S. 548, *; 117 S. Ct. 1535, **;
137 L. Ed. 2d 800, ***; 1997 U.S. LEXIS 2846

words, the LHWCA and the Jones Act are mutually exclusive.

[***LEdHN4]
SUMMARY JUDGMENT AND JUDGMENT ON
PLEADINGS § 5
TRIAL § 42
 "seaman" under Jones Act -- mixed question of law and
fact -- directed verdict --
Headnote:[4]

The inquiry as to whether an employee is a "seaman" within the meaning of the Jones Act *(46 USCS Appx 688(a))* is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury; nevertheless, summary judgment or a directed verdict as to such inquiry is mandated where the facts and the law will reasonably support only one conclusion.

[***LEdHN5]
FEDERAL EMPLOYERS&APOS; LIABILITY AND
WORKERS&APOS; COMPENSATION ACTS § 58
 Jones Act "seaman" -- substantial connection to vessel --
Headnote:[5]

In order for the substantial-connection requirement for establishing an employee's status as a "seaman" under the Jones Act *(46 USCS Appx 688(a))*--that is, the employee must have a connection to a vessel in navigation, or to an identifiable group of such vessels, that is substantial in terms of both duration and nature--to serve the requirement's purpose, the inquiry must concentrate on whether the employee's duties take the employee to sea, as such concentration will (1) give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel, and (2) be helpful in distinguishing land-based from sea-based employees.

[***LEdHN6]
FEDERAL EMPLOYERS&APOS; LIABILITY AND
WORKERS&APOS; COMPENSATION ACTS § 58
 Jones Act "seaman" -- duties --
Headnote:[6]

An employee's prior work history with a particular employer may not affect the inquiry as to whether the employee is a "seaman" under the Jones Act *(46 USCS Appx 688(a))* if the employee was injured on a new assignment with the same employer which involved different essential duties than the employee's previous assignments; the inquiry into the nature of the employee's duties for seaman-status purposes may concentrate on a narrower, not broader, period than the employee's entire course of employment with the employee's current employer. (Ste-

vens, Ginsburg, and Breyer, JJ., dissented from this holding.)

[***LEdHN7]
FEDERAL EMPLOYERS&APOS; LIABILITY AND
WORKERS&APOS; COMPENSATION ACTS § 58
 Jones Act "seaman" -- identifiable group of vessels --
Headnote:[7]

In deciding whether there is an identifiable group of vessels of relevance for purposes of determining whether an employee is a "seaman" under the Jones Act *(46 USCS Appx 688(a))*--in that one requirement for seaman status is that the employee have a connection to a vessel in navigation, or to an identifiable group of such vessels, that is substantial in terms of both duration and nature-- the question is whether the vessels are subject to common ownership or control. (Stevens, Ginsburg, and Breyer, JJ., dissented from this holding.)

[***LEdHN8]
FEDERAL EMPLOYERS&APOS; LIABILITY AND
WORKERS&APOS; COMPENSATION ACTS § 58
 Jones Act "seaman" -- union agreement --
Headnote:[8]

With respect to determining whether an individual--who allegedly was injured while on an assignment to paint the housing structure of a tug at dockside, which assignment had been obtained through a union hiring hall--was a "seaman" under the Jones Act *(46 USCS Appx 688(a))*, the question is what connection the individual had in actual fact to vessel operations, not what an agreement between the employer and the union says.

[***LEdHN9]
FEDERAL EMPLOYERS&APOS; LIABILITY AND
WORKERS&APOS; COMPENSATION ACTS § 58
 Jones Act seamen --
Headnote:[9]

Coverage of employees under the Jones Act *(46 USCS Appx 688(a))* is confined to seamen, those workers who face regular exposure to the perils of the sea; land-based employment is inconsistent with Jones Act coverage.

**SYLLABUS:** Respondent Papai was injured while painting the housing structure of the tug *Pt. Barrow*. Petitioner Harbor Tug & Barge Co., the tug's operator, had hired him to do the work, which was expected to last one day and would not involve sailing with the vessel. Papai had been employed by Harbor Tug on 12 previous occasions in the 2 1/2 months before his injury, receiving those jobs through the Inland Boatman's Union (IBU) hiring hall. He had been getting short-term jobs with

520 U.S. 548, *; 117 S. Ct. 1535, **;
137 L. Ed. 2d 800, ***; 1997 U.S. LEXIS 2846

various vessels through the hiring hall for about 2 1/4 years. Most of those were deckhand work, which Papai said involved manning the lines on- and off-board vessels while they dock or undock. Papai sued Harbor Tug, claiming, *inter alia,* negligence under the Jones Act, and his wife joined as a plaintiff, claiming loss of consortium. The District Court granted Harbor Tug summary judgment upon finding that Papai did not enjoy seaman status under the Jones Act, and it later confirmed that adjudication. The Ninth Circuit reversed and remanded for a trial of, among other things, Papai's seaman status and his corresponding Jones Act claim. Based on *Chandris, Inc. v. Latsis, 515 U.S. 347, 132 L. Ed. 2d 314, 115 S. Ct. 2172,* the court described the relevant inquiry as not whether Papai had a permanent connection with the vessel but whether his relationship with a vessel or an identifiable group of vessels was substantial in duration and nature, and found that this required consideration of his employment's total circumstances. The court determined that a reasonable jury could conclude that Papai satisfied that test, for if the type of work a maritime worker customarily performs would entitle him to seaman status if performed for a single employer, he should not be deprived of that status simply because the industry operates under a daily assignment, rather than a permanent employment, system.

*Held:*

1. Because the issue whether the record permits a reasonable jury to conclude that Papai is a Jones Act seaman is here resolved in the employer's favor, this Court does not reach the question whether an administrative ruling on an employee on his claim of Longshore and Harbor Workers' Compensation Act coverage bars his claim of seaman status in a Jones Act suit. P. 1.

2. This record would not permit a reasonable jury to conclude that Papai is a Jones Act seaman. Jones Act coverage is confined to seamen, those workers who face regular exposure to the perils of the sea. An important part of the test for determining who is a seaman is whether the injured worker has a substantial connection to a vessel or to a fleet of vessels, and the latter concept requires a requisite degree of common ownership or control. *Chandris,* 515 U.S., at    . The requisite link is not established by the mere use of the same hiring hall which draws from the same pool of employees. The various vessels on which Papai worked through the IBU hiring hall in the 2 1/4 years before his injury were not linked by any common ownership or control. Considering prior employments with independent employers in making the seaman status inquiry would undermine "the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act . . . before a par-

ticular work day begins," *id.,* at    , and there would be no principled basis for limiting which prior employments are considered for determining seaman status. That the IBU Deckhands Agreement classified Papai as a deckhand does not give him claim to seaman status. Seaman status is based on his actual duties, *South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 260, 84 L. Ed. 732, 60 S. Ct. 544,* and Papai's duties during the employment in question included no seagoing activity. Nor is it reasonable to infer from his testimony that his 12 prior employments with Harbor Tug involved work of a seagoing nature that could qualify him for seaman status. Pp. 5-12.

*67 F.3d 203,* reversed.

## COUNSEL:

Eric Danoff argued the cause for petitioner.

Thomas J. Boyle argued the cause for respondents.

David C. Frederick argued the cause for the United States, as amicus curiae, by special leave of court.

**JUDGES:** KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, SOUTER, and THOMAS, JJ., joined. STEVENS, J., filed a dissenting opinion, in which GINSBURG and BREYER, JJ., joined.

**OPINIONBY:** KENNEDY

**OPINION:** [*550]    [**1538]    [***806] JUSTICE KENNEDY delivered the opinion of the Court.

Adjudication to determine whether a maritime employee is a seaman under the Jones Act, *46 U.S.C. App. § 688*(a), or a maritime employee covered by the Longshore and Harbor Workers' Compensation Act (LHWCA), 44 Stat. (part 2) 1424, as amended, *33 U.S.C. § 901 et seq.,* continues to be of concern in our system. The distinction between the two mutually exclusive categories can be difficult to implement, and many cases turn on their specific facts.

[***LEdHR1A]    [1A] [***LEdHR2]    [2]The Court of Appeals for the Ninth Circuit held in this case that there was a jury question as to whether an injured worker was a Jones Act seaman. Granting the employer's petition for a writ of certiorari, we brought two questions before us. The first is whether an administrative ruling in favor of the employee on his claim of coverage under the LHWCA bars his claim of seaman status in the Jones Act suit he wishes to pursue in district court. The second is whether this record would permit a reasonable jury to conclude the employee is a Jones Act seaman. We re-

solve the second question in the employer's favor and, as it is dispositive of the case, we do not reach the first.

On the question of seaman status, there is an issue of significance beyond the facts of this case. Our statement in an earlier case that a worker may establish seaman status based on the substantiality of his connection to "an identifiable group of . . . vessels" in navigation, see *Chandris, Inc. v.* [*551] *Latsis, 515 U.S. 347, 368, 132 L. Ed. 2d 314, 115 S. Ct. 2172 (1995),* has been subject to differing interpretations, and we seek to provide clarification.

[***807] I

Respondent John Papai was painting the housing structure of the tug *Pt. Barrow* when a ladder he was on moved, he alleges, causing him to fall and injure his knee. App. 50. Petitioner Harbor Tug & Barge Co., the tug's operator, had hired Papai to do the painting work. *Id.,* at 44. A prime coat of paint had been applied and it was Papai's task to apply the finish coat. *Id.,* at 45. There was no vessel captain on board and Papai reported to the port captain, who had a dockside office. *Id.,* at 36-37. The employment was expected to begin and end the same day, *id.,* at 35, 48, and Papai was not going to sail with the vessel after he finished painting, *id.,* at 51. Papai had been employed by Harbor Tug on 12 previous occasions in the 2 1/2 months before his injury.

Papai received his jobs with Harbor Tug through the Inland Boatman's Union (IBU) hiring hall. He had been getting jobs with various vessels through the hiring hall for about 2 1/4 years. All the jobs were short term. The longest lasted about 40 days and most were for three days or under. *Id.,* at 29, 34. In a deposition, Papai described the work as coming under three headings: maintenance, longshoring, and deckhand. *Id.,* at 30-32. Papai said maintenance work involved chipping rust and painting aboard docked vessels. *Id.,* at 30, 34-35. Longshoring work required helping to discharge vessels. *Id.,* at 31. Deckhand work involved manning the lines on- and off-board vessels while they docked or undocked. *Id.,* at 30. As for the assignments he obtained through the hiring hall over 2 1/4 years, most of them, says Papai, involved deckhand work. *Id.,* at 34.

After his alleged injury aboard the *Pt. Barrow,* Papai sued Harbor Tug in the United States District Court for the Northern District of California, claiming negligence under [*552] the Jones Act and unseaworthiness under [**1539] general maritime law, in addition to other causes of action. His wife joined as a plaintiff, claiming loss of consortium. Harbor Tug sought summary judgment on Papai's Jones Act and unseaworthiness claims, contending he was not a seaman and so could not prevail on either claim. The District Court granted Harbor Tug's motion and later denied Papai's motion for reconsidera-

tion. After our decisions in *McDermott International, Inc. v. Wilander, 498 U.S. 337, 112 L. Ed. 2d 866, 111 S. Ct. 807 (1991),* and *Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 116 L. Ed. 2d 405, 112 S. Ct. 486 (1991),* the District Court granted a motion by Harbor Tug "to confirm" the earlier summary adjudication of Papai's non-seaman status. The District Court reasoned, under a test since superseded, see *Chandris, supra,* that Papai was not a seaman within the meaning of the Jones Act or the general maritime law, because "he did not have a 'more or less permanent connection' with the vessel on which he was injured nor did he perform substantial work on the vessel sufficient for seaman status." App. to Pet. for Cert. 27a.

The Court of Appeals for the Ninth Circuit reversed and remanded for a trial of Papai's seaman status and his corresponding Jones Act and unseaworthiness claims. Based on our decision in *Chandris,* the court described the relevant inquiry as "not whether plaintiff had a permanent connection with the vessel [but] whether plaintiff's relationship with [***808] a vessel (or a group of vessels) was substantial in terms of duration and nature, which requires consideration of the total circumstances of his employment." *67 F.3d 203, 206 (1995).* A majority of the panel believed it would be reasonable for a jury to conclude the employee satisfied that test. In the majority's view, "if the type of work a maritime worker customarily performs would entitle him to seaman status if performed for a single employer, the worker should not be deprived of that status simply because the industry operates under a daily assignment rather than a permanent employment system." *Ibid.* The majority also said the [*553] "circumstance" that Papai had worked for Harbor Tug on 12 occasions during the 2 1/2 months before his injury "may in itself provide a sufficient connection" to Harbor Tug's vessels to establish seaman status. *Ibid.*

Judge Poole dissented from the majority's holding that there was a triable issue as to Papai's seaman status. He recognized that Chandris held out the possibility of being a seaman without a substantial connection to a particular vessel in navigation, provided one nevertheless had the required connection to "'an identifiable group of such vessels.'" *67 F.3d at 209* (quoting *515 U.S., at 368).* Judge Poole said, however, it would be a mistake to view *Chandris* as holding that, for seaman-status purposes, a "group may be identified simply as those vessels on which a sailor sails, not just those of a particular employer or controlling entity. . . . Th[e majority's holding] renders the 'identifiable group' or 'fleet' requirement a nullity." *67 F.3d at 209* (citation omitted). Judge Poole also noted that the majority's position conflicted with that of the Fifth Circuit (en banc) and of a Third Circuit panel. *Ibid.* (citing *Barrett v. Chevron, U.S.A., Inc., 781*