IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TIMOTHY JAMES POOLE | § | CIVIL ACTION NO. G-05-651 |
| | § | |
| VS. | § | |
| | § | Pursuant to Rule 9(h) of |
| KIRBY INLAND MARINE, LP and | § | the Federal Rules of |
| KIRBY CORPORATION | § | Civil Procedure - ADMIRALTY |

**PLAINTIFF TIMOTHY POOLE'S RESPONSE TO KIRBY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

TIMOTHY JAMES POOLE, Plaintiff, responds to the Motion for Summary Judgment filed by Defendants, KIRBY INLAND MARINE, LP and KIRBY CORPORATION ("Kirby"), pursuant to Fed. R. Civ. P. 56. Mr. Poole requests that Defendants' Motion for Summary Judgment be denied because he is a Jones Act seaman; specifically, 1) he is assigned to a fleet of commonly owned Kirby barges; 2) he spends more than 75% of his work time on said barges; and 3) as a Coast Guard licensed tankerman, his work (*i.e.*, loading and unloading barges) contributes to these barges' mission of transporting cargo. In support thereof, he respectfully shows:

## I. Introduction and Factual Background

Plaintiff TIMOTHY JAMES POOLE is a seaman and holder of Z-card No. 041120, which is endorsed for Tankerman-PIC, oil. See **Ex. 1** (Poole's Z-card). He brings this maritime claim under Rule 9(h), pursuant to the Jones Act, 46 U.S.C. § 688, and general maritime law. His Original Complaint (Doc. #1) is incorporated by reference.

Defendants, KIRBY INLAND MARINE, LP and KIRBY CORPORATION, owned and operated the raised trunk barge, KIRBY 11003, on whose defective catwalk Plaintiff was

injured. *See* **Ex. 2** (Coast Guard vessel documentation information for KIRBY 11003).

On July 27, 2005, while performing his duties as a tankerman during a cargo operation aboard one of Kirby's tank vessels in navigation (KIRBY 11003), Poole was seriously injured when he slipped, tripped and fell on a catwalk, injuring himself. *See* **Ex. 3** (Deposition of T. Poole) at pp 37, 43, 44, 45-47. His injuries were caused by the Defendants' Jones Act negligence and unseaworthiness of the KIRBY 11003.

The following facts are beyond dispute:

1. Poole is a U.S. Coast Guard licensed tankerman; *see* Ex. 1.[1]

2. Kirby hired Poole as a tankerman[2] and he performed tankerman work for Kirby.[3]

3. As a tankerman for Kirby, Poole worked aboard a series of Kirby barges.[4]

4. As a tankerman, Poole performed cargo transfers on barges; in his own words: *"I monitor the tanks with the level flow and keep an eye on the drafts and stuff and monitor the equipment, the pumps, make sure we ain't got no leaks or nothing, same thing with the lines where we hook the hose up and stuff*." *See* Ex. 3 at p. 44. Kirby basically agrees.[5]

[1] Admitted by Kirby; *see* Motion at p. 2 ("After taking a tankerman class for Coast Guard certification, Mr. Poole became a tankerman."). Ex. 3 (Poole deposition) at p. 14.

[2] Admitted by Kirby; *see* Motion at p. 2. ("Timothy Poole commenced work with Kirby in October of 2004"); Ex. 3 (Poole deposition) at pp 10-11.

[3] Admitted by Kirby; *see* Motion at p. 2 ("Mr. Poole only worked on Kirby barges which were not always pushed by boats owned by Kirby.")

[4] *Id.*

[5] The fact that Poole's main job "was to load and unload barges" is admitted by Kirby on page 9, line 9 of its motion.

5) Kirby Inland Marine LP owns the raised trunk barge, KIRBY 11003 on which Plaintiff was injured; it is a documented vessel.[6] See Ex. 2.

Kirby seeks summary judgment on grounds that Mr. Poole lacks seaman status and is ineligible for Jones Act and general maritime law relief, including the right to receive maintenance and cure.

Kirby's motion is narrow. Kirby does **not** argue that Poole's career was predominately shore based or attempt to prove his work percentages; Kirby accepts that the vast majority of Poole's work was performed on barges[7]. Kirby does **not** deny that the KIRBY 11003 is a vessel or that it was "in navigation." Rather, Kirby maintains Poole was not present aboard the barge ***when it was moving***. It is the mere fact these barges were docked and not moving when Poole performed his work that propels Kirby's motion – although it taxes one's imagination to visualize how barge cargo could be transferred to a shoreside terminal, like IPC Deer Park, while a barge was underway.

Kirby makes six legally invalid arguments.[8] *See* Motion at p. 6, "Statement of The Issues to Be Ruled Upon." These six points are:

---

6 *See* Ex. 2 (U.S. Coast Guard vessel documentation information re: KIRBY 11003). Kirby does not challenge vessel status. *See also In Re: Endeavor Marine, Inc.*, 234 F.3d 287, 288, 291 (5th Cir. 2000)(not disputed that a derrick barge was a vessel and not disputed that it was 'in navigation').

7 Poole's time sheets (Ex. 4) and Barge Book (log) (Ex. 5) confirm that approximately 75% of his work time was spent aboard Kirby barges. See also Ex. 7 (Affidavit) authenticating same.

8 *See In re Endeavor Marine, Inc.*, 234 F.3d 287, 291 (5th Cir. 2000) (reversing a trial court's denial of seaman status and rejecting so-called "going to sea" test)("The [district] court found that [plaintiff's] connection to the [barge] was not substantial in nature because 'it did not take him to sea. His work brought him aboard the barge only after the vessel was moored or in the process of mooring.' **This application of the 'going to sea' test has an intuitive appeal, but we do not believe that the Supreme Court intended to create such a singular rule for determining seaman status**.")(emphasis added).

1) Poole was "never assigned to a boat"[9] and hence is supposedly not a seaman;

2) Poole never worked aboard a Kirby barge while it was actually underway[10] but rather "on non-moving, docked barges" and hence is supposedly not a seaman;

3) Poole "did not sleep on a boat"[11] and was never assigned a bunk on Kirby vessels[12] and hence is supposedly not a seaman;

4) Poole was "never part of a crew"[13] and hence is supposedly not a seaman;

---

[9] A worker assigned to **a fleet** of commonly owned vessels is properly a seaman. *Roberts v. Cardinal Services, Inc*., 266 F.3d 368, 375 (5th Cir. 2001) ("Our decisions . . . have reaffirmed the essential principle that to qualify as a seaman an employee must establish an attachment to a vessel **or to an identifiable fleet of vessels**.")(emphasis added). Over forty years ago, in *Braniff v. Jackson Ave.-Gretna Ferry, Inc*., 280 F.2d 523, 528 (5th Cir.1960), the court held that seaman status is not necessarily dependent on a worker's assignment to one vessel; rather, "there is nothing about this expanding concept [of seaman status] to limit it mechanically to a single ship." An 'identifiable fleet' of vessels is defined as "a finite group of vessels under common ownership or control" and in deciding whether there is an identifiable group of vessels, the question is whether the vessels are subject to common ownership or control. *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 556-57 (1997), quoting *Chandris, Inc. v. Latsis,,* 515 U.S. 347, 366 (1995).

[10] A vessel need not be underway, or at sea, as a prerequisite to a Jones Act claim and a worker need not actually navigate or steer the vessel in navigation in order to be considered a seaman. *See McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337 (1991); *In Re: Endeavor Marine, Inc*., 234 F.3d 287, 290-91 (5th Cir. 2000)(a seaman need not "go to sea" as long as his work bears connection to vessel or fleet of vessels). Seaman status is available as long as the capacity in which he/she was employed, or the duties that he/she performed, contributes to the function of the fleet of vessels, or contributes to the accomplishment of the fleet's mission(s), or to the operation or maintenance of such an identifiable fleet of vessels during their movement, or even while at anchor for the fleet's future trips. *Id.* This legal principle is part of the jury instructions for this circuit. See U.S. Fifth Circuit District Judges Ass'n, *Pattern Jury Instructions (Civil Cases)* § 4.1 (1992); *citing Wilander,* 498 U.S. 337.

[11] Maritime law does not require that a Jones Act seaman sleep aboard a vessel. *See, e.g., Braniff,* 280 F.2d 523, 526 (5th Cir. 1960)(reversing a summary judgment dismissing plaintiffs' seamen claims on lack-of-status grounds)("Of course, Braniff was not assigned to, nor did he stand a watch, aboard any one of the ferries. He, as well as [co-plaintiff] and other members of the shore gang **lived ashore and their ordinary hours of work were from 8:00 a.m. to 4:00-4:30 p.m. each day.")**(emphasis added).

[12] Maritime law has never required a worker be assigned a bunk aboard a specific vessel in order to be considered a seaman. It is doubtful most barges have living accommodations, let alone bunks. Rather, the Fifth Circuit has found there to be a legitimate fact issue about seaman's status in cases where a worker lives ashore and reports daily for duties on a ferry. See *Braniff*, 280 F.2d at 526.

[13] This argument is based on Kirby's inaccurate assumption that a worker may only be assigned to ***one*** vessel in order to be considered a seaman. Given that Mr. Poole was assigned to ***a fleet*** of commonly owned Kirby barges, it is not surprising he was not part of one vessel's crew. Being part of ***a crew*** is based on a single-ship assignment; a worker assigned to **a fleet** of commonly owned vessels is also properly a seaman. *Roberts*, 266 F.3d at 375.

5) Poole "was under the orders of a unit that was located on shore"[14], and hence is supposedly not a seaman;

6) Poole allegedly "did not perform the duties of a deck hand"[15] and "none of the work that he performed was ever done on a vessel that was at sea."[16]

As shown herein, the evidence conclusively proves Mr. Poole was assigned to a fleet of commonly owned vessels (*i.e.*, Kirby barges) and that his work aboard them (*i.e.*, as a tankerman) contributed to their functions. As such, under Supreme Court authority, Poole is unquestionably a seaman and fully entitled to Jones Act and general maritime law protection. Kirby's Motion for Summary Judgment must be denied.

## II. Summary of Argument

Poole is a seaman and, as such, entitled to the protection of the Jones Act and general maritime law. He is a Coast Guard licensed tankerman and his job supports the mission of a fleet of commonly owned Kirby barges. His work as a tankerman (*i.e.*, loading and unloading barges) unquestionably contributes to these vessels' missions of carrying and transporting cargo. As such, Poole is a seaman and Kirby's motion for summary

[14] Kirby's allegation is blatantly false. Poole's deposition testimony (Ex. 3) plainly and repeatedly shows that, when a captain was present, he was under the orders of the captain and subject to the captain's control while he was working on and around the barge. *See, e.g.,* Ex. 3 at pp 33-34 (captain could order him to assist with the lines); p. 56 (captain of the boat could fire him; captain of boat had authority over how he performed his job).

[15] Whether Poole performed the duties of ***a deckhand*** –as Kirby narrowly and selectively phrases the issue– is irrelevant. Poole is a licensed ***tankerman*** who was hired by Kirby to work as ***a tankerman*** –a distinct position recognized by both Kirby and the USCG regulations. Jones Act seamen serve in a variety of shipboard positions: they need not all be deckhands and they cannot all be captains. **In any event, Poole's testimony reflects that, at times, he performed deckhand-type duties, such as helping to moor barges**. *See* Ex. 3 (Poole depo.) at p. 33. The captain, if present, could order Poole to do so. *Id.* Moreover, Kirby's Job Description for Tankerman (Ex. 6) advises that, "A Tankerman may be required to throw and catch lines" and "a Tankerman may need to help move a crossover hose . . . ." Poole plainly was expected to, and did, perform deckhand type duties **.**

[16] Kirby's "going to sea" argument is specious. *See Endeavor Marine*, 234 F.3d 287. The true legal test is a substantial connection to a vessel, or fleet of vessels, that is in navigation. *Id.* As shown herein, the simple fact the vessel happens to be in port, or moored alongside a dock, when the accident occurs, does not determine seaman status. Kirby misstates the law.

judgment must be denied in all respects. Fed. R. Civ. P. 56; *In re Endeavor Marine, Inc.*, 234 F.3d 287 (5th Cir. 2000); *Braniff v. Jackson Ave.-Gretna Ferry, Inc*., 280 F.2d 523, 526 (5th Cir. 1960).

**III. Controlling Law**
**A. Summary Judgment Standards**

Kirby seeks summary judgment on the grounds that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In responding to summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Issues of material fact are genuine "only if they require resolution by a trier of fact." *Id.* at 248. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255; Fed. R. Civ. P. 56.

Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323; Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585-87. The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Id.*

Because the determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact, it is usually inappropriate to take the question from the jury. *Harbor Tug,* 520 U.S. at 554; *In re: Endeavor Marine, Inc*., 234 F.3d 287, 290 (5th Cir. 2000).

**B. Law of Seaman Status**

Kirby's motion challenges seaman status, which is a prerequisite for recovery under the Jones Act and the general maritime law. The status test for seaman is the same for both theories. *See* T.J. Schoenbaum, ADMIRALTY & MARITIME LAW (2d ed. 1994), § 4-1.

With respect to the Jones Act and general maritime law, the U.S. Supreme Court in the 1990s identified two basic elements of seaman status: (1) the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and (2) the worker must have a connection to a vessel in navigation (or an identifiable fleet of vessels) that is substantial in terms of both its duration and its nature. *Chandris, Inc. v. Latsis,* 515 U.S. 347, 376 (1995). To be a seaman, the plaintiff, in the course of his duties, must have contributed to the function of a vessel. *See Waguespack v. Aetna Life & Casualty Co.,* 795 F.2d 523, 525 (5th Cir.1986); *Chandris,* 515 U.S. at 376. This, of course, is a different proposition than Kirby's false assertion that a plaintiff must have helped to navigate the vessel, or go to sea on a vessel.

The "going to sea" notion suggested by Kirby's motion is not the law. *See In re: Endeavor Marine, Inc*., 234 F.3d 287 (5th Cir. 2000)("For these reasons, the district court incorrectly concluded that Baye is not a Jones Act seaman merely because his duties do not literally carry him to sea. "). Instead of the "going to sea" notion, a plaintiff must show a "connection to a vessel in navigation that is substantial in terms of both duration and nature." *Chandris,* 515 U.S. at 376; *Endeavor*, 234 F3d. at 291-292. What is important

and controlling is the worker's assignment to a vessel, or commonly owned fleet of vessels. *Id.*

When a person's work takes him into both the shipboard and shoreside arenas, he/she must show that he has a 'substantial connection' to a vessel –this is legally determined to be approximately 30% of his overall work time. *See Chandris,* 515 U.S. at 371; *Barrett v. Chevron USA, Inc.,* 781 F.2d 1067, 1076 (5th Cir.1986). As noted above, Kirby's motion **does not** assert that Poole somehow spent less than 30% of his Kirby career on barges. And in any event, such an assertion would be blatantly false: Poole spent approximately 75% of his "Kirby time" working aboard various Kirby barges. *See* **Ex. 4** (Poole's time sheets) and **Ex. 5** (Poole's Barge book or log), and **Ex. 7** (Affidavit of Mr. Poole). There is no evidence suggesting Poole worked ashore for a significant portion of his time.

Kirby's motion (at p. 9) invokes the standard for seaman status under the Fair Labor Standards Act of 1938, 29 U.S.C. § 207 (FLSA), which is more restrictive than that used with the Jones Act and general maritime law. *See Owens v. SeaRiver Maritime, Inc.*, 272 F.3d 698 (5th Cir. 2001) and authorities discussed therein.[17] Given this dissimilarity, courts have found that a barge tender is a seaman for FLSA purposes and thus comes within exemption from the Fair Labor Standards Act (FLSA) overtime provision, but an industrial worker on a dredge barge is not. *See Owens*, 272 F.3d at 704. Kirby's citation of *Owens* (Motion at p. 9) is misleading and improper: the issue here is **not** whether Poole qualifies as a seaman *under the FLSA* –but rather, the Jones Act. Actually, the *Owens* decision fully

---

[17] Similarly, other circuits have concluded that the FLSA definition of seaman is narrower than the Jones Act definition. *Pacific Merchant Shipping Ass'n. v. Aubry,* 918 F.2d 1409, 1412 (9th Cir.1990); *Sternberg Dredging Co. v. Walling,* 158 F.2d 678, 680-81 (8th Cir.1946).

supports Poole because it shows that, *under the Jones Act*, he is indeed a seaman. *Owens*, 272 F.3d at 70_, fn. 7 : "We do not suggest that Owens, while a member of the Strike Team, was not a seaman for Jones Act purposes." *Owens* thus mandates that Kirby's motion be denied because it confirms that Poole is a Jones Act seaman by virtue of his work.

## IV. Argument & Authorities

Kirby's Motion for Summary Judgment must be denied because the evidence attached hereto conclusively establishes that Poole is a seaman covered by the Jones Act, 46 U.S.C. § 688, and general maritime law. Specifically, Poole meets the *Chandris* test because he was assigned to a fleet of commonly owned vessels in navigation (*i.e.*, Kirby barges) and his work aboard them (*i.e.*, as a Coast Guard licensed tankerman) was substantial both in its terms of duration and nature. As such, Poole is unquestionably a seaman. Kirby's motion fails to establish that Mr. Poole does not meet the *Chandris* test. Instead, Kirby raises a series of specious arguments which are addressed below.

Kirby's arguments as to why Poole is not a seaman are readily refuted:

### A. Kirby's attempt to distinguish a "shore tankerman" from a "boat tankerman" is specious.

Kirby's Motion repeatedly avers that it designated Mr. Poole as a "shore tankerman" rather than what it calls a "boat tankerman." *See, e.g.*, Motion at p. 4 ("Mr. Poole was a shore tankerman; he was not a boat tankerman."); *see also* Guidry and Kittley affidavits attached to Motion. Kirby admits that its so-called "boat tankermen" are seamen (id. at pp. 4-5), but hopes that its concocted label of "shore tankerman" will prevent this Court from treating Poole as a seaman. The customary protection afforded seamen by admiralty courts, however, is not easily eschewed.

First, Kirby itself may not recognize the nomenclature urged by its Motion and by the affiants Guidry and Kittley. See **Ex. 6**, Kirby's "Tankerman Job Description." This company document does not differentiate between "boat" and "shore" tankermen but instead reflects that all tankermen, "must possess a valid and current merchant mariners' document with a Tankerman's endorsement . . . " Second, the Coast Guard regulatory scheme of certification for merchant mariners[18] does not recognize the semantic distinction made by Kirby's motion. Rather, the regulations reflect that tankermen must be competent in the transfer of oils and hazardous fluids aboard tank vessels. This reality is reflected in Kirby's Tankerman Job Description (Ex. 6), which requires that a tankerman be licensed under 46 CFR Part 12 (entitled "Certification of Seamen"). The regulations themselves require tankermen to comply with Coast Guard regulations. 46 CFR 16.105. There is no exception for so-called *shore* tankermen. The federal regulations fail to make the alleged distinction so readily drawn by Kirby in the affidavits of Messrs. Guidry and Kittley.

Moreover, federal courts find that tankermen who work on barges in similar capacities to Mr. Poole are, in fact, seamen entitled to Jones Act protection. *See, e.g., Wuestewald v. Foss Maritime Co.*, 319 F.Supp.2d 1002 (N.D. Cal. 2004)(a tankerman brought action against the owner of a bunker barge and dock owner under general maritime law and Jones Act to recover for injuries sustained when he fell from a ladder while attempting to access a dock from a barge; the court found, *inter alia*, that the barge owner was negligent by failing to provide the tankerman with a safe means of access to

---

[18] *See* 46 CFR 13.103 (definitions)(**Tankerman-Assistant** means a person holding a valid ``Tankerman- Assistant'' endorsement to his or her Merchant Mariners' Document (MMD). **Tankerman-Engineer** means a person holding a valid ``Tankerman- Engineer'' endorsement to his or her MMD. **Tankerman-PIC** means a person holding a valid ``Tankerman-PIC'' endorsement to his or her MMD. Tankerman-PIC (Barge) means a person holding a valid ``Tankerman-PIC (Barge)'' endorsement to his or her MMD.

and from the dock). In short, Poole is a ***tankerman***, and regardless of Kirby's attempt to pigeonhole him as a ***shore*** tankerman, a tankerman's duties are strictly proscribed by the U.S. Coast Guard, which is responsible for their regulation and license. Kirby's attempt to label Mr. Poole out of seaman status and protection fails.

**B. Kirby's notion that the fact Poole was injured on a *docked* barge, and that most of his Kirby career involved work on *docked* or moored barges, means that he cannot be a seaman, is specious**

Kirby's motion also argues that Mr. Poole is a land-based worker who happened to be injured aboard a non-moving barge. According to Kirby, this disqualifies him from being considered a seaman. Significantly, however, Kirby does not argue that its barge was somehow *incapable* of navigation; rather, it says that it was not moving *at the time* Mr. Poole was doing his work. Temporal mobility is irrelevant in Jones Act analysis. A leading horn-book on maritime law states:

> [The concept of a vessel in navigation] is liberally applied and a vessel is considered 'in navigation' although it is in port, or under repair. Furthermore, a vessel may be in navigation although it is stationary, moored or fixed in place.

T.J. Schoenbaum, ADMIRALTY & MARITIME LAW, at 4-9, pg. 215 (2d ed. 1994). The Kirby 11003 was "in navigation" because it was capable of being used for transport. In fact, it appears to have arrived at ITC, Deer Park, just before the time that Poole did. *See* Ex. 3 at p. 35.

There is no requirement that a vessel actually be underway when an accident occurs, or even that the accident must occur aboard the ship. *See, e.g., Thier v. Lykes Bros. Inc.,* 900 F.Supp. 864 (S.D. Tex. 1995). In *Thier*, a merchant marine cadet was seriously injured in an automobile accident that occurred ashore in Lake Charles, while his ship was moored in the port. He was riding to dinner in a rental truck that was being driven

by the vessel's chief officer, who flipped the vehicle, killing himself and injuring the plaintiff. The cadet was found to be a Jones Act seaman and successfully recovered against the vessel owner.

Finally, the Fifth Circuit Court of Appeals has specifically rejected any notion that a Jones Act seaman's work must literally "carry him to sea." As long as the worker is performing work in service to a vessel, he is a Jones Act seaman. *In Re: Endeavor Marine, Inc.*, 234 F.3d 287 (5th Cir. 2000), *citing Chandris, Inc. v. Latsis*, 515 U.S. at 368. In *Endeavor Marine,* the Fifth Circuit Court of Appeals reversed a District Court's denial of seaman status, rejecting its use of a so-called "going to sea" test: "The [district] court found that [plaintiff's] connection to the [barge] was not substantial in nature because 'it did not take him to sea. His work brought him aboard the barge only after the vessel was moored or in the process of mooring.' **This application of the 'going to sea' test has an intuitive appeal, but we do not believe that the Supreme Court intended to create such a singular rule for determining seaman status**." 234 F.3d at 291 (emphasis added). Quoting *Chandris*, the Fifth Circuit stated, "Thus, even a ship repairman (which is traditional longshoreman work and is one of the enumerated occupations under the LHWCA) may qualify for seaman status if he has the requisite employment-related connection to the vessel." *Id*.

### C. Poole's work aboard the Kirby barge – *i.e.*, loading and unloading petroleum products– contributes to the mission and function of the barge. Indeed, that is the function and mission of the barge.

Poole's deposition testimony (Ex. 3, at p. 44) makes clear that he was working to monitor the loading and unloading of cargo on the barges. To use Poole's own words: *"I monitor the tanks with the level flow and keep an eye on the drafts and stuff and monitor*

*the equipment, the pumps, make sure we ain't got no leaks or nothing, same thing with the lines where we hook the hose up and stuff*." Ex. 3 at p. 44. Poole also testified that he was in control of the transfer. *Id.* at p. 34. Even Kirby concedes that Poole's main job "was to load and unload barges." *See* Motion at p. 9, ln. 9. The role of a cargo barge is obviously to carry cargo, and a tankerman who loads and unloads cargo is essential to this process.

**D. Kirby's notion that the fact Poole did not sleep on a Kirby boat, and was not assigned a berth on a Kirby boat, somehow bars him from being a seaman is specious.**

Kirby directs the Court to no legal authority that recognizes a berth as a prerequisite to seaman status. While some seamen sleep on vessels, this is not an essential requirement to seaman status. Such sweeping authority would be odd, given that many vessels involved in successful Jones Act claims –*e.g.*, barges and ferry boats– lack living accommodations.

Similarly, Kirby's other factual observations (*see* pp. 13-15 of its motion) are simply recitations of factors that might have been helpful in other cases though Kirby has failed to cite them. However, these facts are not requisite to seaman status. As stated above, Mr. Poole is a seaman because (1) he is assigned to a fleet of commonly owned Kirby barges; (2) he spends more than 75% of his work time on said barges; and (3) he performs seaman's work because he is a Coast Guard licensed tankerman and his work as a tankerman (*i.e.*, loading and unloading barges) contributes to these vessels' mission of carrying cargo. This is the legal test. In contrast, the facts cited by Kirby do not address these standards– *e.g.,* signing a visitor's book upon boarding a tugboat; not being introduced to the members of a barge's crew (however, it appears Poole was the only tankerman aboard the barge); not being explained the general operation of the boat or the

schedule aboard the boat (though this would seem to suggest that Poole was an experienced professional who didn't need such explanation; he was in control of the operation, *see* Ex. 3 at p. 34); etc.

What **is** significant is that the evidence conclusively proves Mr. Poole was assigned to a fleet of commonly owned vessels (*i.e*., Kirby barges) and that his work aboard them (*i.e.*, as a tankerman) contributed to their function. As such, Poole is unquestionably a seaman –regardless of whether he ever actually, say, prepared steel for paint or chipping, or whether he ever put out jockey/ breast/ face/ backing/ towing wires– who is fully entitled to Jones Act and general maritime law protection.

## V. Conclusion and Prayer for Relief

Poole is a Jones Act seaman entitled to the protections of the general maritime law. He was assigned to a fleet of commonly owned Kirby barges, and had a connection to them that was substantial in terms of duration and function. Kirby has not proven any entitlement to summary judgment under Rule 56. In fact, there is sufficient (indeed conclusive) evidence to support Plaintiff's claim that he ***is*** a seaman due to the fact that he performed his work on a fleet of commonly owned Kirby tank barges and his work as a U.S. Coast Guard-licensed tankerman contributed to the fleet's (and the barge's) mission. As such, Defendants' Motion for Summary Judgment to deny seaman status must be denied, and Plaintiff's suit allowed to proceed.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, TIMOTHY JAMES POOLE, prays that the Kirby Defendants' Motion for Summary Judgment be denied in all respects. Plaintiff prays for all such other and further relief, at law and in equity, to which he may be justly entitled.

Respectfully submitted,

/s/ *Francis I. Spagnoletti*

Francis I. Spagnoletti
State Bar No. 18869600
1600 Smith, 45th Floor
Houston, Texas 77002
Telephone: 713-653-5600
Facsimile: 713-653-5656

**OF COUNSEL**:

SPAGNOLETTI & CO.
1600 Smith, 45th Floor
Houston, Texas 77002
Telephone: 713-653-5600
Facsimile: 713-653-5656

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that service of the foregoing was on this date automatically accomplished on all known Filing Users through the Notice of Electronic Filing. Service on any party or counsel who is not a Filing User was accomplished via Email, Facsimile, Certified Mail/RRR or U.S. First Class Mail, in accordance with the Federal Rules of Civil Procedure on this 22nd day of June, 2006.

/s/ *Michael W. Hogue*

Michael W. Hogue